## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JOIE JOLEVARE<br>6016 Katelyn Court<br>Alexandria, Virginia  22310 | : | |
| and | : | |
| SALOME TINKER<br>1425 4th Street, SW Apt. A417<br>Washington, D.C.  20024 | : | |
| Plaintiffs, | : | Civil Action No. |
| v. | : | JURY DEMAND |
| ALPHA KAPPA ALPHA<br>SORORITY, INC.<br>5656 South Stony Island Avenue<br>Chicago, Illinois  60637 | : | |
| Defendant | : | |

### COMPLAINT

COME NOW the Plaintiffs, Joie Jolevare and Salome Tinker, by and through

counsel, Jimmy A. Bell, Esq. and the Law Office of Jimmy A. Bell, P.C., and respectfully

present this Complaint against the Defendant, Alpha Kappa Alpha Sorority, Inc.

("AKA"), to enforce their rights for acts of negligence, defamation, breach of contract,

and violation of the District of Columbia Human Rights Act.

### JURISDICTION

1.    This action is invoked pursuant to 28 U.S.C. § 1332.  Jurisdiction is proper as

Plaintiff Jolevare is a citizen of the Commonwealth of Virginia; Plaintiff Tinker is

a citizen of the District of Columbia; Defendant, Alpha Kappa Alpha Sorority,

Inc., is an out-of state corporation whose principal place of business (i.e.,

international headquarters) is in the State of Illinois; and the matter in controversy

exceeds the sum or value of $75,000.00.

## VENUE

2.    Venue is properly laid in the District of Columbia pursuant to 28 U.S.C. § 1391,

as the Defendant operates a licensed business in the District of Columbia and the

acts herein complained of occurred within the said jurisdiction.

## STATEMENT OF FACTS

3.    The last initiation held at Howard University was in 2001.

4.    In 2002, Alpha Chapter voted not to bring in new members.

5.    In 2003, a moratorium was placed nationally on the sorority for the hazing

incident in California.

6.    No chapter could initiate new members.

7.    In 2004, with few members left on the campus, the work of the Undergraduate

Activities Committee was still limited to merely filling in where the Graduate

Advisor could not be in attendance due to personal/work conflicts.

8.    The Alpha Chapter knew it had to successfully initiate new members for

continuity, thus, an official request was made to the Regional Director within the

proper timeframe.

9.    The paperwork remained with the Regional Director for some time.

10.   Numerous calls were made to her to release the paperwork with no success.

11.   Assuming 137 Members would have joined AKA at this time at approximately

$800.00 each in dues, Alpha Chapter's membership would have generated

$109,600.00 in revenue for Alpha Kappa Alpha Sorority, Inc. locally and

nationally, but this revenue was lost because Ms. Daley failed to file the proper

paperwork in a timely manner.

12.    When she finally approved and sent the paperwork to the Graduate Advisor,

Howard indicated that it was submitted past the school's deadline and thus the

initiation attempt was denied by the school.

13.    This failure to file the proper paperwork typifies Ms. Daley's grossly negligent

and careless business practices that is evident throughout her faulty investigative

procedures, baseless conclusory statements, and total failure to comply with AKA

policies and/or requirements throughout the entire investigative and disciplinary

process as applied to Plaintiffs.

14.    Only one Alpha Chapter member would be returning to campus.

15.    In 2004, Xi Omega sorority members were asked to help put on programs and

solicit any sorors that might be transfers on campus to join Alpha Chapter to help

with keeping the chapter on campus until an intake could be conducted in the

Spring.

16.    In 2004, with the help of the Xi Omega sorors, programs held by the Alpha

Chapter were widely successful.

17.    In 2004, when the Alpha Chapter lost one of the transfer students to academic

suspension per the sorority's minimum requirement for active status for

undergraduate members, the Xi Omega sorors took on a more active role to help

that soror plan events and maintain her academic standing.

18.    Lisa Braz was the transfer student already attending Howard University.

19.    The second transfer student, Tiarra Etheridge, transferred over the summer.

20.    She was initiated in the Spring 2004 and approximately 34 of 55 of her Chapter members were suspended for hazing activities at Morgan State University.

21.    Although Ms. Etheridge had not been suspended, members of the Undergraduate Activities Committee were not clear about her role in the Chapter's activities because they were not privy to the fact-finding report.

22.    As a result, members of the Undergraduate Activities Committee wanted to make sure her activities did not deviate from the national policies and took extra care to make sure they would not be introduced to Alpha Chapter.

23.    In 2005, Alpha Chapter had a rush with over 400 applicants seeking membership.

24.    In 2005, Alpha Chapter initiated 137 women into the organization.

25.    In 2005, the new Alpha Chapter (without any graduate influence) voted to have a campus introduction show (the "show").

26.    As per the AKA rules, regulations, and guidelines, the show had to be held within seven (7) days following their initiation.

27.    However, the school was on Spring Break so a request was made to the Regional Director ("RD" or "Ms. Daley") to have the show with an extension of time to March 22nd (Tuesday) when school was in session.

28.    Since there was only one senior member of Alpha Chapter, graduate sorors were required to assist with teaching the newly initiated 137 sorors the AKA song and step that members perform on campus.

29.    After initiation, the Members of AKA began to practice for the show.

30.    Plaintiffs are Graduate Certified Advisors.

31.  Plaintiffs have been members of the Xi Omega Chapter since they graduated from Howard University.

32.  AKA alleges that Plaintiffs participated in hazing activities in violation of AKA Const. Art. V.

33.  Hazing is described as "an act or series of acts which includes, but is not limited to, physical acts such as hitting, striking, laying hands upon or threatening to do bodily harm to any individual(s), while acting in one's capacity as a member of Alpha Kappa Alpha." AKA Const. Art. V.

34.  However, there was no evidence, nor was it ever alleged, that Plaintiffs ever committed physical acts such as hitting, striking, laying hands upon or threatening to do bodily harm to any individual.

35.  Regardless, AKA suspended Plaintiffs without regard for its own policies, procedures, rules, regulations, and/or guidelines and in violation of Plaintiffs' rights afforded to her by the AKA Constitution and by State and Federal Law.

36.  Ms. Daley prepared a letter ("Recommendation Letter") recommending Plaintiffs' suspension, and a letter ("Suspension Letter") suspending Plaintiffs.

37.  In the Recommendation Letter, Ms. Daley states that she "found" the Undergraduate Activity Members singing in the parking lot on March 22, 2005.

38.  In the Recommendation Letter, Ms. Daley states that Members of the Anti-Hazing Task Force conducted a fact-finding.

39.  In the Recommendation Letter, Ms. Daley states that 125 Undergraduates were in the parking lot in addition to Plaintiffs (members of the Xi Omega Chapter).

40.     In the Recommendation Letter, Ms. Daley states that Members of the

        Undergraduate Activities Committee Dominated the Alpha Chapter Meetings by

        determining what activities occur.

41.     In the Recommendation Letter, Ms. Daley states that Prior to the last MIP the two

        members of Alpha Chapter were required to wear black and study AKA history

        and other information before they could initiate anyone into Alpha Chapter.

42.     In the Recommendation Letter, Ms. Daley states that They were given notebooks

        to record information and the Graduate Advisor was a part of the group that met

        with them and gave them study information.

43.     Plaintiffs were present at all chapter meetings.

44.     Upon information and belief, on or about Saturday October 2, 2005, Joy Elaine

        Daley attended the Alpha Chapter meeting in her capacity as regional director for

        AKA.

45.     Upon information and belief, during that meeting, Joy Elaine Daley stated that

        "the only reason [the other members of Alpha Chapter] were not suspended like

        [Plaintiffs] was because they were young and students."

**Count I: Violation of the District of Columbia Human Rights Act**

46.     Plaintiffs re-plead and re-allege paragraphs 1 through 45 as if set forth separately

        and at length herein.

47.     AKA suspended Plaintiffs on charges of hazing which did not meet AKA's own

        definition of hazing as laid out in the AKA Constitution and the AKA Anti-

        Hazing Handbook, Say "No" to Hazing!

48.    AKA suspended Plaintiffs for hazing without due process of the policies and procedures outlined in the AKA Constitution and the AKA Anti-Hazing Handbook, Say "No" to Hazing!

49.    Plaintiffs are older than other members of their chapter and are not students, as the other chapter members are.

50.    As such, AKA denied Plaintiffs, directly or indirectly, the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of AKA wholly or partially for a discriminatory reason based on the actual or perceived age and matriculation of Plaintiffs.

51.    Plaintiffs suffered the loss of enjoyment of AKA's goods, services, facilities, privileges, advantages, and accommodations, as well as severe mental anguish as a result of AKA's actions.

**Count II: Breach of Contract**

52.    Plaintiffs re-plead and re-allege paragraphs 1 through 51 as if set forth separately and at length herein.

53.    AKA suspended Plaintiffs on charges of hazing which did not meet AKA's own definition of hazing as laid out in the AKA Constitution and the AKA Anti-Hazing Handbook, Say "No" to Hazing!

54.    AKA suspended Plaintiffs for hazing without due process of the policies and procedures outlined in the AKA Constitution and the AKA Anti-Hazing Handbook, Say "No" to Hazing!

55.    The AKA Constitution and AKA Anti-Hazing Handbook, Say "No" to Hazing!, are a contract or contracts between AKA and Plaintiffs that Plaintiffs were required to read and sign.

56.    As such, AKA breached its contract or contracts with Plaintiffs by its failures to abide by the terms of such contract or contracts.

57.    Plaintiffs suffered the loss of enjoyment of AKA's goods, services, facilities, privileges, advantages, and accommodations, as well as severe mental anguish as a result of AKA's actions.

**Count III: Defamation**

58.    Plaintiffs re-plead and re-allege paragraphs 1 through 57 as if set forth separately and at length herein.

59.    AKA suspended Plaintiffs on charges of hazing which did not meet AKA's own definition of hazing as laid out in the AKA Constitution and the AKA Anti-Hazing Handbook, Say "No" to Hazing!

60.    AKA suspended Plaintiffs for hazing without due process of the policies and procedures outlined in the AKA Constitution and the AKA Anti-Hazing Handbook, Say "No" to Hazing!

61.    AKA knowingly published the suspension, for hazing, of Plaintiffs, when Plaintiffs had not properly been found to have hazed; AKA knew that these statements were untrue.

62.    As such, AKA defamed Plaintiffs by knowingly spreading false and defamatory statements about Plaintiffs.

63.    Plaintiffs suffered damage to their characters, repute and standing in their community, the loss of enjoyment of AKA's goods, services, facilities, privileges, advantages, and accommodations, as well as severe mental anguish as a result of AKA's actions.

## Count IV: Negligence

64.    Plaintiffs re-plead and re-allege paragraphs 1 through 63 as if set forth separately and at length herein.

65.    AKA suspended Plaintiffs on charges of hazing which did not meet AKA's own definition of hazing as laid out in the AKA Constitution and the AKA Anti-Hazing Handbook, Say "No" to Hazing!

66.    AKA suspended Plaintiffs for hazing without due process of the policies and procedures outlined in the AKA Constitution and the AKA Anti-Hazing Handbook, Say "No" to Hazing!

67.    AKA had a duty to Plaintiffs to abide by its Constitution and Anti-Hazing Handbook, Say "No" to Hazing!, which duty AKA negligently breached, proximately causing Plaintiffs' injuries.

68.    As such, AKA was negligent with regard to Plaintiffs.

69.    Plaintiffs suffered damage to her repute and standing in her community, the loss of enjoyment of AKA's goods, services, facilities, privileges, advantages, and accommodations, as well as severe mental anguish as a result of AKA's actions.

## RELIEF SOUGHT

70.    Plaintiffs re-plead and re-allege paragraphs 1 through 69 with the same force and effect as if set forth separately and at length herein.

71.     Plaintiffs seek compensatory and punitive damages for pain and suffering,

        humiliation and loss of standing in the community in the amount of

        $10,000,000.00.

72.     Plaintiffs seek pre and post-judgment interest.

73.     Plaintiffs seek the costs of litigation, including reasonable attorney's fees and

        expert witness fees.

74.     Plaintiffs seek such other relief as may be just.

## JURY DEMAND

Plaintiffs demand a trial by jury.


                                        Respectfully submitted,


                                        _____
                                        Jimmy A. Bell, Esquire
                                        Bar #MD14639
                                        Law Office of Jimmy A. Bell, P.C.
                                        9610 Marlboro Pike
                                        Upper Marlboro, MD  20772
                                        (301) 599-7620 Office
                                        (301) 599-7623 Fax
                                        Counsel for Plaintiffs