# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOIE JOLEVARE<br><br>and<br><br>SALOME TINKER<br><br>    Plaintiffs,<br>v.<br><br>ALPHA KAPPA ALPHA SORORITY, INC.<br><br>    Defendants. | Case No. 1:05-cv-01982-RBW<br><br>Judge: Reggie B. Walton |

From:   Joie Christophe Jolevare & Salome Tinker
        c/o Jimmy A. Bell, Esq.
        Law Office of Jimmy A. Bell, P.C.
        9610 Marlboro Pike
        Upper Marlboro, MD   20772

To:     Thomas S. Schaufelberger, Bar No. 371934
        Shannon H. Bates, Bar No. 480186
        Saul Ewing LLP
        1025 Thomas Jefferson Street, NW
        Suite 425 West
        Washington D.C. 20007

### PLAINTIFFS JOIE CHRISTOPHE JOLEVARE & SALOME TINKER RESPONSES TO ALPHA KAPPA ALPHA SORORITY, INC'S FIRST SET OF INTERROGATORIES

Pursuant to Fed. R. Civ. P. 33, Joie Christophe Jolevare and Salome Tinker, by and through counsel Jimmy A. Bell, Esq. and the Law Office of Jimmy A. Bell, P.C., hereby responds to Defendant's Requests for Production. This Response to Defendant's First Set of Interrogatories furnishes knowledge, facts, and information

1

presently available and, as requested, if subsequent or different information is obtained before trial, this Response to Defendant's First Set of Interrogatories will be appropriately supplemented, either formally or informally, by communicating the information to all parties.

## GENERAL OBJECTIONS

A. The Plaintiff objects to the Defendant's First Set of Interrogatories to the extent that it is not designed to lead to relevant discovery in this case.

B. Plaintiff's investigation is continuing and to the extent further information, responsive to these Interrogatories becomes known to this Plaintiff, these answers will be supplemented.

C. In addition to these General Objections, which apply to each Response below, the Plaintiff has noted certain additional specific objections in response to the various requests for production.

## ANSWERS

**INTERROGARTORY NO. 1:** As to the person(s) answering these Interrogatories, please state your full name(s), address, telephone number, date of birth, marital status and dates of any and all marriages, former names and social security number.

**ANSWER TO INTERROGATORY NO. 1:**

Joie Christophe Jolevare
6016 Katelyn Court
Alexandria, Va 22310
703 924 8879
DOB: ███████
Single
SSN: ███████

2

Salome (Johnson) Tinker
1425 4th Street SW A417
Washington, DC 20024

a/ka: PO Box 8332
Washington, DC 20032

(202) 253-0889
DOB: ███
Marital Status: Married
Marriage: Chris Tinker
　　October 4 (7), 1997
　　　　Arlington, VA
SSN: ███

**INTERROGARTORY NO. 2:** Identify all persons who have given written or recorded statements concerning the subject matter of this litigation, state the date of each such statement, and identify the person taking the statement and its present condition.

**ANSWER TO INTERROGATORY 2:**
- Joy Elaine Daley, Regional Director
    - April 2, 2005 Xi Omega Chapter Meeting
        - Remarks recorded on Tape and Transcribed, Chapter Secretary
    - April 2, 2005 Meeting at Xi Omega with Undergraduates
        - Remarks recorded by Anti Hazing Task Force
    - September 3, 2005 Xi Omega Chapter Meeting
        - Recorded on Tape and Transcribed, Chapter Secretary
        - Recommendation of Suspension Letter submitted to Xi Omega Chapter
    - September 19, 2005
        - Letter informing of Plaintiff's suspension
- Conversation held with Joie Jolevare (May 2005) and Salome J. Tinker (May 2005), Anti-hazing Task Force
    - Recorded for Official Record
- Linda M. White, National President
    - February 11, 2006 Letter to Plaintiffs regarding pending investigation
- Joie Jolevare and Salome J. Tinker, written appeal dated September 30, 2005.

3

**INTERROGATORY NO. 3:** Identify all persons with knowledge of the facts alleged in the Complaint, including, for each person, a description of such information, and identify all documents referring or related to such information.

**ANSWER TO INTERROGATORY 3:**
- 137 initiates Alpha Chapter, AKA March 2005
- Lisa Braz, former chapter president Alpha Chapter
- Members of the Alpha Chapter Undergraduate Activities Committee, including, but not limited to the following persons:
    - Pamela Chew, Graduate Advisor
    - Julita Blair
    - Jorielle Brown
    - Miesha Darrough
    - Awshantee Dingle
    - Ronisha Franklin
    - Tamika J. McCormack
    - Khamilah Muhammed
    - Alexandria C. Jones
    - Leslie Jones
    - Karleen D. Roy
    - Rhashida Rogers
    - Candace Reynolds
    - Kendall Richardson
    - Kia Toilett
    - Alyssa King Turner
- Lisa Braz, 2004-2005 Alpha Chapter President
- Anti-hazing Task Force Appointed included, but not limited to:
    - Kristel Johnson
    - Gretchen Gilchrist
    - Barbara Flatts
    - Cynthia Tucker
    - Lisa Yabor
    - Deidra Albritto-Bundick
    - Lorraine Edwards
    - Shirley Tyler
    - Gloria C. Oliver-Simon
    - Asi Ofusu
- Phyllis E. Young, Former President, Xi Omega Chapter
- Members, Xi Omega Chapter on record at April and September 2005 chapter meeting
- Unknown complainant which alleged hazing incident (obtain from RD)

4

- Mother of unknown complainant referred to in RD conversation (obtain from RD)

**INTERROGATORY NO. 4:** With respect to your allegation that Plaintiffs were discriminated against, identify all acts and/or omissions by AKA which you contend violate the District of Columbia Human Rights Act.

**ANSWER TO INTERROGATORY NO. 4:**

Upon suspension, all such members who allegedly participated were not given the same sentences as those older members of the organization. Determination of the level of punishment was based on age of the participant and not the circumstance. Undergraduate newly initiated members were exonerated and allowed to have the show as scheduled, chapter president; chapter was given one year probation; select graduate members were given no sentence; others including plaintiffs were given two year probation.

As discussed in the recommendation letter, only a select group of AKA members were singled out. Ms. Daley even commented to one individual, "you are lucky. You just barely made it." Ms. Daley, to date, has not given any explanation as to why certain members were singled out in her Recommendation Letter, nor as to why one was never suspended and why one was later deleted from the record (Leslie Johnson Williams and Julita Blair).

However, upon information and belief, Ms. Daley attended an Alpha Chapter meeting on October 1, 2005. During the course of this meeting she told the chapter president, "the only reason [you girls] are not all suspended is because you are young." This selection and suspension of Ms. Tinker was either entirely arbitrary and capricious or discriminatory based on age and therefore must be overturned because of this perversion and abuse of process. Morowitz v. Marvel, 423 A.2d 190 (D.C. 1980).

5

Ms Daley further shows her strong arm tactics by suspending additional members of Xi Omega who were committee members of the UAG for soliciting an unbiased survey of the members of Alpha Chapter's experience regarding the incident.

**INTERROGATORY NO. 5:** With respect to your allegation that AKA breached a contract, identify the contract(s) allegedly breached and set forth every provision of the contract(s) that AKA allegedly breached.

**ANSWER TO INTERROGATORY NO. 5:**
The rights granted to Ms. Jolevare and Ms. Tinker are enumerated in AKA Anti-Hazing Handbook. See <u>AKA Anti-Hazing Handbook</u>, 13. The rights themselves and corresponding violation of those rights are as follows:

- **To be advised by the fact-finder of the specific allegations made against her** *during the fact-finding process* - Ms. Jolevare and Ms. Tinker were not informed of the charges against her. She received correspondence dated September 19, 2005, which clearly states that a determination had already been made (e.g., no further fact-finding was to be conducted). As a result, Ms. Jolevare and Ms. Tinker were deprived of her right to be advised of the specific allegations against her.

- **To be advised of the process for conducting the fact-finding and of her responsibilities during the course of the fact-finding** - Ms. Jolevare or Ms. Tinker has never been informed of the fact-finding process.

- **To submit a contemporaneous written statement of her position concerning the allegations** – Because Ms. Jolevare or Ms. Tinker were never informed of the allegations against her, she was constructively deprived of the opportunity to respond to such allegations.

- **To be notified, in writing, at the conclusion of the fact-finding of the action taken**- Ms. Jolevare or Ms. Tinker have never been informed about the conclusions regarding the fact-finding as it relates to her suspension.

In addition, the investigation itself suffers from fatal deficiencies in violation of AKA Regulations. Specifically, AKA did not follow its own policies for following up a hazing complaint as follows:

- The Regional Director did not immediately place Ms. Jolevare nor Ms. Tinker on "inactive status" within 3 days of the violation as required by the AKA Anti-Hazing Handbook. Id. at 13. Rather, Ms. Jolevare and Ms. Tinker remained a member in good standing until September 19, 2005 and was even permitted to attend "members only" AKA events, including the AKA leadership conference in the Bahamas, for the remainder of the Spring 2005 semester and during the summer of 2005

- In addition, per the Anti- Hazing Handbook, none of the required deadlines were met as set forth in the policy (e.g. fourteen, twenty-one, and thirty day deadlines for action).

- Plaintiffs believe that a violation of Section B, Anti-hazing policy, Prohibition of Interference in Fact Finding Process was violated. Plaintiff's felt that the task force member(s) who interviewed them were biased in their interrogation of the incident over the phone.

- In the suspension letter, Ms. Daley back-dated the suspension to July 1, 2005, in violation of the AKA Constitution Art. VI.

- Upon information and belief, the fact-finding team consisted of more than 3 members, in violation of the AKA Anti-Hazing Handbook. Id.

- Upon information and belief, the fact-finding team never submitted its final report from the Supreme Basileus as required by the AKA Anti-Hazing Handbook. Id.

- Upon information and belief, the regional director did not get the Supreme Basileus' approval for sanctions against Ms. Jolevare and Ms. Tinker as required by the AKA Anti-Hazing Handbook. Id.

- Upon receipt of the appeal, the regional director did not respond in writing to the appeal within 30 days of receipt final ruling.

- The Supreme Basileus appears to not have responded within a timely manner to our appeal.

AKA failed to follow its own rules and procedures of due process.

7

**INTERROGATORY NO. 6:** With respect to your allegation that AKA is liable for defamation, identify the content of the defamatory statement(s), who made the statements(s), persons with knowledge about the statements(s) and identify any documents referring or relating to the statement(s).

**ANSWER TO INTERROGATORY 6:**
Joy E. Daley, Regional Director at the September 3, 2005 chapter meeting wrongfully accused plaintiffs of violating the anti hazing policy by participating in hazing activities. RD made false allegations about the plaintiffs prior activities which help support her decision for the suspension. The RD never confirmed the alleged hazing incident that led to the Plaintiff's suspension, allowed equal time for the plaintiff's to question the decision at the meeting nor was prior notice given of her agenda or message to provide rebuttal of such serious allegations. Based on her false allegations, plaintiffs were immediately escorted out of the meeting, which had over 100 attendees, and barred from returning (actual count can be received from the Chapter Secretary of record).

Plaintiffs filed for an appeal of such matter. Upon AKA receiving the appeal and before making a final decision, AKA knowingly posted to the world-wide web plaintiff's names.

Prior to receiving a final decision from the appeal and after being served with lawsuit, RD continued to speak of situation to other large groups at other conferences further adding to the humiliation and defamation of character (e.g. Cluster, Regional, Undergraduate Roundup, etc.) Statements were also made to the Alpha Chapter President, Kim Mitchell by Joy E. Daley while other Alpha Chapter members listened.

8

Ms. Daley has suspended any subsequent member of AKA that has tried to gather information/evidence on plaintiffs (and other suspended soror's) behalf in an attempt appeal verdict.

Article published in the Hilltop on the lawsuit and further discussion in chat rooms and email groups throughout the sorority and Greek-lettered community.

**INTERROGATORY NO. 7:** With respect to your allegation that AKA was negligent, identify the specific AKA policy and/or provision which were allegedly violated and identify any acts which you contend constitute negligence by AKA.

**ANSWER TO INTERROGATORY NO. 7:**
The rights granted to Ms. Jolevare and Ms. Tinker are enumerated in AKA Anti-Hazing Handbook. See <u>AKA Anti-Hazing Handbook</u>, 13. The rights themselves and corresponding violation of those rights are as follows:

- **To be advised by the fact-finder of the specific allegations made against her *during the fact-finding process*** - Ms. Jolevare and Ms. Tinker were not informed of the charges against her. She received correspondence dated September 19, 2005, which clearly states that a determination had already been made (e.g., no further fact-finding was to be conducted). As a result, Ms. Jolevare and Ms. Tinker were deprived of her right to be advised of the specific allegations against her.

- **To be advised of the process for conducting the fact-finding and of her responsibilities during the course of the fact-finding** - Ms. Jolevare or Ms. Tinker has never been informed of the fact-finding process.

- **To submit a contemporaneous written statement of her position concerning the allegations** – Because Ms. Jolevare or Ms. Tinker were never informed of the allegations against her, she was constructively deprived of the opportunity to respond to such allegations.

- **To be notified, in writing, at the conclusion of the fact-finding of the action taken**- Ms. Jolevare or Ms. Tinker have never been informed about the conclusions regarding the fact-finding as it relates to her suspension.

In addition, the investigation itself suffers from fatal deficiencies in violation of AKA Regulations. Specifically, AKA did not follow its own policies for following up a hazing complaint as follows:

- The Regional Director did not immediately place Ms. Jolevare nor Ms. Tinker on "inactive status" within 3 days of the violation as required by the AKA Anti-Hazing Handbook. Id. at 13. Rather, Ms. Jolevare and Ms. Tinker remained a member in good standing until September 19, 2005 and was even permitted to attend "members only" AKA events, including the AKA leadership conference in the Bahamas, for the remainder of the Spring 2005 semester and during the summer of 2005

- In addition, per the Anti- Hazing Handbook, none of the required deadlines were met as set forth in the policy (e.g. fourteen, twenty-one, and thirty day deadlines for action).

- Plaintiffs believe that a violation of Section B, Anti-hazing policy, Prohibition of Interference in Fact Finding Process was violated. Plaintiff's felt that the task force member(s) who interviewed them were biased in their interrogation of the incident over the phone.

- In the suspension letter, Ms. Daley back-dated the suspension to July 1, 2005, in violation of the AKA Constitution Art. VI.

- Upon information and belief, the fact-finding team consisted of more than 3 members, in violation of the AKA Anti-Hazing Handbook. Id.

- Upon information and belief, the fact-finding team never submitted its final report from the Supreme Basileus as required by the AKA Anti-Hazing Handbook. Id.

- Upon information and belief, the regional director did not get the Supreme Basileus' approval for sanctions against Ms. Jolevare and Ms. Tinker as required by the AKA Anti-Hazing Handbook. Id.

- Upon receipt of the appeal, the regional director did not respond in writing to the appeal within 30 days of receipt final ruling.

- The Supreme Basileus appears to not have responded within a timely manner to our appeal.

AKA failed to follow its own rules and procedures of due process. It is inconceivable the AKA can rely on investigative findings by an individual who we have

shown to have consistently violated AKA's own rules and regulations. In light of these grievous, fatal, and inexcusable disregard for Ms. Jolevare's and Ms. Tinker's rights and the fact-finding procedure required by AKA, Ms. Jolevare's and Ms. Tinker's suspension must be overturned

**INTERROGATORY NO. 8:** Identify your responsibilities and duties in preparing newly initiated members of AKA for the campus introduction show as alleged in paragraphs 25, 28 & 30 of the Complaint.

**ANSWER TO INTERROGATORY NO. 8:**
As a member of the Undergraduate Activities Committee (UAG), our duties and responsibilities are to oversee the activities of the undergraduate chapters to ensure that the rules and regulations of Alpha Kappa Alpha are being adhered to. At all times must events be chaperoned by Graduate Advisor or delegates from the UAG per sorority guidelines. Those oversight activities include, but are not limited to the following:

- Chapter Meetings and Other Gatherings
- Public Program Activities
- Social Activities
- Other Functions and Responsibilities as Delegated by the Graduate Advisor

Also see the manual of standard operation procedures which provides a description of the role of the UAG. The Bylaws of AKA also define the role of the National UAG. Our responsibilities are also in conjunction with those described therein (section 15(f).

**INTERROGATORY NO. 9:** Identify your roles and participation in the March 22, 2005 incident where newly initiated members of AKA were rehearsing in a parking lot,

Case 1:05-cv-01982-RBW   Document 14-4   Filed 08/23/2006   Page 13 of 18

persons with knowledge about the rehearsal and all documents referring or relating to the rehearsal.

**ANSWER TO INTERROGATORY NO. 9:**

On March 22, 2005, plaintiffs were present at the gathering to oversea (chaperone) the undergraduate "show" rehearsal as members of the undergraduate activities committee for Alpha Chapter.

Persons with knowledge include the members of Alpha Chapter, the UAG, Pamela Chew, Graduate Advisor, Joy Jolevare (mother), Phyllis E. Young, Xi Omega President and Joy E. Daley, RD.

Sign in roster for attendance at the parking lot incident.

**INTERROGATORY NO. 10:** Identify all persons who participated in the rehearsal with Alpha Chapter on March 22, 2006, the locations of said rehearsal and under whose authority the rehearsal was permitted by AKA.

**ANSWER TO INTERROGATORY NO. 10:**

The rehearsal was open to all members of the current Alpha Chapter, AKA. The rehearsal was for an outdoor show that was to take place the next day. The request for the show was submitted by the graduate advisor and approved by the RD. The rehearsal began at the Xi Omega Center so that participants could learn practice the song and ceremonial steps inside.

Members of the UAG, including Pamela Chew, graduate advisor, were present at the first part. Thereafter, upon discussion with Pam Chew (who was in consultation with Joy E. Daley and Phyllis E. Young), members of the UAG were instructed to take the practice to the parking lot near the University of Maryland so that a dry run of the show

could be conducted despite the late time. The College Park location was chosen over the actual college grounds due to the number of participants involved and undergraduates did not want the show pre-critiqued by students on campus prior to the actual day, which appeared a reasonable request.

Although, there was not list of participants at the earlier meeting because attendance was not mandatory, Salome J. Tinker compiled a list at the request of Phyllis E. Young at the second meeting. Phyllis E. Young was on the phone at the time she requested the list with Joy E. Daley (Plaintiffs overheard Phyllis get the instruction to obtain the list from Joy E. Daley). That list was turned over to Ms. Young and later turned over to the RD which ultimately was used as a basis for suspending members.

**INTERROGATORY NO. 11:** Identify all rehearsals that took place prior to March 22, 2005, all persons who participated in said rehearsals, the locations of said rehearsals and under whose authority the rehearsals were permitted by AKA.

**ANSWER TO INTERROGATORY NO. 11:**
Several rehearsals were held prior to March 22, 2005 soon after the members were initiated in accordance with the guidelines established by the sorority. As stated above, the explicit authority to have the show was granted by the RD. As implied, rehearsals were necessary in order to have the show within the authorized compressed time-frame outlined in the manual. The location and times of the rehearsals were approved the graduate advisor. Members of the UAG participated at various times based on their work schedules and availability. Plaintiff's did not attend all rehearsals due to conflicts in their schedules.

**INTERROGATORY NO. 12:** Identify any statements or admissions made by any member or agent of AKA regarding the allegations in the Complaint, including, but not limited to, the March 22, 2005 parking lot rehearsal, including your Answer, the date and substance of same.

**ANSWER TO INTERROGATORY NO. 12:**
- Statements and/or admissions in question 2.
- Letters of Suspension of the following sorority members and their related appeals submitted:

    - Pamela Chew, Graduate Advisor
    - Lisa Braz, Past Alpha Chapter President
    - Jorielle Brown
    - Miesha Darrough
    - Awshantee Dingle
    - Tamika J. McCormack
    - Khamilah Muhammed
    - Alexandria C. Jones
    - Karleen D. Roy
    - Alyssa King Turner

- Letter of Expulsion for graduate advisor, Pamela Chew and related appeal submitted
- Survey obtained from Alpha Chapter

**INTERROGATORY NO. 13:** Insofar as not already identified in your answers to other Interrogatories, identify each document upon which you rely in providing and preparing your answers to these Interrogatories and identify the custodian of each such document.

**ANSWER TO INTERROGATORY NO. 13:**
- Bylaws Alpha Kappa Alpha Sorority, Incorporated
- Manual of Standard Operating Procedures
- Just Say No to Hazing Pamphlet
- Anti-hazing Policy
- Graduate Advisors Handbook
- Membership Intake Manual
- Membership Commitment Statement

14

**INTERROGATORY NO. 14:** State the names, addresses, and telephone numbers of each and every person whom you or your attorney expects to call as an expert witness at the trial of this matter, and state, exactly and in detail, with regard to each, the subject matter on which each is expected to testify, the substance of the facts and opinions to which each such expert is expected to testify, and a summary of the grounds for each such opinion.

**ANSER TO INTERROGATORY NO. 14:**
Any and all Alpha Chapter members named herein or on record at the time of incident can be obtained from current secretary

Any and all Xi Omega members named herein or present at the named chapter meetings can be obtained from the current secretary

    Joy Elaine Daley, Regional Director
    Highland Estates
    37 Ramona Road
    Newburgh, NY 12550
    (845) 566-9962

    Linda M White,
    National President
    5656 South Stony Island Avenue
    Chicago, IL  60637

    Members of the Directorate,
    Alpha Kappa Alpha Sorority, Inc.

**INTERROGATORY NO. 15:** Identify all persons you intend to call as witnesses in this action.

**ANSWER TO INTERROGATORY NO. 15:**
Objection. This question asks for attorney work product and asks for trial strategy.

**INTERROGATORY NO. 16:** Identify all documents that you intend to use as exhibits at the trial of this case.

**ANSWER TO INTERROGATORY NO. 16:**
Objection. This question asks for attorney work product and asks for trial strategy.

**INTERROGATORY NO. 17:** With respect to damages, itemize all amounts you are seeking to recover from AKA in this action, indicate the basis upon which you claim they are owed, how each item was calculated, persons with knowledge about these amounts and identify all documents that refer or reflect such amounts.

**ANSWER TO INTERROGATORY NO. 17:**
Plaintiff seeks the maximum under the statute for Violation of the District of Columbia Human Rights Act. Plaintiff seeks the maximum under the statute for Breach of Contract. Plaintiff seeks the maximum under the statute for Defamation. Plaintiff seeks the maximum under the statute for Negligence. Plaintiff seeks punitive damages which are to be determined by a jury. Ten Million Dollars (10,000,000) is speculative and shall be determined by a jury.

_____
Joie Christophe Jolevare, Plaintiff

_____
Salome (Johnson) Tinker, Plaintiff

Respectfully submitted,

_____
Jimmy A. Bell, Esq.
Law Office of Jimmy A. Bell, P.C.
9610 Marlboro Pike
Upper Marlboro, MD 20772
(301) 599-7620
(301) 5997623 fax
Bar No. MD 14639
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 28th day of June, 2006, a copy of the foregoing Response to Defendant's First Set of Interrogatories was mailed, first-class postage pre-paid to:

Thomas S. Schaufelberger, Bar No. 371934
Saul Ewing LLP
1025 Thomas Jefferson Street, NW
Suite 425 West
Washington D.C. 20007

_____
Jimmy A. Bell, Esq.

17