IN THE UNITED STATES DISRTICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOIE JOLEVARE, et al. : | |
| : | |
| Plaintiffs, : | |
| : | Case No.: 1:05-cv-01982 (RBW) |
| v. : | |
| : | |
| ALPHA KAPPA ALPHA : | |
| SORORITY, INC. : | |
| : | |
| Defendant. : | |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFF JOLEVARE AND
PLAINTIFF TINKER'S MOTION TO COMPEL**

COMES NOW Plaintiff Steven D. Oliver, by and through counsel Jimmy A. Bell, Esq. and the Law Office of Jimmy A. Bell, P.C., and hereby submits this Memorandum of Points and Authorities in support of its Motion to Compel Defendant's Answers to Plaintiffs' First Sets of Interrogatories, pursuant to Fed. R. Civ. P. 37(d) for the opposing counsel's failure to submit full and complete answers to Plaintiff's First Set of Interrogatories.

This Court has held timelines in high regard in relation to discovery matters.  For instance, in Byrd v. Reno, the Court determined that failing to properly answer interrogatories leads to the fact that the Defendant must live with the consequences of the ruling as a result of its inaction.  No. 96-2375, 1998 U.S. Dist. LEXIS 11855, at *6 (D.C. Cir. Feb. 12, 1998).  This court has repeatedly granted motions and sanctions against Defendants who fail to answer discovery requests or who provide inadequate responses and further, has deemed the inquiries propounded by the non-moving party as admitted against the failing party.  Green v. Blazer Diamond Prods., No. 92-1385, 1994 U.S. Dist. LEXIS 21346, at *7 (D.C. Cir. Dec. 8, 1994).

Plaintiff seeks enforcement of the rules governing the discovery process and as reasons, states the following:

1. On March 2, 2006, Plaintiffs served Defendant with Plaintiff Jolevare's First Set of Interrogatories to Defendant and Plaintiff Tinker's First Set of Interrogatories to Defendant.

2. On April 24, 2006, Defendant served Plaintiff with Alpha Kappa Alpha, Inc.'s Response to Plaintiff Salome Tinker's Interrogatories and Alpha Kappa Alpha, Inc.'s Response to Plaintiff Joie Jolevare's Interrogatories.

3. On September 21, 2006, counsel for Plaintiffs via facsimile transmission and First-Class mail informing Defendant that Defendant's responses to Plaintiff Jolevare's First Set of Interrogatories were deficient and identifying those deficiencies.

4. On September 22, 2006, counsel for Plaintiff met with counsel for Defendant and asked if or when Defendant intended to supplement Defendant's deficient discovery responses.

5. On September 22, 2006, in response to counsel for Plaintiffs' questions described in paragraph 4, counsel for Defendant stated that Plaintiff would receive complete responses to Plaintiffs' discovery requests on or before September 26, 2006.

6. Defendant has now had numerous occasions to supplement said discovery information.

7. Plaintiffs' Interrogatory No. 3[1], Defendants' Answers, and Plaintiff's noted deficiencies were as follows:

   INTERROGATORY NO. 3:  Please identify each and every person involved in any aspect of [Plaintiff's] suspension, your response should include the role each person so identified played in the suspension of [Plaintiff].

---

[1] Plaintiff Jolevare and Plaintiff Tinker submitted identical Interrogatories to Defendant. For the purposes of simplicity, Plaintiff will refer to these collectively as "Plaintiffs'" Interrogatories throughout the immediate memorandum.

**Response**:  Subject to and notwithstanding and without waiver of the foregoing objections, to the best of AKA's knowledge, information and belief, and its understanding of this Interrogatory, the following persons were "involved" in certain activities and in violation of AKA policy: Graduate members Joie Jolevare, r, Pamela Chew, Karleen Roy, Kamilah Mohhammed, Ashawntee Dingle, Miesha Darrough, Tamika McCormack and Alexandra Jones, as well as the undergraduate members present at the rehersals.  Joy Elaine Daley, Crystal Johnson and Linda M. White were involved in the investigations and decision to suspend [Plaintiff].

Salome Tinker, Joie Jolevare, Kamilah Mohhammed, Ashawntee Dingle, Miesha Darrough, and Tamika McCormack oversaw the rehearsals and provided information when interviewed during the investigation.  Various undergraduate members also provided details about the rehearsals when interview during the investigation.  Joy Elaine Daley and possible Crystal Johnson conducted the investigations into the rehearsals, and Linda M. White and Joy Elaine Daley participated in the decision making process.

**Deficiency**: Defendant's identification of "undergraduate members present" is too vague and ambiguous to be responsive to Plaintiff's Interrogatory as it does not identify any discoverable or identifiable person(s).

8. Plaintiffs' Interrogatory No. 5, Defendants' Answer, and Plaintiff's noted deficiencies were as follows:

   INTERROGATORY NO. 5:  Please describe in detail the process to be used when determining whether or not to suspend a member of Alpha Kappa Alpha Sorority.

   **Response**:  Subject to and without waiver of the forgoing objection, AKA states the AKA anti-hazing policy, as described in the AKA Anti-Hazing Handbook, "Say 'No' to Hazing," vests a Regional Director with the discretionary authority to resolve a complaint of hazing in any manner consistent with the AKA Constitution and Bylaws and the Manual of Standard Procedure without the appointment of fact-finders.  In conducting the investigation and making of subsequent decisions, Ms. Daley adhered to the guidelines and rules of the Anti-Hazing Handbook, the AKA Constitution and Bylaws and the AKA Manual of Standard Procedure.  She concluded that the graduate members, without authorization, had inappropriately required new members to attend rehearsals at inappropriate times and locations, and that such conduct amounted to hazing.

   [Plaintiff's] appropriate recourse, if she disagreed with the conclusions of the Regional Director, was to pursue her rights of appeal pursuant to AKA policy and procedure.  Rather than doing so, however, she chose to institute legal process and thereby waived her right to further review.][2]

---

[2] Defendant's Response refers Plaintiff with "See objection and response to Interrogatories 2 and 4" from which the quoted text is applied.

**Deficiencies**: Defendant's response does not address the question. Specifically, Defendant's response does not address or elaborate on the actual <u>process</u> used to determine whether a suspension is appropriate. Defendant does not identify where in the by-laws or other regulations a suspension process is explained. Defendant does not identify what steps must be taken in order to issue a suspension according to AKA's procedure, rules and regulations. Defendant does not identify what, if any, hearing, meeting, discussion, interview, fact-finding, or other process is used to determine whether a suspension is inappropriate. Defendant does not identify the standard of review used to determine a suspension. Defendant does not identify of whom the reviewing body is comprised. Defendant does not identify the timing of such a process. Defendant does not identify the where the suspension process takes place. Defendant does not identify the procedure of the appeals process. Simply put, there is no mention of the process required for AKA to suspend one of its members, but instead a narrative of what happened specifically to Plaintiffs in the above captioned case.

9. Plaintiffs' Interrogatory No. 6, Defendants' Answer, and Plaintiffs' noted deficiencies were as follows:

   <u>INTERROGATORY NO. 6</u>: Please describe in detail the process to be used when determining whether or not to suspend a member of Alpha Kappa Alpha Sorority.

   **Response**: [Subject to and notwithstanding and without waiver of the forgoing objection, AKA states that at the North Atlantic Regional Conference in New York City, on March 20, 2005, Ms. Joy Elaine Daley North Atlantic Regional Director for AKA, was approached by a soror whose daughter was a new Alpha Chapter member. She complained that her daughter was apparently being required to stay out late at night studying AKA history and rehearsing for a "show." Ms. Daley asked the mother to gather more information regarding what was occurring.

   On March 22, 2005, at 11:00 pm, the mother again contacted Ms. Daley with more information regarding the general location of the rehersals. Ms. Daley immediately called Xi Omega Basilius Phyllis Young and Graduate Advisor Pamela Chew with instructions to go in search of the location where the event was taking place. In the early morning hours of March 23, 2005, Phyllis Young called Ms. Daley to report that the women were found at a warehouse parking lot and that the outside air temperature was about 35 degrees. It appeared that the graduate members were requiring the undergraduates to rehearse for a show despite the late hour and cold conditions. Ms. Daley instructed Ms. Young to have all undergraduate and graduate members present to sign their names on a sheet of paper.

   Next, Ms. Daley began an investigation into the rehearsals. Such post-pledging activities were not to occur under AKA policy without the written authorization of Ms. Daley, as the Regional Director. She had never so authorized the rehearsals in question. With the assistance of Crystal Johnson, a member of the AKA Anti-Hazing Task Force, Ms. Daley

4

interviewed several undergraduate and graduate members that participated in the parking lot rehearsal.

The investigation revealed, among other things, that graduate members, - specifically members of the Undergraduate Activities Committee – had run the Alpha Chapter meetings and, by doing so, unilaterally determined what activities would occur. The graduate members had purposely arranged the rehearsals on the same nights as post-initiation workshops, without written authorization from the Regional Director. The graduate members had also required undergraduate members to learn and/or recite AKA history and rehearse, either at the hours or in the parking lot in questions, in violation of AKA's anti-hazing policy.

Following the investigation, Daley recommended the suspension of the graduate members that participated in the parking lot rehearsals (Joie Jolevare, Salome Tinker, Kamilah Mohammed, Ashawntee Dingle, Karleen Roy, Miesha Darrough, and Tamika McCormack), and Pamela Chew was recommended for expulsion. Daley reported her findings and recommendations to the Supreme Basileus, Linda M. White, who concurred. Next, Daley sent out letters communicating the decisions which notified the sorors of their right to appeal.

Plaintiffs Joie Jolevare and Salome Tinker did not fully exercise their rights of appeal. Instead, they chose to file the instant lawsuit before allowing the AKA appeal process to run its course.[3]  [also see Response to Interrogatory 4].

**Deficiencies:** Defendant's response does not detail how the process was followed in the instant case. Notwithstanding the fact that the process is not described at all, as discussed *supra*, Defendant's response thereafter goes on to simply conclude "Ms. Daley adhered to the guidelines and rules of the Anti-Hazing Handbook, the AKA Constitution and Bylaws and the AKA Manual of Standard Procedure." This bald assertion lacks any information responsive to the question – specifically *how* or *by what manner* the process required by AKA was followed. Simply stating that "it was followed" is a woefully insufficient answer to an interrogatory asking for details about what means were employed by Defendant to follow the process.

10. Plaintiff's Interrogatory No. 8, Defendants' Answer, and Plaintiffs' noted deficiencies

    were as follows:

    INTERROGATORY NO. 8: Please describe in detail any steps taken to investigate the activity and/or events alleged to have constituted the alleged hazing violation(s) for which [Plaintiff] was suspended.

    **Response**: See . . . response to Interrogatories 2 and 4.

---

[3] Defendant's Response refers Plaintiff with "See objection and response to Interrogatories 2" from which the quoted text is applied.

**Deficiencies**: Like Defendant's Response to Interrogatory No. 6, this response does not detail how the process was followed in the instant case. Notwithstanding the fact that the process and/or requirements of the investigation are not described at all, as discussed *supra*, Defendant's response thereafter goes on to simply conclude that "Ms. Daley adhered to the guidelines and rules of the Anti-Hazing Handbook, the AKA Constitution and Bylaws and the AKA Manual of Standard Procedure." This bald assertion lacks any information responsive to the question. "Ms. Daley began investigating the rehearsals" is an equally unhelpful answers. Presumably Ms. Daley investigated the rehearsals. However, that response is not responsive to Interrogatory No. 8 – specifically *how* or *by what manner* the investigation was conducted. Simply stating that "the AKA guidelines were followed" or "an investigation of the rehearsal was conducted" is simply an insufficient answer to an interrogatory asking for details about what means were employed, who else conducted the investigation, who was interviewed, what evidence was collected, how long the investigation took, and as the question states, *what steps were taken* to investigate the matter.

11. Plaintiffs' Interrogatory No. 9, Defendants' Answer, and Plaintiffs' noted deficiencies were as follows:

    INTERROGATORY NO. 9: Please describe in detail the results, facts, and/or conclusions drawn from each and every investigatory act identified in Interrogatory No. 8.

    **Response**: See . . . response to Interrogatories 2.

    **Deficiencies**: Since Defendant's response does not identify investigatory acts other than the finding that "Ms. Daley investigated the events" as discussed *supra*, Defendant's response is deficient and should be supplemented in accordance with the list of investigatory steps required in Defendant's Response to Interrogatory No. 8.

    In addition, to the extent that Defendant's response to Interrogatory No. 9 addresses Interrogatory No. 9, Defendant does not identify any facts determined by the investigation other than the conclusory statement that AKA's anti-hazing policy had been violated. No facts or circumstances surrounding this are discussed, nor are any of Defendant's findings that led Defendant to reach this conclusion. Defendant also does not identify what results or conclusions were drawn as applied to any and all of the other persons involved in or subject to the investigation. Defendant fails to even describe how AKA's anti-hazing policies were violated.

12. Plaintiff Oliver's Interrogatory No. 10, Defendants' Answer, and Plaintiff's noted deficiencies were as follows:

    INTERROGATORY NO.10: Please describe in detail each and every person alleged to have to have been involved in the activities and/or events alleged to have to have violated

6

the AKA's anti-hazing policy, your response should include the age of each person identified and indicate whether or not said person is currently enrolled in a program of higher education.

**Response**: Subject to and notwithstanding and without waiver of the foregoing objections, to the best of AKA's knowledge, information and belief, and its understanding of this Interrogatory, the following persons were "involved" in certain activities and in violation of AKA policy: Graduate members Joie Jolevare, Salome Tinker, Pamela Chew, Karleen Roy, Kamilah Mohhammed, Ashawntee Dingle, Miesha Darrough, Tamika McCormack and Alexandra Jones. AKA is unaware of the ages of the persons involved.

**Deficiencies**: Defendant's Response to Interrogatory No. 10 is insufficient because Defendant does not identify the ages of the person(s) named. Upon information and belief, Plaintiff has records, which include birth-dates, regarding each and every one of these members.

Plaintiff also finds Defendant's Response to Interrogatory No. 10 insufficient because Defendant does not identify any undergraduate person(s) who were involved in the March 23, 2005 incident. Upon information and belief, Plaintiff has records, which include birth-dates, regarding each and every one of these people.

In addition, Defendant's Response to Interrogatory No. 10 is insufficient because Defendant only identifies individuals involved in the activities which took place on or about March 23, 2005. Defendant does not identify any other person who was involved in the activities that have violated the AKA's anti-hazing policy at other times. Upon information and belief, and based on Alpha Kappa Alpha's website, which lists over 50 people who have been suspended or expelled in its anti-hazing section,[4] more people than Joie Jolevare, Salome Tinker, Pamela Chew, Karleen Roy, Kamilah Mohhammed, Ashawntee Dingle, Miesha Darrough, Tamika McCormack and Alexandra Jones have been involved in anti-hazing investigations by AKA.

13. Plaintiffs' Interrogatory No. 13, Defendants' Answer, and Plaintiffs' noted deficiencies

were as follows:

INTERROGATORY NO. 13: Identify each person who ahs personal knowledge of any facts relating to issues, claims, or asserted defenses in this lawsuit, and describe fully the knowledge each such person is believed to have, including but not limited to, persons who witnessed any occurrences described in the Complaint.

**Response:** Subject to and notwithstanding and without waiver of the foregoing objections, to the best of AKA's knowledge, information and belief, and its understanding of this Interrogatory, the following persons were "involved" in certain

---

[4] *Available at* http://www.aka1908.com/present/membership/riskmanagement/

7

activities and in violation of AKA policy: Graduate members Joie Jolevare, Salome Tinker, Pamela Chew, Karleen Roy, Kamilah Mohhammed, Ashawntee Dingle, Miesha Darrough, Tamika McCormack and Alexandra Jones.  AKA is unaware of the ages of the persons involved.[5]  [See also, Responses to Interrogatory 2 and 10].

14. Defendant's responses to Plaintiffs' Interrogatories are insufficient because they to "identify" any of the individuals listed in its response.  Although Plaintiff's Instructions to its Interrogatories requires that Defendant to do so, Defendant failed to "identify natural persons in its response" by listing the following information:

   (i)    The person's full name;
   (ii)   The person's race;
   (iii)  Present or last known business and residence address;
   (iv)   Present or last known telephone number;
   (v)    Present or last known position and business affiliation; and
   (vi)   Position, job description and business affiliation at the time in question.

15. However, Plaintiff does not provide any of this information at any point in Defendant's Interrogatory Responses.

16. To date, Defendants have not provided Plaintiff with full and complete answers to the propounded Interrogatories.

17. The Plaintiff must have Defendant's discovery responses in order to proceed in holding the Defendants liable for the claims stated in the Complaint.

18. As of the date of the filing of Plaintiff Jolevare and Tinker's Motion to Compel, the Defendant has not submitted complete responses to Plaintiffs' First Sets of Interrogatories nor supplemented Defendant's deficient responses to Plaintiff's First Sets of Interrogatories.

WHEREFORE, the Plaintiff, by and through counsel, Jimmy A. Bell, Esq. and the Law Office of Jimmy A. Bell, P.C., respectfully requests that this Court enter an Order compelling the Defendant to provide full and complete answers to Plaintiffs' First Sets of Interrogatories.

---

[5] Defendant's Response refers Plaintiff with "See objection and response to Interrogatories 2, 3, and 10" from which the quoted text is applied.

        Respectfully submitted,

        _____
        Jimmy A. Bell, Esq.
        Law Office of Jimmy A. Bell, P.C.
        9610 Marlboro Pike
        Upper Marlboro, MD 20772
        (301) 599-7620
        (301) 599-7623 (Fax)
        Bar No. MD 14639
        Counsel for Plaintiff