IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOIE JOLEVARE, *et al.*,                )<br>                                                          )<br>                                                          )<br>         Plaintiffs,                              )<br>                                                          )<br>    v.                                                  )<br>                                                          )<br> ALPHA KAPPA ALPHA SORORITY,  )<br> INC.,                                              )<br>                                                          )<br>         Defendant.                           ) | Case No. 1:05-cv-01982<br><br>Judge: Reggie B. Walton |

## DEFENDANT ALPHA KAPPA ALPHA SORORITY, INC.'S MEMORANDUM IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT

Defendant Alpha Kappa Alpha Sorority, Inc. ("Defendant" or "AKA"), by counsel, submits the following memorandum in support of its cross-motion for summary judgment as to the claims of Plaintiffs Joie Jolevare and Salome Tinker ("Plaintiffs"):

Plaintiffs are members of the private voluntary organization against which they brought suit, AKA. A few years ago, two AKA pledges at a California college died during a gathering of sorors and pledges at a Southern California beach. As a result of that incident and others, AKA made a determined effort to crack down on all forms of hazing. Plaintiffs are AKA sorors who were suspended by AKA after they were found to have violated AKA's anti-hazing guidelines. They now seek to have the Court overrule AKA's decision and, by implication, AKA's strict enforcement of its internal anti-hazing policy.

Plaintiffs were graduate sorors of AKA - - they had graduated from college, but were still active in the sorority - - when they presided over an after-midnight, outdoor "rehearsal" involving new undergraduate AKA sorors. The setting of that rehearsal is not in dispute: it took place after midnight, in the late evening of March 21 and early morning of March 22, 2005, in an

outdoor parking lot where the temperature was about 35 - 40 degrees Fahrenheit. After reviewing the matter, AKA determined that the "rehearsal" violated AKA's anti-hazing policy, and suspended Plaintiffs for their role in this event.

Although they filed appeals of their suspensions with AKA, Plaintiffs effectively elected to abandon those appeals when they also filed this suit in Federal Court. Plaintiffs now seek to have this Court, in essence, review and overrule AKA's determination that the rehearsal violated its anti-hazing policy. Plaintiffs assert claims against AKA for violation of the District of Columbia Human Rights Act ("HRA") (Count I); Breach of Contract (Count II); Defamation (Count III); and Negligence (Count IV). Plaintiffs' Complaint is meritless and must be dismissed in its entirety.

The law is well settled that courts should avoid interfering with the internal policies and procedures of voluntary membership organizations such as AKA; but this is precisely what Plaintiffs are asking this Court to do. Plaintiffs present no basis to invoke the Court's interference with the internal governance of AKA here, and Plaintiffs' Complaint should be dismissed in its entirety for this reason alone.

Plaintiffs' defamation count fails as a matter of law for other reasons as well. Plaintiffs failed to identify any allegedly slanderous statements in their Complaint. Instead, Plaintiffs appear to focus on AKA's alleged representation on its website that Plaintiffs were suspended from AKA for violating AKA's anti-hazing policy. This representation is true - which is an absolute defense to an action for defamation.

Finally, Plaintiffs claim under the HRA is simply a cynical attempt to distort a serious and important piece of legislation. The incident in question arose out of a rehearsal that took place outdoors in the late evening and early morning of March 21 and 22, 2005. The

temperature outside was approximately 35 – 40 degrees Fahrenheit. The graduate members of the sorority who were present, including Ms. Jolevare and Ms. Tinker, supervised the event and were suspended accordingly. Ms. Jolevare was twenty-seven years old at the time of the incident, and Salome Tinker, purportedly was thirty-seven years old at the time of the incident. The two apparently seek to invoke the HRA to suggest that they were "discriminated against" based upon their age. They were plainly disciplined for leading the new undergraduate sorors in an activity that AKA deemed violative of its anti-hazing policy, not because of their age. In any event, Plaintiffs have failed to and cannot identify any provision of the HRA that prohibits AKA's alleged conduct. The HRA count, therefore, must be dismissed with prejudice.

For these and other reasons, Plaintiffs' Complaint fails as a matter of law and must be dismissed in its entirety.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

I.  AKA, THE HAZING-RELATED DEATHS IN CALIFORNIA IN 2002, & AKA'S ANTI-HAZING POLICY

AKA is a private, voluntary, social organization comprised of African American women that was established in 1908 to "cultivate and encourage high scholastic and ethical standards, improve the social stature of the race, promote unity and friendship among college women, and keep alive within graduates an interest in college life and progressive movement emanating therefrom." AKA Constitution and Bylaws, Preamble (2004), a copy of which Plaintiffs produced to AKA in discovery ("Constitution & Bylaws") and is attached hereto as Exhibit 1. AKA is composed of chapters throughout the country known as graduate and undergraduate. (Exh. 1, AKA Constitution, Article I; Article III, Section 4). In recent years, AKA has become increasingly concerned about hazing activities occurring within various chapters.

On September 9, 2002, two pledges of a California chapter of AKA drowned in the waters of Dockweiler Beach in California during initiation activities. (See Complaint at ¶ 5). The families of the two AKA initiates who drowned brought wrongful death lawsuits against AKA.

In response to the two drownings in September 2002, "a moratorium was placed nationally on the sorority for the hazing incident in California," and "[n]o chapter could initiate new members" (Complaint at ¶¶ 5 - 6). Furthermore, AKA's Supreme Basileus appointed a "Risk Management Task Force to propose by laws and procedures to reduce the sorority's vulnerability to lawsuit." (See p. 7 of Exhibit 4 to Deposition of Evelyn Sample-Oates taken on December 6, 2006, which is AKA's Anti-Hazing Handbook, Say "No" to Hazing! (2005) (the "Handbook"). A copy of the Handbook is attached hereto as Exhibit 2). Among the critical objectives of the Risk Management Task Force were "[t]o increase the required qualifications for graduate advisors, members of graduate advisory councils and mentors," "[t]o develop strategies to change sorors' attitudes and behaviors that reinforce hazing," and "[t]o develop stricter sanctions for violation of the sorority's Anti-Hazing Policy." (See Exh. 2, the Handbook, at pp. 7 – 8).

In 2005, AKA published its revised anti-hazing handbook, "Say 'No' to Hazing" (*i.e.* Exh. 2, the Handbook), which was provided to all sorors. The Handbook was intended to further implement AKA's "zero-tolerance policy" that hazing is strictly prohibited within the organization and will not be tolerated in any form. (See Exh. 2, the Handbook, at pp. 3 & 9). The Handbook defines hazing as:

> [A]n act or series of acts which includes, *but is not limited to*, physical acts such as hitting, striking, laying hands upon or threatening to do bodily harm to any individual(s), while acting in one's capacity as a member of Alpha Kappa Alpha, behavior which is directed against any individual(s) for the purpose of causing

shame, abuse, insult, humiliation, intimidation or disgrace, and a variety of prohibited practices, *including but not limited to*, "underground hazing", "financial hazing", "pre-pledging", "post-pledging", or "post-initiation pledging".

(See Exh. 2, the Handbook, at p. 9) (emphasis added).

Authority for undertaking the fact finding, making determinations, and implementing disciplinary processes under the anti-hazing policy were, not surprisingly, delegated to AKA. (Id.)

II.     THE AFTER MIDNIGHT "REHEARSALS"

Plaintiffs were sorors who had graduated from Howard University ("graduate sorors"), and also graduate certified advisors, of the Xi Omega Chapter of Howard University. (Complaint at ¶¶ 30 - 31). As graduate certified advisors, Plaintiffs were to serve as advisors to undergraduate members of the sorority, and to supervise all activities of undergraduate chapters of the sorority. AKA Manual of Standard Procedure at p. 6 (2004), a copy of which Plaintiffs produced to AKA in discovery (the "Manual") and is attached hereto as Exhibit 3.

In the spring of 2005, 137 undergraduate members were initiated into the Alpha Chapter of AKA at Howard University. (Complaint at ¶ 24). The recently initiated members of the Alpha Chapter were to put on a "campus introduction show" after their initiation. (Complaint at ¶¶ 25 – 26). Plaintiffs, as graduate sorors, assisted "with teaching the newly initiated 137 sorors the AKA song and step [for the campus introduction show]." (Complaint at ¶ 28). Thus, late in the evening of March 21, and into the early morning of March 22, 2005, Plaintiffs held a "rehearsal" with approximately 115 of the newly initiated Alpha Chapter undergraduate sorors at an outdoor parking lot near the University of Maryland in College Park, Maryland. (See Deposition of Salome Tinker, dated September 22, 2006 ("Tinker Dep."), at pp. 25:22 – 30:18,

41:8 – 42:1). The temperature was approximately 40 degrees Fahrenheit. (See Tinker Dep. at pp. 82:4 – 83:4). A copy of all cited portions of the Tinker Dep. is attached hereto as Exhibit 4.

This was not the first time the newly initiated undergraduate sorors had practiced late in the evening for the "campus introduction show." In fact, AKA had previously received a complaint from an AKA soror concerning the rehearsals. On the evening of March 21, AKA was notified that the new initiates were rehearsing and an attempt was made to locate the sorors. (See Certification of Joy Elaine Daley ("Daley Cert.") at ¶¶ 4 – 9, a copy of which is attached hereto as Exhibit 5).

In the early morning hours of March 22, 2005, the approximately 115 newly initiated Alpha Chapter undergraduate sorors, along with Plaintiffs and six other graduate sorors of the Xi Omega Chapter, were found rehearsing in the parking lot. The six other graduate sorors of the Xi Omega Chapter who were with Plaintiffs at the parking lot rehearsal on March 21 – 22, 2005 are Miesha Darrough, Ashawntee Dingle, Alexandra Jones, Tamika McCormack, Kamillah Muhammad and Karleen Roy. (See Exh. 4, Tinker Dep., at pp. 25:22 – 30:18, 41:8 – 42:1, 82:4 – 83:4; see also Exh. 5, Daley Cert., at ¶¶ 4 – 9; see also list of those present at the March 21 – 22, 2005 rehearsal taken by Plaintiff Salome Tinker and recreated by soror Pamela Chew, and referred to in Daley Cert. at ¶ 9, labeled as documents DEF 00001 – DEF 00008, copies of which are attached hereto as Exhibit 6).

After an investigation, AKA determined that the graduate sorors had violated AKA's anti-hazing policy by requiring the newly-initiated sorors to participate in the rehearsal at 2:00 a.m., in an outdoor parking lot, with the temperature near freezing. (See Exh. 5, Daley Cert., at ¶¶ 8 – 14; see also Exh. 4, Tinker Dep., at pp. 25:22 – 30:18, 41:8 – 42:1, 82:4 – 83:4). On September 19, 2005, AKA suspended Plaintiffs because of their presence at, and participation in,

-7-

the parking lot rehearsal. AKA also suspended all of the other graduate sorors present at the parking lot rehearsal: Mlles. Darrough, Dingle, Jones, McCormack, Muhammad and Roy. (See Exh. 5, Daley Cert., at ¶¶ 12,14).

III.    PLAINTIFFS' RIGHT TO APPEAL THEIR SUSPENSIONS & THE COMPLAINT IN THIS MATTER

On September 30, 2005, Plaintiff Joie Jolevare appealed her suspension by a memorandum submitted to the Executive Director, the Supreme Basileus, and the North Atlantic Regional Director of AKA at the time. (See memorandum for appeal from suspension of Joie Jolevare, dated September 30, 2005, a copy of which Plaintiffs produced to AKA in discovery and a copy of which is attached hereto as Exhibit 7.) On October 7, 2005, after she had filed suit in this action, plaintiff Salome Tinker purported to appeal her suspension by a memorandum submitted to the Executive Director, the Supreme Basileus, and the North Atlantic Regional Director of AKA at the time. (See memorandum for appeal from suspension of Salome Tinker, dated October 7, 2005, a copy of which Plaintiffs produced to AKA in discovery and a copy of which is attached hereto as Exhibit 8). However, before those appeals could move forward, Plaintiffs moved the dispute into litigation. On October 6, 2005, weeks before a response to their appeal would be due, Plaintiffs filed their Complaint in this action.

# ARGUMENT

## I. SUMMARY JUDGMENT SHOULD BE ENTERED WHEN NO MATERIAL FACTS ARE IN DISPUTE AND THE MOVING PARTY IS ENTITLED TO JUDGMENT AS A MATTER OF LAW

A party is entitled to summary judgment if it can demonstrate that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006).

> The mere existence of *some* alleged factual dispute between the parties[, then,] will not defeat summary judgment; the requirement is that there be no *genuine* issue of *material* fact. A fact is "material" if a dispute over it might affect the outcome of a suit under governing law; factual disputes that are irrelevant or unnecessary do not affect the summary judgment determination. An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. If there are no genuine issues of material fact, the moving party is entitled to judgment as a matter of law if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Id. (internal quotations and citations omitted) (emphasis in the original). In the instant matter, no material facts are in dispute and judgment should be entered in favor of AKA.

## II. SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF AKA ON PLAINTIFF'S CLAIM COUNTS I - IV, BECAUSE PLAINTIFFS ARE NOT ENTITLED TO USE THE COURT TO INTERFERE IN AKA'S INTERNAL PROCEDURES

### A. Courts Have Classically Refrained from Becoming Involved In The Internal Affairs of Private Voluntary Organizations

Plaintiffs disagree with AKA's application of the policies and procedures outlined in AKA's Constitution and Bylaws and its anti-hazing handbook (the Handbook). (Complaint at ¶ 48). Plaintiffs seek, in essence, to have the Court act as an appellate panel for the actions taken by AKA - - a private, voluntary organization. There is no legal basis for such an intervention into the internal affairs of AKA and Plaintiffs' Complaint should be dismissed.

-8-

AKA is a private, voluntary organization. (See, e.g., Complaint at ¶ 23). Persons seek membership therein and agree to be bound by the policies and procedures thereof, including the anti-hazing and disciplinary policies and procedures. (See Complaint at ¶55; see also Deposition of Joie Jolevare, dated September 22, 2006 ("Jolevare Dep."), at pp. 36:7 – 39:6, 79:16 – 17 and 80:13 – 82:9. A copy of all cited portions of the Jolevare Dep. is attached hereto as Exhibit 9.). Pursuant to its private and voluntary nature, and the agreement of its members to be bound by its rules and regulations, and its discretion in enforcing the same, standard judicial review is not available. In the District of Columbia, as elsewhere, it is recognized that "[c]ourts ordinarily will not interfere with the management and internal affairs of a voluntary association." Levant v. Whitley, 755 A.2d 1036, 1042 (D.C. 2000) (quotation omitted). See also Avin v. Verta, 106 A.2d 145, 147 (D.C. 1954) (citing Fish v. Huddell, 51 F.2d 319 (1931)); Nat'l Assoc. for the Advancement of Colored People v. Golding, 342 Md. 663, 672 (Md. 1996) ("[A]s a general rule, courts will not interfere in the internal affairs of a voluntary membership organization."). Here, there is no basis for Plaintiffs to invoke judicial intervention in their disagreement with AKA, and each count so premised -- Counts I – IV – must be dismissed.

      i.    AKA's Anti-Hazing Policy Is Its Good Faith Attempt to Halt Improper Activities

AKA has prohibited hazing since its inception in 1908. (See Exh. 2, the Handbook, at p. 5). Unfortunately, and as AKA recognizes, hazing continues to exist in the AKA organization. (Exh. 2, the Handbook, at pp. 5 – 7). In 1998, AKA's then Supreme Basileus instituted a campaign against hazing, and worked to adopt a "zero-tolerance" policy for any type of hazing within AKA. (Id.) The Supreme Basileus' campaign culminated in AKA adopting and implementing an official anti-hazing policy. (Id.) AKA then memorialized its policy in its first

handbook concerning hazing. (Id.) The seriousness with which AKA takes its anti-hazing policy cannot be underscored enough.

As noted above, in September 2002 two pledges of a California chapter of AKA drowned at Dockweiler Beach in California during initiation activities. AKA, in its endeavors to prevent hazing in its organization, took it upon itself to address with sorors their attitudes toward what constitutes hazing, committed itself to change sorors' attitudes and beliefs about what constitutes hazing, and determined that it would adopt stricter penalties for those who violate AKA's anti-hazing policy. (Exh. 2, the Handbook, at pp. 5 – 7). In light of the recent hazing-related deaths and AKA's firm commitment to stop hazing, it is not surprising that AKA would adopt a strict policy regarding hazing. Plaintiffs cannot claim surprise at AKA's policy – the written materials they received when they joined AKA made this plain. (See, e.g., Complaint at ¶ 55; see also Exh. 9, Jolevare Dep., at pp. 36:7 – 39:6, 79:16 – 17 and 80:13 – 82:9).

  ii. Plaintiffs' Role in the "Rehearsals"

Again, Plaintiffs are graduate sorors of AKA. (Complaint at ¶¶ 30 -31). They have been members of the Xi Omega Chapter since they graduated from Howard University. (Id. at ¶ 31). In the spring of 2005, 137 undergraduates were initiated into the Alpha Chapter of AKA at Howard University. (Id. at ¶ 24). Plaintiffs, as graduate sorors and advisors, were to supervise the newly initiated members in AKA activities. (See id. at ¶ 28). Plaintiffs and other graduate sorors held a "rehearsal" for the new undergraduate sorors to learn the AKA song and step for a "campus introduction show." (See id.) A rehearsal - - involving 115 of the new initiates, and 8 graduate sorors, -- was held in a parking lot in Maryland to rehearse for the show on the evening of March 21, 2005. (See Exh. 5, Daley Cert., at ¶¶ 4 – 11; see also the list of those sorors present during the parking lot rehearsal at Exh. 6). Around 2:00 a.m. the next morning, the AKA

undergraduate and graduate sorors were discovered rehearsing in the parking lot with the temperature near forty degrees Fahrenheit. (Id.)

### iii. AKA's Enforcement of Its Policy

The North Atlantic Regional Director -- Joy Elaine Daley, whose jurisdiction includes the District of Columbia and Maryland (see Exh. 1, Constitution and Bylaws, at Bylaws Article I, Section 12; Article II, Sections 1(a) and 2) – was the person delegated by AKA with responsibility for handling hazing complaints in her jurisdiction. She conducted an investigation and determined that requiring the undergraduate sorors to participate in such a rehearsal was a violation of AKA's anti-hazing policy. (See Exh. 5, Daley Cert., at ¶¶ 10-14). The facts upon which Ms. Daley relied to come to her decision are not in dispute – a rehearsal took place for the "campus introduction show", outdoors, that began late at night and went into the early morning hours of the next day, when it was nearly freezing outside. (See Exh. 4, Tinker Dep., at pp. 25:22 – 30:18, stating that "[T]he purpose of the rehearsal [starting on March 21, 2005] was to practice for the show", "the rehearsal began about 11:00, 10:00 or 11:00 [p.m.]", and lasted until "about 1:00 a.m." "The rehearsal was in two parts. It started inside. That's where [the newly initiated undergraduate sorors] learned the basic steps, because it was cold. Then the actual rehearsal moved outside. The second part of the rehearsal did not start until about 12:00", "[in a parking lot somewhere in College Park, Maryland]", and "it was about 40 degrees . . . ."; see also Exh. 4, Tinker Dep., at pp. 41:8 – 42:1, 82:4 – 83:4). Based on these facts, Ms. Daley subsequently recommended Plaintiffs for suspension for hazing, and Plaintiffs were suspended. (See Exh. 5, Daley Cert., at ¶¶ 11, 12, 14).

While AKA's Constitution & Bylaws, and Manual of Standard Procedure, provide for a specified appeal process in such a circumstance, Plaintiffs chose to abandon that process and

instead seek relief with the Court. Pursuant to District of Columbia law, Plaintiffs should not be permitted to seek to have this Court overrule AKA's determination, and the Complaint should be dismissed accordingly.

### III. SUMMARY JUDGMENT SHOULD ALSO BE GRANTED IN FAVOR OF AKA ON PLAINTIFFS CLAIM COUNT III, BECAUSE THE UNDISPUTED FACTS DEMONSTRATE THAT PLAINTIFFS CANNOT PREVAIL ON THEIR DEFAMATION CLAIM

Plaintiffs complain that their names being listed on the AKA website as sorors who were and are suspended for hazing policy violation(s) is defamatory. (See Complaint at ¶¶ 58 – 63; Exh. 9, Jolevare Dep., at pp. 153:8 – 158:22; Exh. 4, Tinker Dep., at pp. 57:1 – 64:17). A statement is defamatory if "'it tends to injure [the] plaintiff in his [or her] trade, profession or community standing or lower him in the estimation of the community.'" Beeton v. District of Columbia, 779 A.2d 918, 923 (D.C. 2001) (quoting Guilford Transp. Indus., Inc. v. Wilner, 760 A.2d 580, 594 (D.C. 2000)). In order to prevail on a defamation claim, a plaintiff must show (1) "that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm." Beeton, 779 A.2d at 923 (quoting Crowley v. North American Telecomms. Assoc., 691 A.2d 1169, 1173 n.2 (D.C. 1997)).

Plaintiffs cannot prevail on their defamation claim because the alleged defamatory statement is true. See Benic v. Reuters America, Inc., 357 F. Supp. 2d 216, 221 (D.D.C. 2004) ("Truth is an absolute defense to defamation claims.") (citing Olinger v. American Savings & Loan Assoc., 409 F.2d 142, 144 (D.C. Cir. 1969)). In the instant matter, the publication on the AKA website that Plaintiffs were suspended for hazing activities is true. Plaintiffs were, in fact,

suspended for hazing and those suspensions for hazing provide the basis for Plaintiffs' suit before the Court. Plaintiffs have failed to establish a necessary element of their defamation claim, and the defamation count should be dismissed.

Further, even if Plaintiffs contend that the defamatory statement at issue is that "Plaintiffs hazed," Plaintiffs *did* haze. Plaintiffs ignore that AKA's definition of hazing is broader in scope than the definition Plaintiffs proffer. Indeed, even that portion of the text of the definition to which they cite undermines their position. (See Complaint at ¶ 33, citing to "AKA Const. Art. V.", which states that hazing is "an act or series of acts *which includes, but is not limited to*, physical acts such as hitting, striking, laying hands upon or threatening to do bodily harm to any individual(s), while acting in one's capacity as a member of Alpha Kappa Alpha.") (emphasis added). According to Plaintiffs' definition of hazing then, the two women who drowned at Dockweiler Beach in September 2002 were not hazed because they were not physically struck or otherwise physically threatened when they were directed to go into the water.

In the instant matter, it is undisputed that approximately 115 undergraduate sorors were directed to practice in a parking lot in Maryland for the "campus introduction show", in the late evening of March 21, 2005 into the early morning of March 22, 2005, where the temperature was near freezing. (See Exh. 4, Tinker Dep., at pp. 25:22 – 30:18, 41:8 – 42:1, 82:4 – 83:4; Exh. 5, Daley Cert., at ¶¶ 4 – 11; Complaint at ¶¶ 25 – 26, 28; and Exh. 3, the Manual, at p. 6). Plaintiffs and other Xi Omega Chapter members supervised the undergraduate sorors during this rehearsal. (Id.) It is this set of facts upon which the then North Atlantic Regional Director, Joy Elaine Daley, relied to determine that Plaintiffs had hazed. AKA then suspended Plaintiffs for such activities. Thus, Plaintiffs do not have a viable defamation claim *even if* the alleged defamatory statement is that "Plaintiffs hazed," because Plaintiffs did in fact haze. See, e.g., Benic v.

Reuters America, Inc., 357 F. Supp. 2d 216, 223 (D.D.C. 2004) (finding that the "worst reasonable implication" of an intranet announcement within plaintiff's workplace that plaintiff had left the company was that plaintiff had been fired, which was true. "Accordingly, this claim cannot survive summary judgment.").[1]

IV.  **SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF AKA ON COUNT IV, BECAUSE THE UNDISPUTED FACTS DEMONSTRATE THAT PLAINTIFFS CANNOT PREVAIL ON THEIR VIOLATION OF HUMAN RIGHTS ACT CLAIM**

Plaintiffs claim that AKA suspended them because of their age and not because they were hazing the newly initiated undergraduate sorors. (See Complaint at ¶¶ 46 – 51). Those sorors who were suspended pursuant to the parking lot rehearsal were all graduate sorors of the Xi Omega chapter. As Plaintiffs recognize, the graduate sorors were to supervise the newly initiated members in AKA activities. (See Complaint at ¶ 28). Thus, the decision to suspend the Xi Omega Chapter graduate sorors who were present at the rehearsal, including Plaintiffs, was based on the distinction between who was running the rehearsal (graduate sorors) and who was doing the rehearsing (undergraduate sorors). Those sorors who were running the rehearsal were

---

[1] Also, as a statement of opinion, Plaintiffs cannot prove that the statement, "Plaintiffs hazed", is false. In order to prevail on a defamation claim, plaintiff must prove that the statements at issue are false. (See Benic, 357 F. Supp. 2d at 223.) And, a "statement of opinion is actionable only if it has an explicit or implicit factual foundation and is therefore objectively verifiable." (Guilford Transportation Indus., Inc. v. Wilner, 760 A.2d 580, 597 (D.C. 2000). In Benic, for example, plaintiff brought a defamation claim against his former employer based on the former employer's statement that plaintiff was a "bad manager." On appeal, the court found that plaintiff's evidence that one former subordinate thought favorably of plaintiff

[did] not raise a genuine issue with regard to the truth of the statement in question, i.e. whether [plaintiff's] superiors were correct in their assessment that [plaintiff] was a bad manager. Within that context, one individual's testimony expressing positive feelings about [plaintiff's] management fails to raise a genuine issue of fact regarding the substantial truth of [defendants'] statement. Consequently, the Court concludes that [plaintiff's] defamation claim regarding [defendants'] statement about [plaintiff's] management cannot withstand the defendants' Motion for Summary Judgment.

357 F. Supp. 2d at 224.

the graduate sorors present, all of whom were suspended regardless of their age. Plaintiffs claim under the D.C. Human Rights Act is frivolous and it cannot withstand scrutiny.

Moreover, in making their D.C. Human Right Act claim, Plaintiffs fail to identify the provision of the D.C. Human Rights Act that they contend prohibits AKA's alleged conduct. Plaintiffs do state, however, that AKA's purported conduct "denied Plaintiffs, directly or indirectly, the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodation of AKA . . . ." (Complaint at ¶ 50). This language suggests that Plaintiffs believe AKA is a place of public accommodation under the D.C. Human Rights Act. See D.C. Code § 2-1402.31(a)(1) (stating that it is an unlawful discriminatory practice to "deny [based on age], directly or indirectly, any person the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodations."). AKA is not a place of public accommodation. Instead, AKA is a private, voluntary organization. (See, e.g., Complaint at ¶ 23). Persons seek membership therein, and agree to be bound by the policies and procedures thereof, including the anti-hazing and disciplinary policies and procedures. Thus, that portion of the D.C. Human Rights Act upon which Plaintiffs rely does not apply and cannot provide redress for them as AKA is a private, not public, organization. Plaintiffs discrimination claim should be dismissed accordingly.

## CONCLUSION

The Court should dismiss Plaintiffs' Complaint in its entirety. First, it is improper for Plaintiffs to seek redress with the Court under the circumstances in the instant matter. This jurisdiction, like others, has been reluctant to allow itself to be brought into the affairs of private voluntary organizations. AKA is such an organization. Regardless, Plaintiffs' defamation cannot be maintained. The allegedly defamatory statement at issue is true. Finally, Plaintiffs

claim under the D.C. Human Rights Act cannot be maintained either. Plaintiffs have failed to identify any facts substantiating their age discrimination claim. Moreover, Plaintiffs have not identified any provision of the D.C. Human Rights Act that prohibits AKA's purported discriminatory conduct.

WHEREFORE, for the foregoing reasons, Defendant Alpha Kappa Alpha Sorority, Inc. respectfully requests that its cross-motion for summary judgment be granted.

### LCvR7(f) REQUEST FOR ORAL HEARING

Pursuant to LCvR 7(f) of the Local Rules of the United States District Court for the District of Columbia, AKA requests an oral hearing on its Cross-Motion for Summary Judgment.

### LCvR7(m) CERTIFICATION STATEMENT

Pursuant to LCvR 7(m) of the Local Rules of the United States District Court for the District of Columbia, AKA has attempted to address the subject of this Cross-Motion with Plaintiffs' counsel prior to filing this Cross-Motion. AKA's attempts have been unsuccessful and AKA must seek further redress with the Court.

/s/
Thomas S. Schaufelberger, DC Bar No. 371934
Shannon H. Bates, DC Bar No. 480186
Saul Ewing LLP
2600 Virginia Avenue, NW
Suite 1000 – The Watergate
Washington, DC 20037
Telephone: 202-295-6600
Facsimile: 202-295-6700
*Counsel for Defendant Alpha Kappa Alpha Sorority, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that, on this 18th day of January, 2007, a true and correct copy of the foregoing Defendant Alpha Kappa Alpha Sorority, Inc.'s Cross-Motion for Summary Judgment, Memorandum in Support of its Cross-Motion for Summary Judgment, and proposed Order were served, via electronic filing, upon:

Jimmy A. Bell, Esq.
Law Office of Jimmy A. Bell, P.C.
9610 Marlboro Pike
Upper Marlboro, MD  20772
*Counsel for Plaintiffs Joie Jolevare and Salome Tinker*

/s/
Thomas S. Schaufelberger