# EXHIBIT 2



# ANTI-HAZING HANDBOOK

# Say "No" To Hazing!

ALPHA KAPPA ALPHA SORORITY, INCORPORATED

*2005 Edition*

DEF 00201



ALPHA KAPPA ALPHA SORORITY, INCORPORATED
*Corporate Office*
*5656 S. Stony Island Avenue*
*Chicago, Illinois 60637*
*www.aka1908.com*

Alpha Kappa Alpha Sorority, Incorporated

# ANTI-HAZING HANDBOOK

*Say "No" To Hazing!*

*First Edition 2001*
*Revised 2005*

DEF 00202

## Message from the Supreme Basileus

Dear Sorors,

The revised Anti-Hazing Handbook is presented to individual members, chapters, university and college officials and the general public. It addresses the Anti-Hazing Policy and Procedures and Strategies of Alpha Kappa Alpha Sorority, Incorporated, to implement our zero-tolerance policy.

The Anti-Hazing Handbook used in conjunction with other Risk Management procedures adopted by the Directorate has strengthened Alpha Kappa Alpha's campaign against hazing.

I extend my sincere thanks to the following members of the Risk Management Task Force for their dedication and commitment to updating this document.

Rachel Ashburn Mallory, Chairman, Risk Management Task Force and Chairman, National Constitution Committee

Alana Broady, Chairman, National Membership Committee

C. Edith Booker, Chairman National Graduate/Undergraduate Concerns Committee

Nekeidra C. Brown, Chairman, National Undergraduate Activities Committee (2004-2006)

Betty Davis-Gause, Mid-Western Regional Director

Diana G. Shipley, Former Far Western Regional Director

Jatisha Marsh, Chairman, National Undergraduate Activities Committee (2002-2004)

Mitzi Dease Paige, Former Member, National Constitution Committee

Vicki Miles-LaGrange, Co-Author, First Anti-Hazing Policy and Handbook

Peggy Q. Quince, Co-Author, First Anti-Hazing Policy and Handbook

Cynthia Howell, Deputy Director

Each member of the Sorority must vow to be informed and knowledgeable about the Alpha Kappa Alpha Anti-Hazing Policy. We must promise to be intolerant of deviant ideas and actions that threaten the life of our organization. We must continue our mantra and resolve to "Say No to Hazing".

Sisterly,
Linda M. White
Supreme Basileus
July, 2005

**CHAPTER I**

## TABLE OF CONTENTS

**FORWARD**   Message from the Supreme Basileus...........................3

**Chapter I**    History of Anti-Hazing Campaign ............................5

**Chapter II**   Anti-Hazing Policy......................................................9

**Chapter III**  Procedure to Implement Anti-Hazing Policy ..........11

**Chapter IV**  Anti-Hazing: The Alpha Kappa Alpha Strategy.....17

**Chapter V**   Ten Myths and Ten Facts About Hazing .................20

**Chapter VI**  Ten Anti-Hazing Tips for Graduate Advisors .........22

**Chapter VII**  Ten Anti-Hazing Tips for Graduate and
Undergraduate Basilei...............................................23

**Chapter VIII** Ten Anti-Hazing Tips for Regional Directors .........24

**Chapter IX**  Digest of State Anti-Hazing Laws ...........................25

### Appendices

*A   Flow Charts: How to Resolve a Hazing Complaint.............33*

*B   Sample Hazing Complaint Form............................................35*

*C.  Sample Fact Finding Final Report Form...............................36*

*D.  Joint Position Statement Against Hazing of National
Pan-Hellenic Council, Incorporated ....................................37*

## HISTORY OF ANTI-HAZING CAMPAIGN
## BY
## ALPHA KAPPA ALPHA SORORITY, INC.

The first incident of hazing within Alpha Kappa Alpha Sorority, Incorporated (Alpha Kappa Alpha) is unknown but it has been a prohibited activity since Alpha Kappa Alpha's inception in 1908. Despite this prohibition against hazing, it exists within Alpha Kappa Alpha by long-standing, clandestine conduct and underground practices among some of the members as well as by anonymous instigators.

Hazing is not unique but is all too pervasive within sororities and fraternities. This widespread problem prompted the Council of Presidents of the National Pan-Hellenic Council, Incorporated, (NPHC) to adopt a Joint Position Statement Against Hazing in September 2000. The statement is a collective reaffirmation by Alpha Kappa Alpha and African-American sororities and fraternities of the ideals of sisterhood and fraternalism in an atmosphere of responsibility and respect. Hazing is antithetical to these ideals and is prohibited by the rules of each NPHC organization.

Pursuant to the *Constitution and Bylaws and Manual of Standard Procedure* of Alpha Kappa Alpha, hazing and related activities by its members before, during and after the Membership Intake Process (MIP) are expressly prohibited.

In 1998, Supreme Basileus Norma Solomon White, upon taking the helm of Alpha Kappa Alpha, initiated a vigorous campaign against hazing, made it a high priority, and took bold and creative steps to communicate a "zero-tolerance" policy for any form of hazing within Alpha Kappa Alpha. As a part of this campaign in December 1998, Soror White appointed an Ad Hoc Committee Against Hazing, and enlisted Sorors Peggy Quince and Vicki Miles-LaGrange to develop, draft and author the first Anti-Hazing Policy and Procedure to Implement the Policy of Alpha Kappa Alpha Sorority, Incorporated.

The purposes of the Anti-Hazing Policy and the Procedure to Implement

**DEF 00204**

the Policy are:

1) To create a standard, uniform, understandable and efficient process to substantiate and quickly discipline members of Alpha Kappa Alpha who engage in any form of hazing;

2) To communicate a strong message throughout the membership that hazing will not be tolerated and any instances will be swiftly and thoroughly investigated and severely punished; and

3) To provide another mechanism to support the Directorate, specifically Regional Directors and the Supreme Basileus, in responding to and resolving allegations of hazing and deciding whether a person or chapter is entitled to continued privileges of membership within Alpha Kappa Alpha.

In 1999, the campaign against hazing within Alpha Kappa Alpha was strengthened by the Directorate's adoption of the Anti-Hazing Policy and Procedure to Implement the Policy. The Anti-Hazing Policy was first published in *The Ivy Leaf*, Fall 1999.

The Anti-Hazing Policy articulated the prior informal process for resolving complaints of hazing, but also created a more formal process of fact finding. The first group of Fact Finders was trained at the 1999 Leadership Seminar in Orlando, Florida. Since that time trained Fact Finders have been appointed by the Supreme Basileus, upon the request of the Regional Director. Their goal is to determine whether a violation has occurred and if so, to recommend individual and/or chapter penalties to the Supreme Basileus.

After one year of experience with the anti-hazing policy and procedures, Supreme Basileus Norma Solomon White appointed an Anti-Hazing Team to develop and produce the first Alpha Kappa Alpha Anti-Hazing Handbook. The team consisted of: Sorors Vicki Miles-LaGrange, Chairman, Moisette I. "Tonya" Green, Peggy Lewis LeCompte, Brenda Lewis Mumford, Angela T. Okunsanya and Peggy Quince.

In September, 2002, Alpha Kappa Alpha Sorority, Incorporated faced a major lawsuit alleging hazing activities. An investigation of the case was conducted and Supreme Basileus Linda Marie White requested Sorors Vicki Miles-LaGrange and Peggy Quince review the sorority's *Constitution*

*and Bylaws* and other procedural documents to make their recommendations to the Directorate for revisions to the sorority's Anti-Hazing Policy. Based on their report and recommendations, and with approval of the Directorate, Supreme Basileus Linda White appointed a Risk Management Task Force to propose by laws and procedures to reduce the sorority's vulnerability to lawsuit.

The members of the Task Force appointed were: Sorors Rachel Ashburn Mallory, Chairman of the National Constitution Committee, Jatisha Marsh, Second Supreme Anti-Basileus and Chairman of the National Undergraduate Activities Committee, Betty Davis-Gause, Mid-Western Regional Director, Alana Broady, Chairman of the National Membership Committee, C. Edith Booker, Chairman of the National Graduate/Undergraduate Concerns Ad Hoc Committee, Vicki Miles-LaGrange, Former Chairman, Anti-Hazing Task Force and Co-Author of the Anti-Hazing Policy and Handbook of Alpha Kappa Alpha Sorority, Incorporated, and Peggy Quince, Former Member, Anti-Hazing Task Force and Co-Author of the Anti-Hazing Policy and Handbook of Alpha Kappa Alpha Sorority, Incorporated.

The following objectives of the Risk Management Task Force were identified as being critical to establishing controls for better management and supervision of membership and reduction of risk to the sorority:

1) To develop the only Anti-Hazing Statement to appear in all documents of the sorority the Task Force determined as being pertinent;

2) To develop stricter sanctions for violation of the sorority's Anti-Hazing Policy;

3) To develop a procedure for reactivation of individuals and chapters to active status after completing periods of suspension for violation of the Anti-Hazing Policy;

4) To develop a requirement for undergraduate and graduate chapters that supervises undergraduate chapters to hold liability insurance;

5) To increase the required qualifications for graduate advisors, members of graduate advisory councils and mentors;

6) To establish role delineation between the Alpha Kappa Alpha

DEF 00205

graduate advisor, campus advisor, members of the graduate advisory council, the mentor, and the graduate chapter basileus of the supervising graduate chapter;

7) To increase the training for graduate advisors and expand training to graduate chapter basilei, of chapters that supervise undergraduate chapters, members of graduate advisory councils and mentors;

8) To improve the chapter membership intake orientation workshop, membership intake weekend workshops and post intake weekend workshops;

9) To specify by rule who may participate in the undergraduate membership intake process;

10) To develop a *Public Awareness – Public Education Campaign* as part of the sorority's Anti-Hazing strategy; and

11) To develop strategies to change sorors' attitudes and behaviors that reinforce hazing.

In July 2004, Sorors Nekeidra C. Brown, newly elected Second Supreme Anti-Basileus, Diana G. Shipley, former Far Western Regional Director and Mitzi Dease Paige, former member of the National Constitution Committee were appointed to join the original members.

At the 2004 Boule, delegates adopted proposed amendments to the Bylaws that established the Anti-Hazing Policy as a bylaw, increased the eligibility requirements for the office of the graduate advisor, established a provision for supervision of undergraduate chapters, established the additional penalty option of fines for violation of the *Constitution and Bylaws,* and established suspension and expulsion (which may be accompanied by fines) as the only penalties for proven violation of the Alpha Kappa Alpha Sorority, Incorporated Anti-Hazing Policy.

By 2005, all of the original objectives of the Risk Management Task Force had been achieved. Our anti-hazing infrastructure has been enhanced and strengthened.

This is the backdrop upon which Alpha Kappa Alpha continues to wage its war against hazing.

## CHAPTER II

## ANTI-HAZING POLICY
## OF
## ALPHA KAPPA ALPHA SORORITY, INCORPORATED

### PREAMBLE

Hazing will not be tolerated within Alpha Kappa Alpha Sorority, Incorporated ("Alpha Kappa Alpha"). Hazing is harmful and can result in the death of a person. Hazing also interferes with the development of the friendships that are the basis of sisterhood within Alpha Kappa Alpha.

The Anti-Hazing Policy of Alpha Kappa Alpha is adopted to create a standard, uniform and efficient process to address hazing activities by the members active, inactive or prospective, and to resolve complaints regarding hazing. Hazing is strictly prohibited and will not be tolerated in any form by Alpha Kappa Alpha. The effective implementation of the Anti-Hazing Policy depends upon the cooperation of the entire membership. All known instances of hazing must be reported immediately in the manner described in the Procedure to Implement Anti-Hazing Policy.

### AUTHORITY

Alpha Kappa Alpha, pursuant to its *Constitution and Bylaws* and the *Manual of Standard Procedure,* has the authority and responsibility for the fact finding and disciplinary processes related to violations of its Anti-Hazing Policy.

### HAZING DEFINED

Hazing is an act or series of acts which includes, but is not limited to, physical acts such as hitting, striking, laying hands upon or threatening to do bodily harm to any individual(s), while acting in one's capacity as a member of Alpha Kappa Alpha, behavior that is directed against any individual(s) for the purpose of causing shame, abuse, insult, humiliation, intimidation or disgrace, and a variety of prohibited practices, including but not limited to, "underground hazing", "financial hazing", "pre-pledging", "post-pledging", or "post-initiation pledging".

Hazing is strictly prohibited and will not be tolerated in any form by

Alpha Kappa Alpha Sorority, Incorporated.                                                    **CHAPTER III**

## SCOPE OF THE ANTI-HAZING POLICY

Prospective members of Alpha Kappa Alpha, both graduate and under-graduate, have the right to be treated fairly, with dignity and respect, before, during, and after the official Membership Intake Process. This policy shall apply to all members of Alpha Kappa Alpha who engage in hazing activities. Any prospective member of Alpha Kappa Alpha subjected to any form of hazing or anyone having knowledge of hazing activities within Alpha Kappa Alpha must file a written complaint with the Regional Director pursuant to the Procedure to Implement Anti-Hazing Policy.

## CONSEQUENCES OF VIOLATING THE ANTI-HAZING POLICY

Any final determination of a violation(s) of this Anti-Hazing Policy, pursuant to the Procedure to Implement Anti-Hazing Policy of Alpha Kappa Alpha, may result in suspension or revocation of chapter and/or individual privileges and/or permanent expulsion from membership in Alpha Kappa Alpha. Hazing activities may also result in official discipline by a college or university or even the imposition of civil and criminal penalties for individuals and/or chapters of Alpha Kappa Alpha.

## ANTI-HAZING STATEMENT

The purpose of Alpha Kappa Alpha Sorority is to cultivate and encourage high scholastic and ethical standards, to promote unity and friendship among college women, and to be of service to all mankind. Hazing does not represent the values of Alpha Kappa Alpha Sorority, Incorporated and will not be tolerated.

## ALPHA KAPPA ALPHA SORORITY, INCORPORATED

## PROCEDURE TO IMPLEMENT ANTI-HAZING POLICY

### I.   Initiation of Hazing Complaint

A hazing complaint may be initiated by submitting a Hazing Complaint Form to the Regional Director. A Hazing Complaint Form may be obtained from the Alpha Kappa Alpha website or from the Regional Director.

Upon receipt of the written complaint, the Regional Director shall immediately order all activities of the chapter and/or the individual to cease, pending resolution of the hazing complaint.

The Regional Director shall also forward immediately to the Corporate Office a copy of the Hazing Complaint Form and attachments.

### II.   Resolving A Hazing Complaint

#### A.   Resolution by Regional Director Without Appointed Fact Finders

A Regional Director has the discretionary authority to resolve a complaint of hazing in any manner consistent with the *Constitution and Bylaws* and *Manual of Standard Procedure* of Alpha Kappa Alpha Sorority without the appointment of fact finders.

The Regional Director shall determine within thirty (30) days after receipt of a written complaint whether a violation(s) has occurred. In all cases where it has been determined that a hazing violation has occurred and the parties can be identified, the Regional Director shall immediately impose individual and/or chapter penalties, subject to the approval of the Supreme Basileus.

The Supreme Basileus shall approve, modify or reject the decision of the Regional Director within thirty (30) days after receipt, and notify the Regional Director in writing of her decision.

The Regional Director shall within ten (10) days after receipt of the final action by the Supreme Basileus notify the individual(s), college or university and the Alpha Kappa Alpha Corporate Office of the action to be taken.

10                                            11        **DEF 00207**

Individual notification shall be in writing and delivered by certified mail, return receipt requested.

## B. Resolution of a Hazing Complaint by Regional Director, Supreme Basileus and Appointed Fact Finders

Fact finding is another procedure available to the Directorate of Alpha Kappa Alpha to assist in its decision concerning whether a person or chapter is entitled to continued privileges of membership. The appointment of fact finders is an option available to Regional Directors to assist in resolving a complaint of hazing.

The appointment of a fact finding team by the Supreme Basileus, upon the request of the Regional Director, of no less than three members of Alpha Kappa Alpha, shall be made within fourteen (14) days of receipt of a written hazing complaint.

Within twenty-one (21) days after the appointment of the fact finding team, the team shall visit the appropriate site(s).

The graduate basileus and/or graduate advisor, in consultation with the Regional Director and the fact finding team, shall coordinated arrangements for the fact finding visit, including the scheduling of interviews and arranging access to the parties, witnesses, and relevant documents.

> Within fourteen (14) days of the fact finding visit, the fact finding team shall submit a Fact Finding Final Report to the Supreme Basileus and the Regional Director.

> Within fourteen (14) days after receipt of the written Fact Finding Final Report, the Regional Director shall determine whether a violation has occurred, and if so, recommend individual and/or chapter penalties to the Supreme Basileus.

> Within thirty (30) days of the Regional Director's determination whether a violation has occurred, the Supreme Basileus shall in writing, approve, modify, or reject the recommendations of the Regional Director.

> Within ten (10) days of action taken by the Supreme Basileus, the Regional Director shall notify the individual(s), chapter(s), college or university and Alpha Kappa Alpha Corporate Office of the final decision. Individual notification shall be in writing and delivered by certified mail, return receipt requested.

For good cause shown, the Supreme Basileus or the Regional Director may extend any of the deadlines pertaining to resolving a complaint of hazing with or without fact finding.

## III. Appeal

An appeal from the decision by the Supreme Basileus or the Regional Director shall be commenced in accordance with the *Constitution and Bylaws* and *Manual of Standard Procedure* of Alpha Kappa Alpha.

## IV. The Fact Finding Process

### A. The Fact Finding Team

The members of the fact finding team shall have no prior knowledge of the facts and circumstances related to the complaint and must be equally receptive to facts which negate or substantiate the allegations of the complaint.

The complaint shall be assigned to a fact finding team with knowledge of the Anti-Hazing Policy, Procedure to Implement the Policy, *Constitution and Bylaws* and *Manual of Standard Procedure* of Alpha Kappa Alpha. At least one member of the fact finding team shall be an attorney, hearing officer, mediator, arbitrator, or a related profession.

The fact finding process shall be conducted in a fair, impartial, timely and efficient manner.

The confidential report of the fact finding team shall be submitted to the Supreme Basileus and to the Regional Director.

### B. Prohibition of Interference in Fact Finding Process

Any prospective, active or inactive member who interferes with the fact finding process shall be in violation of the policies of Alpha Kappa Alpha and subject to the appropriate penalties. Interference in the fact finding process includes, but is not limited to, attempts to intimidate a witness or a party, through force or fear or by threatening physical or mental harm.

DEF 00208

**C.  Request for Information**

Any prospective, active or inactive member of Alpha Kappa Alpha shall comply with the Anti-Hazing Policy and Procedure to Implement Anti-Hazing Policy. Compliance is also required with any written request for information, documents and records that are deemed necessary for the fact finding process. Failure to comply with this provision shall subject the chapter and/or individual to the appropriate penalties from Alpha Kappa Alpha.

**D.  Methods of Fact Finding**

Fact finding will be conducted utilizing established methods, including but not limited to:

1.  Written and/or oral questions;
2.  Interviewing witness(es);
3.  Requests for written information;
4.  On-site visits; and
5.  Fact finding conferences.

**E.  Rights and Responsibilities of the Complainant**

The person initiating a hazing complaint has the following rights and responsibilities:

1.  To be available for scheduled fact finding interviews;
2.  To be advised of the process for conducting the fact finding;
3.  To honestly and truthfully respond to all inquiries relating to the complaint and to cooperate fully during the fact finding process;
4.  To refrain from any action that may interfere with the fact finding process of the complaint, including any action that may intimidate, threaten, or harass any person who has or may provide information to the fact finders; and
5.  To be notified, in writing, of the final action taken regarding the hazing complaint.

**F.  Rights and Responsibilities of the Respondent**

A member or prospective member of Alpha Kappa Alpha who is named in a complaint or is identified during the course of the fact finding process as being a party to the alleged violation is entitled to the following rights and responsibilities during the fact finding process:

1.  To be advised generally of the pendency of a hazing complaint against her;
2.  To be advised of the process for conducting the fact finding and of her responsibilities during the course of the fact finding;
3.  To be interviewed by the fact finder;
4.  To be honest and truthful in responding to all inquiries during the course of the fact finding process;
5.  To submit a contemporaneous written statement of her position concerning the allegation(s);
6.  To refrain from any action that may interfere with the fact finding process including any action that may intimidate, threaten, or harass any person who has or may provide information to the fact finders;
7.  To be notified, in writing, the final action regarding the hazing complaint; and
8.  Members or prospective members who are no longer at their college or university shall be notified at their last known home address.

**G.  Witness Selection**

Witnesses should be selected based on their knowledge of the circumstances of the complaint. While it is the fact finder's decision which witness(es) are to be interviewed, the fact finder must remain cognizant of the need to have the fact finding process not only be fair but be perceived as fair.

The fact finder shall interview those persons named in the complaint or in any written response as having information to either prove or disprove the allegation(s) in the complaint.

DEF 00209

**H. Responsibilities of Witness(es)**

A witness who gives information to the fact finders has the following responsibilities:

1. To be available for scheduled interviews during the fact finding process;

2. To respond honestly and truthfully to all inquiries and to cooperate fully during the course of the fact finding; and

3. To refrain from any action that may interfere with the fact finding process, including any action that may intimidate, threaten or harass any person who has or may provide information to the fact finder.

**V.   The Fact Finding Final Report**

A Fact Finding Final Report shall be prepared at the conclusion of the fact finding process and submitted to the Regional Director and the Supreme Basileus within fourteen (14) days of the fact finding visit. The report shall contain the following information:

**A.   Summary of the Hazing Complaint**

A summary of the hazing complaint shall include relevant information about the parties and the nature of the complaint. The issue(s) investigated and the corrective action requested by the complainant shall also be included.

**B.   Information Collected**

Information collected may include, but is not limited to, photographs, statements of witnesses, interview summaries, documents, files, correspondence, copies of email messages, reports and records.

**C.   Observations**

The Fact Finding Final Report may include observations of the fact finding team, including observed behaviors of the witnesses during their testimony.

---

**CHAPTER IV**

## ANTI-HAZING:  THE ALPHA KAPPA ALPHA STRATEGY

*\*This chapter describes Alpha Kappa Alpha's comprehensive approach to educate its members and the public that hazing will not be tolerated.*

### Prior To Membership

1) **A brochure entitled "General Information for the Collegian" is distributed to college and university officials for circulation on campuses which recognize Alpha Kappa Alpha. A similar brochure entitled "General Information Regarding Graduate Membership" is available for the prospective graduate candidate. They describe the general nature of the Alpha Kappa Alpha Membership Intake Process (MIP) and Anti-Hazing Policy. The brochures state in pertinent part:**

> *The purpose of Alpha Kappa Alpha Sorority is to cultivate and encourage high scholastic and ethical standards, to promote unity and friendship among college women, and to be of service to all mankind.  Hazing does not represent the values of Alpha Kappa Alpha Sorority, Incorporated and will not be tolerated.  Hazing may include, but is not limited:*
>
> > *- Attending unauthorized rush meetings or sessions;*
> >
> > *- Removing garments;*
> >
> > *- Eating or drinking anything as a requirement for membership;*
> >
> > *- Being subjected to any form of verbal, physical or mental harassment or intimidation.*
>
> *Alpha Kappa Alpha Sorority, Incorporated requires that those interested in membership will support our policy against hazing, harassment and/or humiliation of any kind.*
>
> *Colleges and universities also have rules that prevent hazing and penalties for such acts.  Hazing is against the law in MOST states in the United States.*
>
> ***See** "General Information for the Collegian" and "General Information Regarding Graduate Membership" by Alpha Kappa Alpha Sorority, Incorporated.*

DEF 00210

2) **Chapters must have held a Membership Intake Process Workshop and sorors must have signed a Commitment Statement prior to the beginning of the intake process (including the Rush activity) which states:**

> As a financial member of the above chapter, I agree to report and not to participate in any activity that violates the Constitution and Bylaws of Alpha Kappa Alpha Sorority, Incorporated. I realize that violations by members and/or chapters are subject to withdrawal of member and/or chapter privileges, suspension, expulsion and/or criminal or civil prosecution. I have received a copy of the Alpha Kappa Alpha Anti-Hazing Policy and the Soror Code of Ethics. I will do all in my power to maintain the high standards and purposes of Alpha Kappa Alpha.

> See **"Undergraduate Membership Intake Process Manual"** and **"Graduate Membership Intake process Manual" (Rev. 2004), "Soror Commitment Statement".**

3) **Every undergraduate Rush participant and prospective graduate candidate receives a letter from the Regional Director of Alpha Kappa Alpha Sorority, Incorporated, which states, among other things:**

> Hazing may include but is not limited to:
> - Attending unauthorized meeting, sessions, or activities;
> - Removing garments;
> - Eating or drinking anything as a requirement for membership;
> - Being subject to any form of verbal, physical, or mental harassment or intimidation.

> If any form of hazing is or has been asked of you, it is your responsibility to report it immediately to Ms./Mrs. _____ at _____(telephone no.). To do so will not impact negatively on your acceptance for membership, if you meet the criteria. If you experience or witness hazing but refuse to admit proven action, you will not become a member of Alpha Kappa Alpha. Persons who become members of Alpha Kappa Alpha who are found to have engaged in any form of hazing are subject to suspension, expulsion, the imposition of fines and/or criminal or civil prosecution.

> You are not to meet with any member of Alpha Kappa Alpha unless the graduate advisor (undergraduate)/Membership Chairman (graduate) is present.

> See **"Undergraduate Membership Intake Process Manual" (Rev. 2004), "Graduate Membership Intake Process Manual" (Rev. 2004/2005 insert), "Regional Director's Letter to Rush Participants", "Regional Director's Letter to Prospective Graduate**

Candidates for Membership".

4) "In the event a prospective candidate (for membership into Alpha Kappa Alpha) has experienced or witnessed hazing but refuses to admit proven action, she shall not be initiated."

> See **Constitution and Bylaws, Article IV, Section 27.**

5) "Undergraduate candidates (for membership into Alpha Kappa Alpha) are only to be in meetings where the graduate advisor is present."

> See **"Undergraduate Membership Intake Process Manual" (Rev. 2004), "Do's and Don'ts for Candidates".**

6) "Candidates and newly initiated members don't run personal errands, perform tasks, complete assignments for any sorority member, or attend any unauthorized meetings before, during or after the official MIP."

> See **"Undergraduate Membership Intake Process Manual" and "Graduate Membership Intake Process Manual" (Rev. 2004), "Do's and Don'ts for Candidates".**

7) "Sorors do refrain from hazing or any other 'punitive' actions before, during or after the official MIP [membership intake process]."

> See **"Undergraduate Membership Intake Process Manual" and "Graduate Membership Intake Process Manual" (Rev. 2004), "Do's and Don'ts for Sorors".**

**During Membership Intake Process**

8) Graduate sorors are encouraged to serve as mentors for newly initiated members. For undergraduates, the soror responsible for initiating the mentoring process is the graduate chapter basileus with the assistance of the graduate advisor.

> See **"Undergraduate Membership Intake Process Manual" and "Graduate Membership Intake Process Manual" (Rev. 2004).**

9) Undergraduate candidates for membership, and their parent(s) or legal guardians, are required to complete and sign an Undergraduate Membership Interest Form. The form includes an acknowledgement that the signers have "read, understand and will abide by the policy of Alpha Kappa Alpha Sorority, Incorporated, which forbids hazing." The form includes the

following language in bold letters:

**Alpha Kappa Alpha Sorority, Incorporated, has a strict policy against hazing. Hazing may include, but is not limited to: attending unauthorized rush meetings or sessions; removing garments; eating or drinking anything given to you as a requirement of membership in Alpha Kappa Alpha Sorority, Incorporated; or being subjected to any form of verbal, physical, or mental harassment or intimidation. Alpha Kappa Alpha Sorority, Incorporated's requirement is that those interested in membership in Alpha Kappa Alpha Sorority, Incorporated will support our policy against hazing, harassment and/or humiliation of any kind.**

See **"Undergraduate Membership Intake Process Manual" (Rev. 2004) "Undergraduate Membership Interest Form".**

10)  Every candidate for membership is required to complete a Candidate Commitment Statement that states:

*As a candidate for membership of Alpha Kappa Alpha Sorority, Incorporated, I intend to take an oath to obey the laws of the Sorority and be fully cognizant of those laws that relate to hazing; and having an earnest desire to uphold and support the bonds of sisterhood; and knowing that abuse of any kind – verbal or non-verbal, physical or mental – is contrary to building the sisterhood which we desire, I do hereby commit myself to refrain from allowing any act or word that may violate the laws of Alpha Kappa Alpha Sorority, Incorporated, and thereby jeopardize my future, and that of others in the Sorority. I will not abuse or haze. Should any such occur, I promise to immediately make the violation known to the Membership Chairman, Basileus, and/or Regional Director. I understand that not to do so will jeopardize my opportunity to become a member of Alpha Kappa Alpha Sorority, Incorporated.*

See **"Undergraduate Membership Intake Process Manual" and "Graduate Membership Intake Process Manual" (Rev. 2004), "Undergraduate Membership Interest Form".**

## Before, During and After Membership in Alpha Kappa Alpha Sorority, Incorporated

11)  The Anti-Hazing Policy of Alpha Kappa Alpha Sorority, Incorporated states, in part:

*Hazing shall not be tolerated within Alpha Kappa Alpha Sorority, Incorporated. Hazing is harmful and can even result in the death of a person. Hazing also interferes with the development of the friendships that are the basis of sisterhood within Alpha Kappa Alpha Sorority, Incorporated.*

*Any final determination of violation of this Anti-Hazing Policy, pursuant to the Procedures to Implement the Anti-Hazing Policy of Alpha Kappa Alpha, may result in suspension or revocation of chapter and/or individual privileges and/or permanent expulsion from*

*membership in Alpha Kappa Alpha. Hazing activities may also result in official discipline by a college or university or even the imposition of civil and criminal penalties for individuals, chapters and for the entire Sorority.*

See **"Anti-Hazing Policy of Alpha Kappa Alpha Sorority, Incorporated (Rev. 7/05)**

12)  The Procedure to Implement Anti-Hazing Policy states in part:

*A hazing complaint may be initiated by submitting a Hazing Complaint Form to the Regional Director. A Hazing Complaint Form may be obtained from the Alpha Kappa Alpha website or From the Regional Director.*

*Upon receipt of the written complaint, the Regional Director shall immediately order all activities of the chapter and/or individual to cease, pending resolution of the hazing complaint.*

*The Regional Director shall also forward immediately to the Corporate Office a copy of the Hazing Complaint Form and her attachments.*

See **Procedures to Implement Anti-Hazing Policy of Alpha Kappa Alpha Sorority Incorporated (Rev. 7/05)**

## Public Awareness

13)  The following brochures which explain the purpose of Alpha Kappa Alpha Sorority, Incorporated, general requirements for membership, and the Alpha Kappa Alpha Sorority Anti-Hazing Policy are available to members of the sorority, prospective members, parents of prospective members, college and university officials, and the general public:

1)  **"General Information For The Collegian"**

2)  **"General Information Regarding Graduate Membership"**

3)  **"General Information For College Bound Teenage Women and Their Parents"**

These brochures may be obtained by contacting the Alpha Kappa Alpha Corporate Office: Telephone:  (773) 684-1282 or website at:  www.aka1908.com

DEF 00212

Alpha Kappa Alpha Sorority, Incorporated lists on its website the names of members of the organization who are suspended and/or expelled. The website also lists chapters which are suspended. This information is available to both members and to the general public.

**Suspension of an individual member** disqualifies the member from participation in the Sorority and all sorority activities for the period of the suspension. **(Alpha Kappa Alpha Sorority, Incorporated Bylaws, Article VI, Section 7a)**

**Expulsion of an individual member** revokes the individual's membership in Alpha Kappa Alpha Sorority, Incorporated. **(Alpha Kappa Alpha Sorority, Incorporated Bylaws, Article VI, Section 8)**

# CHAPTER V

## TEN MYTHS AND TEN FACTS ABOUT HAZING

*Myth #1*  Hazing consists of a few harmless acts, harmless traditions or silly acts and are a normal part of the rituals and Membership Intake Process of Alpha Kappa Alpha Sorority, Incorporated.

*Fact #1*  **Hazing is about abuse of power and demeaning the dignity of a person. It is a form of abuse and victimization and can lead to bodily injury.**

*Myth #2*  Hazing empowers people.

*Fact #2*  **Hazing takes power away from people.**

*Myth #3*  Hazing encourages and infuses people with motivation and inspiration.

*Fact #3*  **Hazing belittles people.**

*Myth #4*  Hazing unifies people. It helps people bond and become one.

*Fact #4*  **Demeaning people is not the way to build lasting relationships. There are many ways to build lasting relationships. Hazing is not the way.**

*Myth #5*  If you are not hazed, you are not "made right."

*Fact #5*  **The making of a good Alpha Kappa Alpha member involves cultivating knowledge of the Sorority and love and respect for its members.**

*Myth #6*  Hazing teaches respect and promotes discipline.

*Fact #6*  **Respect is earned and not taught. You do not respect a person who abuses you. It alienates any affection you may have for a person. It breeds, not respect, but suspicion, mistrust, alienation, and separatism.**

*Myth #7*  Hazing makes joining the Sorority fun.

*Fact #7*  **Anything that causes mental or physical anguish is not fun. Anything that causes confusion, frustration, or stress is not fun.**

DEF 00213

*Myth #8*  Hazing builds leaders and fosters leadership and character.

*Fact #8*  **Abusive behavior, assault, and harassment are not character builders and do not build positive leaders nor foster positive leadership characteristics. It contributes to the decay of the very foundations upon which our sorority was founded.**

*Myth #9*  Hazing is one of the ways prospective members show their dedication to the sorority and earn their pearls.

*Fact #9*  **The Membership Intake Process is an educational period. The process encourages potential members to work for the good of the sorority. It focuses on creating a lifetime interest in working for the betterment of all mankind.**

*Myth #10*  It's difficult to determine whether or not a certain activity is hazing – it's such a gray area sometimes.

*Fact #10*  **If the answer to any of the following questions is "yes," the activity is probably hazing. If you have to ask if it's hazing, it is.**
   1) **Is alcohol involved?**
   2) **Will active/current members of the group refuse to associate with new members unless they do exactly what they're being asked to do?**
   3) **Does the activity risk emotional or physical abuse?**
   4) **Is there risk of injury or a question of safety?**
   5) **Do you have any reservation about describing the activity to your parents, a professor or university official?**
   6) **Would you object to the activity being photographed for the school newspaper or filmed by the local TV news crew?**[1]

---
[1] Adapted from StopHazing.org, "Myths & Facts About Hazing," (2001)

24

# CHAPTER VI

## TEN ANTI-HAZING TIPS FOR GRADUATE ADVISORS

1. **ESTABLISH** a working relationship with the appropriate university or college officials.

2. **PROVIDE** a copy of the Alpha Kappa Alpha Anti-Hazing Policy and General Information for the Collegian Brochure to the appropriate university or college.

3. **SECURE** copies of university, college, local and state hazing policies for undergraduate chapter records and information.

4. **ATTEND** every undergraduate chapter meeting and always be available, visible and supportive.

5. **COMMUNICATE** with the graduate chapter by regularly attending executive board meetings and graduate chapter meetings with a written report to keep graduate chapter informed of all undergraduate activities.

6. **WORK** with Graduate Chapter Basileus to ensure that undergraduates attend cluster meetings, regional conference, Boule and Leadership Seminar.

7. **ASSIST** undergraduates in understanding the role of the Graduate Advisor, Graduate Chapter Basileus, Mentor, Members of Graduate Advisory Council, and Regional Director through a written description of responsibilities and instructions concerning when it is appropriate to contact whom and for what issue.

8. **SHARE** resource materials with the Graduate Chapter Basileus and make sure the documents used by the undergraduates are current.

9. **MEET** semiannually in a joint meeting of graduate and undergraduate chapters. Other joint activities are encouraged.

10. **RECOGNIZE AND REWARD** accomplishments and academic success of undergraduate chapter members and general members.

25    **DEF 00214**

CHAPTER VII                                                              CHAPTER VIII

**TEN ANTI-HAZING TIPS FOR
UNDERGRADUATE AND GRADUATE CHAPTER BASILEI**

1.  **DISCERN** and know that hazing is **NOT** just an undergraduate problem.

2.  **TEACH AND MENTOR** our undergraduates and new graduates about our legacy, our "service to all mankind" and make them understand what AKA is about.

3.  **ELEVATE** the status of the Graduate Advisor and make it a 'sought-after' position within the chapter.

4.  **BE AVAILABLE AND ACCESSIBLE** to membership chair and to undergraduate advisor to discuss any potential hazing issues within their chapters.

5.  **LEAD** by example and your steadfast belief in the Anti-Hazing Policy will be followed by others.

6.  **PRESIDE** at meetings and sorority functions in a manner that reflects the meaning of sisterhood.

7.  **EXECUTE** your responsibilities as a leader and in a manner that exemplifies sisterly love for Alpha Kappa Alpha.

8.  **DELEGATE** to each member the responsibility of reporting and condemning instances of hazing.

9.  **DIRECT** other chapter members in their understanding of the "costs of hazing."

10. **COLLABORATE** with the Graduate Advisor, Regional Director, and Supreme Basileus in making anti-hazing the Alpha Kappa Alpha way of life.

11. **WORK** with Graduate Advisor to ensure that undergraduates attend cluster meetings, regional conference, Boule and Leadership Seminar.

**TEN ANTI-HAZING TIPS FOR REGIONAL DIRECTORS**

1.  **SPONSOR** anti-hazing programs at the Undergraduate Round-Up and during plenary sessions at regional conferences to expand the awareness of Alpha Kappa Alpha's anti-hazing campaign.

2.  **EXERCISE** general supervision over the chapters of her region.

3.  **DECIDE** hazing complaints, in coordination with the Supreme Basileus, in an efficient and unbiased manner.

4.  **APPROVE** haze-free candidates for participation in the membership process and for membership in Alpha Kappa Alpha.

5.  **PRESIDE** in a fair and impartial manner over all hazing controversies without regard to the persons involved.

6.  **SAFEGUARD** the interest of the region by requiring strict compliance with the Anti-Hazing Policy.

7.  **PROTECT** the interest of Alpha Kappa Alpha.

8.  **ENSURE** the just and speedy resolution of all hazing complaints.

9.  **CREATE** an atmosphere throughout the region that conveys to members and prospective members the value of sisterhood principles to Alpha Kappa Alpha.

10. **ENHANCE** the image of Alpha Kappa Alpha by its example of a haze-free membership intake process.

**DEF 00215**

**CHAPTER IX**

# DIGEST OF STATE ANTI-HAZING LAWS

**Alabama.** Hazing (which includes acts of commission and omission) is a Class C misdemeanor, and one who commits shall be punished and subject to forfeiture of scholarships, etc. Perpetrators are also subject to other criminal charges such as assault, murder, etc. ALA. CODE § 16-1-23 (1995).

**Arkansas.** Hazing is a Class B misdemeanor (which includes acts of commission and omission) punishable as such and upon conviction shall be expelled from school. ARK. CODE ANN. §§ 6-5-201, 6-5-202, 6-5-203 (1987).

**California.** Hazing is punishable as a misdemeanor, which carries a fine of from $200 to $5000 or imprisonment for up to one year, or both. CAL. (EDU) CODE §§ 32050-32051 (1994).

**Colorado.** Hazing is a Class 3 misdemeanor and punishable as such, and includes activities not covered by other criminal statutes. COLO. REV. STAT. § 18-9-124 (1999).

**Connecticut.** Hazing shall subject the organization to suspension of privileges for at least one year and a fine of up to $500, while the individual offender shall be subject to a fine of up to $1000. This statutory provision does not limit any other criminal or civil action. CONN. GEN. STAT. § 53-23a (1994).

**Delaware.** Hazing is defined as a Class B misdemeanor and punishable as such, punishment under the anti-hazing statute in addition to any other criminal or civil penalties applicable. This statute requires all colleges, etc. to promulgate written rules and regulations prohibiting persons and organizations from engaging in hazing activities. DEL. CODE ANN. TIT. 14 §§ 9301,9302, 9303, 9304 (1975).

**Florida.** Requires state universities and community colleges to adopt written anti-hazing policies, including penalties for the enforcement of such rules. FLA. STAT. ANN. §§ 240, 240-262, 240.326, 246.232 (1999).

**Georgia.** Hazing defined and punished as a misdemeanor of a high and aggravated nature. GA. CODE ANN. § 16-5-61 (1981).

**Idaho.** Defines hazing and provides it is a misdemeanor. IDAHO CODE § 18-917 (1991).

**Illinois.** Defines hazing and provides that a violation is a Class A misdemeanor or Class 4 felony if the activity results in death or great bodily harm. 720 ILL. COMP. STAT §§ 120/0.01, 120/5, 120/10 (1993).

**Indiana.** Defines hazing in terms which require a risk of bodily injury and describes hazing with certain factors as ranging from a Class B misdemeanor to a Class C felony. IND. CODE §§ 34-30-2-50, 35-42-2-2 (1999).

**Iowa.** Defines hazing in terms of acts which endanger a student's health or safety and provides punishment as a simple or serious misdemeanor and possible referral to civil authorities. IOWA CODE ANN. § 708.1 (1993).

**Kansas.** Defines hazing in terms of acts which could reasonably be expected to result in great bodily harm and classifies the promoting or permitting of hazing as a Class B misdemeanor. KAN. STAT. ANN. § 21-3434 (1995).

**Kentucky.** Provides that trustees of universities and boards of regents of state colleges adopt policies, including penalties, prohibiting acts that endanger mental or physical health of students. The penalties provided shall be in addition to other criminal or civil penalties provided by law. KY. REV. STAT. ANN. § 164.375 (1986).

**Louisiana.** Hazing penalized by fine of from $10 to $100 or imprisonment from ten to thirty days or both and shall be expelled for that term. LA. REV. STAT. ANN. § 1801 (2001).

**Maine.** The school board for the public schools and the trustees for every post-secondary institution shall adopt an anti-hazing policy, which shall include penalties for the violator thereof. The penalties shall include suspension or expulsion and shall be in addition to any other civil or criminal penalties which may be applicable. ME. REV. STAT. ANN. TIT. 20 § 6553 (1999).

**Maryland.** Defines hazing as an act which subjects a student to the risk of serious bodily injury. When such injury occurs, the violator is guilty of a misdemeanor and subject to a fine of up to $500 and imprisonment up to six months or both. MD. CODE ANN. (CRIMES AND PUNISHMENTS) § 268H (1985).

**Massachusetts.** Defines hazing as conduct which endangers the physical or mental health of person. An organizer or participant in the crime of hazing shall be subject to a fine of up to $3000 or imprisonment up to one year or both. MASS. GEN. LAWS CH.269 §§ 269.17, 269.18, 269.18 (2000).

**Minnesota.** Defines hazing as an act that creates a substantial risk of harm and provides for the adoption of written anti-hazing policies by colleges and universities. MINN. STAT. ANN. § 135A.155 (2000).

**Mississippi.** Defines hazing as conduct which creates a substantial risk of physical injury and provides for punishment of fines up to $2000 or imprisonment up to six months or both with such penalties depending on the actual causing of injury or not. MISS. CODE ANN. § 97-3-105 (1999).

**Missouri.** Defines hazing and includes but is not limited to acts endangering a person's physical or mental health and provides for punishment as a misdemeanor or felony. MO. ANN. STAT. §§ 578.360, 578.365 (1995).

**Nebraska.** Any person who hazes is guilty of a misdemeanor, and any organization of students whose members haze shall be fined $10,000 or less. Consent to hazing is not a defense. NEB. REV. STAT. §§ 28-311.06, 28-311.07 (1994).

**Nevada.** A person who hazes another is guilty of a misdemeanor. If substantial bodily harm results, the person is guilty of a gross misdemeanor. Consent of a victim is not a valid defense. NEV. REV. STAT. § 200.605 (1999).

**New Hampshire.** A person is guilty of a misdemeanor if she hazes another, submits to hazing and fails to report it to law enforcement or school authorities, or is present at or has knowledge of hazing and fails to report it. A school or organization is also guilty if it knowingly permits or condones, fails to take reasonable action to prevent, or fails to report hazing. Consent shall not be a defense. N. H. REV. STAT. ANN § 631:7 (1993).

**New Jersey.** A person who hazes is guilty of a disorderly person's offense, and if serious bodily injury to another results, she is guilty of aggravated hazing. Consent to hazing is not a defense. N.J. STAT. §§ 2C:40-3, 2C:40-4 (1995).

**New York.** Hazing in the first degree is a misdemeanor when it creates a substantial risk of physical injury and causes such injury. Hazing in the second degree creates a substantial risk of injury. N.Y. (PENAL) LAW §§ 120.16, 120.17 (1997).

**North Carolina.** Any hazing to annoy, frighten, scold, beat, harass or subject a student to personal indignity is a misdemeanor. Upon conviction for hazing, a student shall be expelled from school in addition to any punishment imposed by the court. N.C. GEN. STAT. §§ 14-35, 14.36 (1994).

**Ohio.** Any person subjected to hazing may file a civil action for injury or damages against any participant; officer who authorized, requested, commanded or tolerated hazing; or organization whose officers authorized, requested, commanded or tolerated hazing. The negligence or consent of the plaintiff or any assumption of risk by the plaintiff is not a defense. A person who recklessly participates in hazing, or school employee who recklessly permits hazing is guilty of a misdemeanor. OHIO REV. CODE ANN. § 2307.44 (1982).

**Oklahoma.** Any organization guilty of hazing shall be guilty of a misdemeanor and may be punished by a fine of $1500 or less and forfeit its rights and privileges of operating at an institution of higher learning for at least one year. Any individual who hazes is guilty of a misdemeanor and may be punished by 90 days imprisonment, a fine of $500 or less, or both. Any act of hazing shall presumed to be a forced activity, even if the victim willingly participates. OKLA. STAT. ANN. TIT. 21§ 1190 (1995).

**Oregon.** A fraternity, sorority, or other student organization that hazes commits a Class A violation. A member of a fraternity, sorority, or other organization who personally hazes commits a Class B violation. OR. REV. STAT. § 163.197 (1999).

**Pennsylvania.** Any person who causes or participates in hazing, whether on- or off-campus, commits a misdemeanor of the third degree. Each academic institution shall provide an enforcement program, including rules and penalties, which shall be imposed in addition to any criminal sanction. PA. STAT. ANN. TIT. 24 § 5352 (1992).

**Rhode Island.** Any organizer of participant in hazing shall be guilty of a misdemeanor and fined $500 or less, imprisoned at least 30 days but not more than one year, or both. Any school official who knowingly permits hazing shall be guilty of a misdemeanor and fined at least $10 or no more than $100. R. I. GEN. LAWS §§ 11-21-1, 11-21-2 (1956).

**South Carolina.** It is unlawful for any person to haze or knowingly permit, or assist any person in hazing, or to fail to report any information regarding hazing to the chief executive officer of the school. Anyone who violates the law against hazing is guilty of a misdemeanor and must be punished by a fine of $500 or less, imprisoned for 12 months, or both, and may be expelled, dismissed, suspended, or punished by the school president. Consent is not a defense. S.C. CODE ANN. §§ 16-3-510 through 16-3-540, 59-101-200 (1976).

**Tennessee.** Each higher education institution shall adopt a written policy prohibiting hazing. It shall also set aside time during orientation to discuss the policy, the institutional penalties that may be imposed, and the policy's ramifications as a criminal offense. TENN. CODE ANN. § 49-7-123 (1995).

**Texas.** A person is guilty of hazing if she hazes; solicits, encourages, directs, aids or attempts to aid in hazing; recklessly permits hazing; or has firsthand knowledge of plans to haze or hazing and fails to report that knowledge in writing to the dean of students or appropriate school official. Failing to report hazing and hazing without bodily harm are Class B misdemeanors, while hazing that causes serious bodily harm is a Class B misdemeanor. An organization that condones or encourages hazing, or has officers, members, pledges or alumni who commit or assist in hazing is guilty of a misdemeanor, which is punishable by a fine of $5,000 to $10,000 if there is no personal injury, property damage or other loss, or $5,000 to double the amount of the loss or expenses incurred if there is injury, damage or loss. Consent is not a defense. TEX. (EDUC.) CODE ANN §§ 37.151-37.157, 51.936 (1996).

**Utah.** An actor who hazes another is guilty of a class C misdemeanor; a class B misdemeanor if there are no aggravating circumstances; a class A misdemeanor if the act involves the operation or other use of a motor vehicle; a third degree felony if the act involves the use of a dangerous weapon; a third degree felony if the hazing results in serious bodily injury to a person; or a second degree felony if the resulting serious bodily injury involves the use of a dangerous weapon. It is not a defense to prosecution of hazing that a person under 21, against whom the hazing was directed, consented to or acquiesced in the hazing activity. A person who in good faith reports or participates in reporting of an alleged hazing is not subject to any civil or criminal liability regarding the reporting. UTAH CODE ANN. §§ 53A-11-908, 76-5-107.5 (1997).

**Vermont.** It shall be unlawful to engage in hazing; solicit, direct, aid, or attempt to aid, or abet another person engaged in hazing; or knowingly fail to take reasonable measures within the scope of the person's authority to prevent hazing. It is not a defense in an action under this subchapter that the person against whom the hazing was directed consented to or acquiesced in the hazing activity. A person who hazes shall be subject to a civil penalty of not more than $5,000.00, and nothing shall limit or affect the right of an educational institution to enforce its own penalties against hazing. 16 VT. STAT. ANN. TIT. 53A §§ 11(a)(30), 140b-140d, 565, 1161a, 2182, 2284 (1999).

**Virginia.** Any person who hazes shall be guilty of a Class 1 misdemeanor, unless there is injury involved that would constitute a felony. Any person receiving bodily injury by hazing or mistreatment shall have a right to sue the persons or persons guilty thereof. Any student found guilty of hazing or mistreating another so as to cause bodily injury shall be expelled and reported to the attorney for the Commonwealth of Virginia for presentation

to the grand jury. VA. CODE ANN. § 18.2-56 (1975).

**Washington.** Any student who hazes or conspires to haze another is guilty of a misdemeanor. Any organization, association or student group that knowingly permits hazing is strictly liable for harm caused to persons or property resulting from hazing. A person who participates in hazing shall forfeit any entitlement to state-funded grants, scholarships, or awards. Any organization, association, or student group that knowingly permits hazing shall be deprived of any official recognition or approval granted by a public institution of higher learning. WASH. REV. CODE §§ 28B.10.900 –28B.10.902 (1997).

**West Virginia.** A person who hazes is guilty of a misdemeanor and upon conviction shall be fined not less that $100 but no more than $1,000, or confined for not more than 9 months, or both. Each institution of higher learning shall provide a program for the enforcement of the antihazing policy and impose penalties in addition to any criminal penalties. W.VA. CODE §§ 18-2-33, 18-16-1 through 18-16-4 (1995).

**Wisconsin.** No person may intentionally or recklessly engage in acts which endanger the physical health or safety of a student for the purpose of initiation or admission into or affiliation with any organization operating in connection with a school, college or university. Whoever hazes is guilty of a Class A misdemeanor if the act results in or is likely to result in bodily harm, and a Class E felony if the act results in great bodily harm or death. WIS. STAT. § 948.51 (1996).

*Please note, state laws are subject to change. Please contact your state for the most current anti-hazing law.*

## Hazing Complaint Flow Chart
## Without Fact Finding



DEF 00218

APPENDIX A  (chart B)                                                                                          APPENDIX B

## Hazing Complaint Flow Chart
## With Fact Finding



ALPHA KAPPA ALPHA SORORITY, INCORPORATED

### HAZING COMPLAINT FORM

Name: _____

Address: _____

City, State and Zip Code: _____

Telephone: (_____) _____ E-Mail Address: _____

Date of Hazing Incident: _____

Place of Hazing Incident (Please provide details): _____

_____

_____

Details of Hazing Incident: _____

_____

_____

_____

List Name(s) and Address(es) of Person(s) Who Committed the Alleged Act(s):

1)  Name: _____

   Address: _____

   City and State and Zip Code: _____

   Telephone: (_____) _____ E-Mail Address: _____

2)  Name: _____

   Address: _____

   City, State and Zip Code: _____

   Telephone: (_____) _____ E-Mail Address: _____

3)  Name: _____

   Address: _____

   City, State and Zip Code: _____

   Telephone: (_____)_____ E-Mail Address: _____

Please use back of form or attach other pages to provide additional information.

Signature:_____ Date: _____

This form is available at www.aka1908.com

**DEF 00219**

**ALPHA KAPPA ALPHA SORORITY, INCORPORATED**

**FACT FINDING SUMMARY REPORT FORM**

1. **Sorors Alleged To Have Hazed**

   | | *Name* | *Address* | *City & State* | *Telephone* |
   |---|---|---|---|---|
   | 1. | | | | |
   | 2. | | | | |
   | 3. | | | | |
   | 4. | | | | |
   | 5. | | | | |

2. **Chapter(s) Alleged To Have Hazed**

   | | *Name* | *City & State* | *Basileus (Name, Address, Telephone)* |
   |---|---|---|---|
   | 1. | | | |
   | 2. | | | |

3. **Date of Alleged Hazing Incident** _____

4. **Place of Alleged Hazing Incident** *(Include City & State)* _____

5. **Brief Summary of Facts Found Which Serve As Basis For Allegations of Hazing**

   _____
   _____
   _____
   _____
   _____

6. **Recommendation of Action to Regional Director**

   *Individual* **(Include Name):** _____

   *Chapter* **(Include Name & Location):** _____

   ❑ No Action    ❑ Suspension *(Length of time_____)*    ❑ Expulsion

7. **Name and Chapter of Fact Finders**

   _____
   _____
   _____

---

Hazing Policy
Council of Presidents
National Pan-Hellenic Council, Inc.
**September 13, 2000**

Joint Position Statement Against Hazing

PREFACE

The organizations of the National Pan-Hellenic Council, Inc. (NPHC) are committed to nurturing the ideals of sisterhood and fraternalism in an atmosphere of responsibility and respect. We are also committed to upholding the dignity and self-respect of all persons seeking membership therein. Hazing is antithetical to this commitment and is prohibited by the rules of each NPHC organization. In 1990, the member organizations of the NPHC jointly agreed to disband pledging as a form of admission. At the dawn of a new millennium, we the members of the National Pan-Hellenic Council, do hereby reaffirm our unequivocal opposition to hazing and those who seek to perpetuate it.

RESOLUTION

WHEREAS the National Pan-Hellenic Council, Inc. (NPHC) is comprised of local councils drawn from the ranks of 1.5 million college and professional members of the nine historically African-American fraternities and sororities, namely: Alpha Phi Alpha Fraternity, Inc., Alpha Kappa Alpha Sorority, Inc., Kappa Alpha Psi Fraternity, Inc., Omega Psi Phi Fraternity, Inc., Delta Sigma Theta Sorority, Inc., Phi Beta Sigma Fraternity, Inc., Zeta Phi Beta Sorority, Inc., Sigma Gamma Rho Sorority, Inc., and Iota Phi Theta Fraternity, Inc., and the Council of Presidents of these member organizations who come together on issues that promote the common purposes and general good for which these organizations exist; and

WHEREAS these NPHC organizations, operating through chapters located in the United States, the Caribbean, Europe, Africa and Asia, are proud of their commitment since 1906 to scholarship, community service, leadership and the promotion of sisterhood and brotherhood in an atmosphere of respect and responsibility; and

WHEREAS these NPHC organizations are likewise committed to promoting the self-respect and dignity of all persons seeking membership in the respective organizations; and

WHEREAS hazing is antithetical to this commitment and is strictly prohibited by the constitution, policies and procedures of each NPHC organization; and

WHEREAS "pledging" has been officially abolished as a process for membership and pledge "lines" have similarly been abolished; and all members and prospective members are prohibited from engaging in hazing, pledge or pre-pledge "lines"; and

WHEREAS in 1990 the NPHC organizations issued a joint statement announcing the elimination of pledging and each has instituted within its respective organization a revised membership development and intake process; and

WHEREAS each NPHC organization has instituted strong policies against hazing and has taken steps to reinforce and strengthen its stand against prohibited conduct; and

WHEREAS we begin this new century and a renewed commitment to the fundamental principles of brotherhood, sisterhood, human dignity and mutual respect, the NPHC organizations desire to make their commitment against hazing abundantly clear and fully intend for every member, prospective member, parent, university and the general public to be aware of the individual and

**DEF 00220**

collective position of the organizations against hazing; and

WHEREAS these NPHC organizations further desire to make known their respective commitment to hold any person who engages in hazing individually and personally liable to the victim and to answer to the law and the organization; and will hold such persons to respond in monetary damages, civil and criminal penalties and severe disciplinary action by the organization, including expulsion; and

WHEREAS the definition of hazing has been held to include *any action taken or situation created that involves or results in abusive, physical contact or mental harassment of a prospective Fraternity or Sorority member; and that any such action is considered hazing, whether it occurs on or off the Fraternity or Sorority premises, campus or place where chapters or prospective members meet; and that hazing has also been described to include any action that results in excessive mental or physical discomfort, embarrassment or harassment; that such activities include, but are not limited to, paddling, creation of excessive fatigue, physical or psychological shock, morally degrading or humiliating activities, late work sessions that interfere with scholastic activities and any other activities inconsistent with fraternal law and regulations and policies of the affiliated educational institution and federal, state or local law;* and

WHEREAS such illegal conduct is inimical to the principles for which each organization stands and fails to foster respect for fellow members or preserve human dignity;

BE IT RESOLVED AND RESTATED WITH EMPHASIS ANEW that hazing, pledging, pledge "lines", pre-pledge "lines", or post-intake hazing are strictly prohibited by these NPHC organizations; and

BE IT FURTHER RESOLVED, RESTATED AND MADE KNOWN that these NPHC organizations are committed to eradicate the scourge of hazing; and to that end

That the intake process has been recodified by each organization, which permits the conduct of intake only when specifically authorized by the officer placed in charge of the process and only at such times, places, and in the presence of persons specifically authorized and certified to conduct the intake process;

That prospective members and the parents of collegiate applicants are advised that hazing is not a requirement for membership, nor is it tolerated;

That members and prospective members must attest that they are fully aware of the organization's policy against hazing and will not engage in prohibited conduct and that the organization will fully cooperate with law enforcement authorities and with university officials in the investigation and prosecution of hazing or other illegal activity;

That members and applicants for membership are also put on written notice that they will be held responsible to the organization for violation of policies against hazing and the organization will pursue full remedies allowed by law to obtain indemnification for damages caused by the actions of the members or applicants who participated in illegal, unauthorized or prohibited conduct despite notice to refrain from such conduct;

That each organization shall enforce severe penalties, including expulsion, for proven violations of its policies against hazing and impose sanctions against a chapter involved and cooperate with the university in implementing sanctions by the university;

That members and applicants for membership shall be required to immediately notify the national office of the Fraternity or Sorority, the local chapter advisor, university officials and law enforcement officials of any observed hazing incident or improper activity believed to be in violation of the policy against hazing, without fear of reprisal and their application for membership will not be affected

by so doing; and, indeed, failure to report known violations may disqualify a candidate for membership; and finally,

That these NPHC organizations shall continue to encourage their members to participate in activities which promote high scholastic achievement, sisterhood, brotherhood, loyalty and leadership; and shall continue to affirm sound values and the worth of every member working together to accomplish organizational goals and serve the community.

Adrian L. Wallace
General President
Alpha Phi Alpha Fraternity, Inc.

Peter M. Adams, Esq.
National President
Phi Beta Sigma Fraternity, Inc.

Norma Solomon White
Supreme Basileus
Alpha Kappa Alpha Sorority, Inc.

Barbara Carpenter, Ph.D.
Grand Basileus
Zeta Phi Beta Sorority, Inc.

Howard L. Tutman, Jr.
Grand Polemarch
Kappa Alpha Psi Fraternity, Inc.

Helen J. Owens
Grand Basileus
Sigma Gamma Rho Sorority, Inc.

Lloyd W. Jordan, Esq.
Grand Basileus
Omega Psi Phi Fraternity, Inc.

Rondall James
Grand Polaris
Iota Phi Theta Fraternity, Inc.

Gwendolyn Boyd
National President
Delta Sigma Theta Sorority, Inc.

Washington, DC
September 13, 2000

38

DEF 00221

DEF 00222

40