IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOIE JOLEVARE, *et al.*, ) | |
| ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No. 1:05-cv-01982 |
| v. ) | |
| ) | Judge: Reggie B. Walton |
| ALPHA KAPPA ALPHA SORORITY, ) | |
| INC., ) | |
| ) | |
| Defendant. ) | |

## DEFENDANT ALPHA KAPPA ALPHA SORORITY INC.'S
## OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Defendant Alpha Kappa Alpha Sorority, Inc. ("Defendant" or "AKA"), by counsel, hereby opposes plaintiffs Joie Jolevare and Salome Tinker's (collectively, "Plaintiffs") motion for summary judgment. In support of this Opposition, AKA adopts and incorporates by reference its memorandum in support of its Cross-Motion for Summary Judgment. Plaintiffs' motion for summary judgment is not only without support, but reflects why AKA is entitled to summary judgment.

### INTRODUCTION

Plaintiffs are members of the private voluntary organization against which they brought suit, AKA. A few years ago, two AKA pledges at a California college died during a gathering of sorors and pledges at a Southern California beach. As a result of that incident and others, AKA made a determined effort to crack down on all forms of hazing. For example, AKA appointed a team of persons to propose new bylaws and procedures dealing with hazing activities. Among this group's critical objectives were to "increase the required qualifications for graduate advisors, members of graduate advisory

councils and mentors," "develop strategies to change sorors' attitudes and behaviors that reinforce hazing," and "develop stricter sanctions for violation of the sorority's Anti-Hazing Policy." Further, the sorority implemented a national moratorium and it ceased accepting members. In the Spring of 2005, the first group of undergraduate sorors was initiated into the Alpha Chapter of AKA at Howard University since the national moratorium was lifted.

Plaintiffs were graduate sorors and advisors of AKA - - they had graduated from college, but were still active in the sorority - - when they presided over an after-midnight, outdoor "rehearsal" involving the new undergraduate AKA sorors of Alpha Chapter. AKA suspended Plaintiffs after they were found to have violated AKA's anti-hazing guidelines for their role in this rehearsal. The setting of that rehearsal is not and has never been in dispute: it took place after midnight, in the late evening of March 21 and early morning of March 22, 2005, in an outdoor parking lot when the temperature was about 35 - 40 degrees Fahrenheit.

Although they filed appeals of their suspensions with AKA, Plaintiffs effectively elected to abandon those appeals when they also simultaneously filed this suit in Federal Court. Plaintiffs now seek to have the Court overrule AKA's decision that the rehearsal in question was an improper form of hazing and, by implication, AKA's strict enforcement of its internal anti-hazing policy. The law is well settled, however, that members of private voluntary organizations should not be permitted to invoke the court system to second-guess decisions rendered by such organizations. However, this is precisely what Plaintiffs are asking this Court to do here. Plaintiffs present no basis to

invoke the Court's interference with the internal governance of AKA here, and Plaintiffs' motion for summary judgment should be denied in its entirety for this reason alone.

Plaintiffs' motion for summary judgment should be denied as to each count on other grounds as well. First, Plaintiffs cannot seek redress with the Court pursuant to the provisions of the District of Columbia Human Rights Act to which Plaintiffs cite to assert their discrimination claim. These provisions do not proscribe the conduct about which Plaintiffs complain because AKA is a private, voluntary organization. Regardless, the factual basis upon which Plaintiffs rely to assert their discrimination claim is a fallacy. Second, Plaintiffs have failed to establish that a contract ever existed between themselves and AKA. Moreover, even if Plaintiffs could identify a contract between the parties, Plaintiffs have failed to show that AKA breached any such contract. Third, Plaintiffs cannot prevail on their defamation claim because the alleged defamatory statement at issue is true. And, truth provides an absolute defense to a defamation claim and bars Plaintiffs from further pursuing such a claim. Finally, Plaintiffs cannot proceed with their negligence claim. Plaintiffs have failed to establish that AKA owed a duty to them. Even if AKA owed a duty to Plaintiffs, Plaintiffs have failed to establish a reasonable standard of care to which AKA must abide. Establishing a reasonable standard of care requires expert testimony and Plaintiffs cannot provide this requisite testimony. Also, Plaintiffs have failed to identify any cognizable injury pursuant to which they could recover in negligence. For all these reasons, Plaintiffs' motion for summary judgment should be denied.

## PLAINTIFFS' STATEMENT OF MATERIAL FACTS

Defendant's response to Plaintiffs' purported statement of material facts as to which there is no dispute is attached hereto as Exhibit 1.

## ARGUMENT

I.  **PLAINTIFFS' CASE AND THEIR MOTION MUST FAIL BECAUSE PLAINTIFFS ARE NOT ENTITLED TO INVOKE THE JURISDICTION OF THE COURT TO INTERFERE IN AKA'S INTERNAL POLICIES AND PROCEDURES**

Plaintiffs seek, in essence, to have the Court act as an appellate panel for the policies and actions taken pursuant to those policies by AKA - - a private, voluntary organization. There is no legal basis for such an intervention and Plaintiffs' entire motion for summary judgment – and their entire case -- should be denied.

There is and can be no dispute that AKA is a private, voluntary organization. (See Exh. 7, Sample-Oates Cert., at ¶ 2; see also, e.g., Complaint at ¶ 23). Persons seek membership therein and agree to be bound by the policies and procedures thereof, including the anti-hazing policies and procedures for the enforcement of those policies. (See Complaint at ¶55; see also Deposition of Joie Jolevare, dated September 22, 2006 ("Jolevare Dep."), at pp. 36:7 – 39:6, 79:16 – 17 and 80:13 – 82:9. A copy of all cited portions of the Jolevare Dep. is attached hereto as Exhibit 10.). Pursuant to its private and voluntary nature, and the agreement of its members to be bound by its rules and regulations, and its discretion in enforcing the same, standard judicial review is not available to its members. (See Exh. 3, Constitution and Bylaws, at Bylaws, Art. VI, Secs. 1, 2 & 15; Exh. 6, the Manual, at pp. 40 – 42). The courts have long recognized such limitations.

4

In the District of Columbia, as elsewhere, it is recognized that "[c]ourts ordinarily will not interfere with the management and internal affairs of a voluntary association." Levant v. Whitley, 755 A.2d 1036, 1042 (D.C. 2000) (quotation omitted). See also Avin v. Verta, 106 A.2d 145, 147 (D.C. 1954) (citing Fish v. Huddell, 51 F.2d 319 (1931)); Nat'l Assoc. for the Advancement of Colored People v. Golding, 342 Md. 663, 672 (Md. 1996) ("[A]s a general rule, courts will not interfere in the internal affairs of a voluntary membership organization."). There is no basis for ignoring that rule here to allow Plaintiffs to invoke judicial intervention in their disagreement with AKA. Plaintiffs' motion for summary judgment should be denied in its entirety.

II.   **PLAINTIFFS CANNOT PREVAIL ON THEIR VIOLATION OF HUMAN RIGHTS ACT CLAIM**

   A.   **AKA Is a Private, Voluntary Organization and Not an Employer**

Plaintiffs now rely on D.C. Code § 2-1402.11(a)(1) in making their violation of D.C. Human Rights Act claim against AKA. (See Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Summary Judgment ("Memo in Support") at p. 12). This provision, however, does not apply to AKA – a private, voluntary organization. The statute itself, and caselaw reviewing this statute, reflects that Section 2-1402.11 of the District of Columbia Code ("Section 2-1402.11") only prohibits the conduct described therein of *employers, employment agencies, and labor organizations*. See, generally, D.C. Code § 1402.11; see also Arthur Young & Co. v. Sutherland, 631 A.2d 354, 361 (D.C. 1993) ("[Section 2-1402.11] proscribes discriminatory employment practices based on an employee's 'race, color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, family responsibilities, physical handicap, matriculation, or political affiliation . . . .'");

5

Nwachukwu v. Rooney, 362 F. Supp. 2d 183, 195 (D.D.C. 2005) (stating that Section 2-1402.11 "sets forth specific prohibitions pertaining to particular types of persons (e.g., employers and employment agencies) and particular types of conduct . . . . Because the DCHRA does not include a prohibition on the alleged discriminatory conduct at issue in this action, specifically the disciplinary proceedings of the Bar Counsel against the plaintiff's former attorney, the plaintiff has failed to set a cause of action under the DCHRA.").

In the instant matter, Plaintiffs have not alleged, nor have they produced any evidence, that their affiliation with AKA was in an employment capacity. In fact, Plaintiffs admit that they sought to join AKA as members by attending a "rush", AKA then contacted them to tell them they were accepted, and then they were initiated into the sorority. (See Exh. 4, Tinker Dep. at pp. 19:4 – 20:21). Plaintiffs thus cannot state a D.C. Human Rights Act claim, and their motion for summary judgment as to this count should be denied for this reason as well.

Moreover, the factual basis of Plaintiffs' claim is a fallacy. Plaintiffs' claim appears to be that the Alpha Chapter members who were at the rehearsal in question, all of whom were not suspended, were younger than Plaintiffs. (See, e.g., Memo in Support at pp. 13, 18, 19, 21, 22, 23 and 24). Plaintiffs have not produced any evidence of the ages of any of the undergraduate sorors who attended the March 2005 rehearsal. Further, Plaintiffs have not produced any evidence that Joy Elaine Daley knew any of the ages of either Plaintiffs or the undergraduate sorors when she recommended that Plaintiffs be suspended for hazing. Finally, Plaintiffs cannot assume that the Alpha Chapter members who were present at the March 2005 rehearsal were all younger than Plaintiffs. It is

6

possible that some sorors started their undergraduate education later than one traditionally does, which would make them older than Plaintiffs appear to assume they were at the time in question.

Second, Plaintiffs maintain that Joy Elaine Daley stated to the Alpha Chapter sorors in October 2005 that "the only reason [you girls] are not all suspended is because you are young." (Memo in Support at p. 19). Plaintiffs seem to maintain, then, that this alleged statement suggests that AKA suspended Plaintiffs due to their presumptively older age. Plaintiffs have not produced any admissible evidence that supports their assertion that Joy Elaine Daley made such a statement. Regardless, even if Joy Elaine Daley made such a statement, Plaintiffs have also produced documents to Defendant in which they contend that Joy Elaine Daley stated the following:

> I [Ms. Daley] did not want to punish the undergraduate members of Alpha Chapter for participating in the March 22nd rehearsal because you all [the undergraduate members of Alpha Chapter, Alpha Kappa Alpha Sorority, Incorporated] were too new to the sorority to know that the rehearsal was not in accordance with the *Constitution and Bylaws* and *Manual of Standard Procedure* for Alpha Kappa Alpha Sorority, Incorporated. The members of Xi Omega that were suspended as a result of the March 22nd rehearsal have been members of the sorority for a substantial number of years and were well aware that they were violating the *Constitution and Bylaws* and *Manual of Standard Procedure*.

(Exh. 9, Mitchell Aff., at ¶ 11, (brackets and emphasis in original)). Thus, Plaintiffs have admitted that Joy Elaine Daley did not premise her suspension recommendations on Plaintiffs' ages, and this claim cannot survive.

B.   **AKA Is a Private, Voluntary Organization and Not a Public Place**

Plaintiffs appear to have initially relied on § 2-1402.31(a)(1) of the D.C. Human Rights Act to bring their discrimination claim against AKA. (See Complaint at ¶ 50). Plaintiffs cannot seek redress pursuant to this provision either. Paragraph 50 of the

Complaint states that AKA's purported conduct "denied Plaintiffs, directly or indirectly, the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodation of AKA . . . ."). This language suggests that Plaintiffs believed AKA is a place of public accommodation under the D.C. Human Rights Act. See D.C. Code § 2-1402.31(a)(1) (stating that it is an unlawful discriminatory practice to "deny [based on age], directly or indirectly, any person the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation."). AKA is not a place of public accommodation. Instead, AKA is a private, voluntary organization. (See Exh. 7, Sample-Oates Cert., at ¶ 2; see also, Complaint at ¶ 23). Persons seek membership therein, and agree to be bound by the policies and procedures thereof, including the anti-hazing and disciplinary policies and procedures. Thus, that portion of the D.C. Human Rights Act upon which Plaintiffs relied does not apply and cannot provide redress for them, as AKA is a private, not public, organization. Plaintiffs' summary judgment motion should be denied.

III.  **PLAINTIFFS CANNOT PREVAIL ON THEIR BREACH OF CONTRACT CLAIM**

Plaintiffs assert that a contract exists between Plaintiffs and AKA "regarding hazing and the procedures to be followed when someone is accused of hazing," because Plaintiffs were required to sign documents stating that they would not participate in hazing before and after they became members of AKA. (Memo in Support at p. 25 (citing Sample-Oates Dep. at pp. 30:20 – 31:17)). Plaintiffs fail to cite to any authority, however, that holds that a prospective member's pledge to not act in a certain manner constitutes a contract between the prospective member and the private, voluntary organization of which the person pledging seeks to be a member. Plaintiffs further fail to

cite to any authority that holds that the pledge of a current member of a private, voluntary organization to not act in a certain manner constitutes a contract between the organization and the current member.

The documents that prospective and current members of AKA must sign regarding hazing are pledges prospective members take that enable them to continue to be considered for membership in AKA. (Exh. 7, Sample-Oates Cert., at ¶ 10). Similarly, they are pledges that enable current members to participate in particular activities. (Id.). If a prospective member refuses to sign the pledge she will no longer be considered for membership in AKA. (Exh. 7, Sample-Oates Cert., at ¶ 11). Also, if a current member refuses to sign the pledge she will not be permitted to participate in the related activity for which she was requested to sign the pledge. (Id.). Thus, these pledges serve to ferret out those women who will not commit to aid AKA in its endeavor to stop hazing within the sorority.

As a private, voluntary organization, and pursuant to its Constitution and Bylaws, the authority to determine whether a chapter or member has committed hazing is vested in the Regional Director and subject to the Supreme Basileus' approval. (Exh. 3, Constitution and Bylaws, at p. 46). Joy Elaine Daley, the Regional Director at the time the events at issue occurred, determined that Plaintiffs committed hazing pursuant to their role in the rehearsal at issue and recommended that Plaintiffs be suspended. (See, Exh. 5, Daley Cert., at ¶¶ 3, 10 – 14). AKA subsequently suspended Plaintiffs. (See id., Daley Cert., at ¶ 14). AKA did not suspend Plaintiffs based on an unfounded or confused set of facts. Plaintiffs were suspended for their role in an event that took place where approximately 115 undergraduate sorors were directed to practice in a parking lot in

Maryland for the "campus introduction show", in the late evening of March 21, 2005 into the early morning of March 22, 2005, where the temperature was near freezing. These facts are undisputed. (See Exh. 4, Tinker Dep., at pp. 25:22 – 30:18, 41:8 – 42:1, 82:4 – 83:4; Exh. 5, Daley Cert., at ¶¶ 4 – 11; Complaint at ¶¶ 25 – 26, 28; Exh. 6, the Manual, at p. 6; and Exh. 8, the Letter, at pp. 1-2). Plaintiffs have failed to establish that a contract between themselves and AKA existed during the time period at issue, much less any breach of such a contract.

IV. **PLAINTIFFS CANNOT PREVAIL ON THEIR DEFAMATION CLAIM**

Plaintiffs complain that their names being listed on the AKA website as sorors who were and are suspended for hazing policy violation(s) is defamatory. (See Complaint at ¶¶ 58 – 63; Exh. 10, Jolevare Dep., at pp. 153:8 – 158:22; Exh. 4, Tinker Dep., at pp. 57:1 – 64:17; Memo in Support at 29). A statement is defamatory if "'it tends to injure [the] plaintiff in his [or her] trade, profession or community standing or lower him in the estimation of the community.'" Beeton v. District of Columbia, 779 A.2d 918, 923 (D.C. 2001) (quoting Guilford Transp. Indus., Inc. v. Wilner, 760 A.2d 580, 594 (D.C. 2000)). In order to prevail on a defamation claim, a plaintiff must show (1) "that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm." Beeton, 779 A.2d at 923 (quoting Crowley v. North American Telecomms. Assoc., 691 A.2d 1169, 1173 n.2 (D.C. 1997)).

Plaintiffs cannot prevail on their defamation claim because the alleged defamatory statement is true. See Benic v. Reuters America, Inc., 357 F. Supp. 2d 216, 221 (D.D.C. 2004) ("Truth is an absolute defense to defamation claims.") (citing Olinger v. American Savings & Loan Assoc., 409 F.2d 142, 144 (D.C. Cir. 1969)). Here, the publication on the AKA website that Plaintiffs were suspended for hazing activities is true. Plaintiffs were, in fact, suspended by AKA for hazing. There is and can be no dispute that Plaintiffs were suspended because AKA concluded that they had participated in hazing. Plaintiffs have failed to establish a necessary element of their defamation claim, and Plaintiffs' motion for summary judgment should be denied.

Further, even if Plaintiffs contend that the defamatory statement at issue is that "Plaintiffs hazed," Plaintiffs *did* haze. Plaintiffs ignore that AKA's definition of hazing is broader in scope than the definition Plaintiffs proffer. Indeed, even that portion of the text of the definition to which they cite undermines their position. (See Memo in Support at p. 30, citing to "AKA Const. Art. V." and Sample-Oates Dep. at p. 33:18-22, which state that hazing is "an act or series of acts *which includes, but is not limited to*, physical acts such as hitting, striking, laying hands upon or threatening to do bodily harm to any individual(s), while acting in one's capacity as a member of Alpha Kappa Alpha.") (emphasis added). According to Plaintiffs' definition of hazing then, the two women who drowned at Dockweiler Beach in September 2002 were not hazed because they were not physically struck or otherwise physically threatened when they were directed to go into the water. The fact of the matter is that the *complete* definition of hazing includes the following language:

> [A]n act or series of acts which includes, *but is not limited to*, physical acts such as hitting, striking, laying hands upon or threatening to do bodily harm to any

individual(s), while acting in one's capacity as a member of Alpha Kappa Alpha, behavior which is directed against any individual(s) for the purpose of causing shame, abuse, insult, humiliation, intimidation or disgrace, and a variety of prohibited practices, *including but not limited to*, "underground hazing", "financial hazing", "pre-pledging", "post-pledging", or "post-initiation pledging".

(See AKA's Anti-Hazing Handbook – Say 'No' to Hazing (the "Handbook") at p. 9, a copy of which is attached hereto as Exhibit 11) (emphasis added)). AKA's definition of hazing and its attendant handbook, policies and procedures are not meant to, and do not provide, an exhaustive list of activities that are considered to constitute hazing and are therefore prohibited. (Exh. 7, Sample-Oates Cert., at ¶ 9). Instead, it is within the Regional Director's discretion to determine whether hazing has occurred based on the information she is provided. (See Exh. 3, Constitution and Bylaws, at p. 46).

In the instant matter, it is undisputed that approximately 115 undergraduate sorors were directed to practice in a parking lot in Maryland for the "campus introduction show", in the late evening of March 21, 2005 into the early morning of March 22, 2005, where the temperature was near freezing. (See Exh. 4, Tinker Dep., at pp. 25:22 – 30:18, 41:8 – 42:1, 82:4 – 83:4; Exh. 5, Daley Cert., at ¶¶ 4 – 11; Complaint at ¶¶ 25 – 26, 28; and Exh. 6, the Manual, at p. 6). Plaintiffs and other Xi Omega Chapter members supervised the undergraduate sorors during this rehearsal. (Id.) It is this set of facts upon which the then North Atlantic Regional Director, Joy Elaine Daley, relied to determine that Plaintiffs had hazed. AKA then suspended Plaintiffs for their participation. Thus, Plaintiffs do not have a viable defamation claim *even if* the alleged defamatory statement is that "Plaintiffs hazed," because Plaintiffs did in fact haze. See, e.g., Benic v. Reuters America, Inc., 357 F. Supp. 2d 216, 223 (D.D.C. 2004) (finding that the "worst reasonable implication" of an intranet announcement within plaintiff's workplace that

plaintiff had left the company was that plaintiff had been fired, which was true. "Accordingly, this claim cannot survive summary judgment.").[1]

Also, as a statement of opinion, Plaintiffs cannot prove that the statement, "Plaintiffs hazed", is false. In order to prevail on a defamation claim, plaintiff must prove that the statements at issue are false. (See Benic, 357 F. Supp. 2d at 223.) And, a "statement of opinion is actionable only if it has an explicit or implicit factual foundation and is therefore objectively verifiable." (Guilford Transportation Indus., Inc. v. Wilner, 760 A.2d 580, 597 (D.C. 2000). In Benic, for example, plaintiff brought a defamation claim against his former employer based on the former employer's statement that plaintiff was a "bad manager." On appeal, the court found that plaintiff's evidence that one former subordinate thought favorably of plaintiff

> [did] not raise a genuine issue with regard to the truth of the statement in question, i.e. whether [plaintiff's] superiors were correct in their assessment that [plaintiff] was a bad manager. Within that context, one individual's testimony expressing positive feelings about [plaintiff's] management fails to raise a genuine issue of fact regarding the substantial truth of [defendants'] statement. Consequently, the Court concludes that [plaintiff's] defamation claim regarding [defendants'] statement about [plaintiff's] management cannot withstand the defendants' Motion for Summary Judgment.

---

[1] It should be noted that Plaintiffs appear to contend throughout their Memo in Support that they *per se* did not haze because the rehearsal for which they were suspended was being held in anticipation of the campus introduction show and, Joy Elaine Daley allegedly approved Alpha Chapter's request to hold the campus introduction show at a certain time. Thus, any activity that occurred in preparation for the campus introduction could not constitute hazing. (See Memo in Support, e.g., at p. 30, citing to Sample-Oates Dep. at p. 34:13 and contending that "post-initiation activity[, such as the campus introduction show,] 'is not [defined as] hazing if permission is granted by the Regional Director.'") Plaintiffs' reasoning is flawed. First, AKA does not dispute that Joy Elaine Daley received a request to hold the campus introduction show on a certain date. However, AKA does dispute that Joy Elaine Daley approved such a request, and Plaintiffs have not submitted any admissible evidence supporting this assertion. More importantly, even if Joy Elaine Daley had approved the date on which Alpha Chapter wanted to have the campus introduction show, that does not mean that the manner in which the rehearsal at issue was held was acceptable regardless of the time, place and conditions in which the rehearsal took place.

13

357 F. Supp. 2d at 224. Plaintiffs have failed to submit evidence sufficient enough to raise a genuine issue with regard to the truth of the statement in question. Consequently, Plaintiffs' defamation claim cannot survive.

## V. PLAINTIFFS CANNOT PREVAIL ON THEIR NEGLIGENCE CLAIM

Plaintiffs maintain that AKA committed negligence by not abiding by its own policies and procedures in suspending Plaintiffs. Under District of Columbia law, a plaintiff in a negligence action must establish three elements: "an applicable standard of care, a deviation from that standard by the defendant, and injury resulting from that deviation." Scott v. District of Columbia, 101 F.3d 748, 757 (D.C. Cir.1996). The first element, establishing an applicable standard of care, presupposes that the plaintiff has identified a common law duty owed to it by defendant. See, e.g., Morgan v. District of Columbia, 449 A.2d 1102, 1108 (D.C. 1982), vacated on other grounds, 452 A.2d 1102 (D.C. 1982) (stating that the first element of a negligence action is: "a duty, owed by the defendant to the plaintiff, to conform to a certain standard of care . . . ."). In the instant matter, Plaintiffs have failed to identify any common law duty that a private, voluntary organization - such as AKA - owes to its members. Plaintiffs, therefore, cannot establish an applicable standard of care either. Plaintiffs also have not alleged any cognizable injury that would entitle them to relief.

### A. Plaintiffs Cannot Establish the First Element of a Negligence Claim - a Duty Owed & an Applicable Standard of Care

In their Memo in Support, Plaintiffs attempt to rely on certain of Ms. Sample-Oates' testimony during her deposition to fulfill the requirements that Plaintiffs identify a duty owed by defendants to them and a standard of care by which AKA must abide. (See Memo in Support at p. 37, citing Sample-Oates Dep. at p. 29:12 – 17, in which Ms.

14

Sample-Oates discusses that AKA's anti-hazing handbook describes "what [AKA's] hazing policy is and it covers if you are suspended; well, it defines what hazing is and then it talks about if you are suspended, if there's a fact-finding committee that's assigned, what your appeal process can be, the different rights someone has if they're suspended . . . ."). Plaintiffs do not cite to any authority, however, that holds that the mere existence of a private, voluntary organization's handbook relating to its internal policies and procedures automatically imposes a duty upon the private organization to its members. Nor do Plaintiffs cite to any authority that holds that a private, voluntary organization's handbook establishes a standard of care by which that organization must abide.

      Even if Plaintiffs could identify a duty that AKA owes to them, an expert must establish proof of the subsequent standard of care. See Scott v. District of Columbia, 101 F.3d at 757 (where the alleged negligent act is not "within the realm of common knowledge and everyday experience," proof of the applicable standard of care must be established by expert testimony) (citation omitted). Plaintiffs, however, did not adequately identify an expert regarding the applicable standard of care pursuant to their negligence claim during discovery in this matter. (See Joie Jolevare and Salome Tinkers' responses to Interrogatory No. 14 of AKA's First Set of Interrogatories, a copy of which is attached hereto as Exh. 12). Plaintiffs, therefore, are foreclosed from asserting their negligence claim at trial. Further, the necessity of an expert to testify regarding the standard of care renders summary judgment inappropriate as to this claim even if Plaintiffs adequately identified an expert during discovery.

### B. Even if Plaintiffs Could Establish the First Element of a Negligence Claim, Plaintiffs Cannot Establish the Third Element of a Negligence Claim – Injury

Plaintiffs have failed to allege any cognizable injury pursuant to which they can recover under a negligence theory. First, Plaintiffs claim "severe mental anguish", *i.e.* emotional distress, as a result of AKA's purported negligent actions. (See Complaint at ¶ 69; see generally, also, Joie Jolevare and Salome Tinker's Second Supplemental Responses to AKA's First Set of Interrogatories, copies of which are attached hereto as Exhibit 13 and Exhibit 14 respectively). District of Columbia law is well settled that "there can be no recovery for negligently caused emotional distress, mental disturbance, or any consequence thereof, where there has been no physical injury." District of Columbia v. Smith, 436 A.2d 1294, 1296 (D.C. 1981); see also, Morgan, 452 A.2d at 1115 (D.C. 1982) (citing Smith). In the instant matter, Plaintiffs have made no allegations, nor have they produced any admissible evidence showing, that they were physically injured as a result of AKA's purportedly negligent acts. Accordingly, Plaintiffs cannot recover any damages pursuant to a claim of mental anguish.

Second, Plaintiffs claim as injuries harm to "their reputations" and "their standing in the community". (See Memo in Support at p. 42). Plaintiffs, however, have not cited to any authority that holds that a plaintiff can recover for these asserted injuries under a general theory of negligence. Instead, these purported injuries are akin to that what establishes a statement as defamatory pursuant to the specific tort claim of defamation. See, e.g., Clawson v. St. Louis Post-Dispatch, LLC, 906 A.2d 308, 313 (D.C. 2006) ("A statement is 'defamatory' if it tends to injure the plaintiff in his trade, profession or community standing, or lower him in the estimation of the community.") (quoting Moss

v. Stockard, 580 A.2d 1011, 1023 (D.C. 1990)). Regardless, Plaintiffs have not cited to any admissible evidence that substantiates that they have suffered harm to their reputations and community standing. Accordingly, Plaintiffs cannot recover any damages pursuant to a claim of harm to their reputations and community standing.

Finally, Plaintiffs claim that they have "lost the enjoyment of privileges and benefits of membership in Defendant's organization as a result of Defendant's negligent actions." (Memo in Support at 42). Again, Plaintiffs have not cited to any authority that holds that a party can recover for these asserted injuries under a general theory of negligence.

## CONCLUSION

Plaintiffs are members of the private, voluntary organization that they have brought suit against in this matter, AKA. They seek, in effect, for the Court to review and overrule a decision AKA rendered concerning Plaintiffs' conduct at a "rehearsal" in March 2005. The law is well settled, however, that members of private voluntary organizations should not be permitted to invoke the court system to question decisions rendered by such organizations. Accordingly, Plaintiffs motion for summary judgment should be denied in its entirety for this reason alone.

Furthermore, Plaintiffs cannot prevail on each of their claims for additional reasons. First, the District of Columbia Human Rights Act is not a vehicle for redress for Plaintiffs. AKA is a private, voluntary organization and as such, the District of Columbia Human Rights Act does not proscribe the conduct of AKA about which Plaintiffs complain. In any event, the factual basis upon which Plaintiffs rely to assert their discrimination claim is a fallacy. Second, Plaintiffs cannot establish that a contract

existed between the parties. Even if Plaintiffs could establish that a contract existed, Plaintiffs have failed to establish that AKA breached such a contract. Third, Plaintiffs defamation claim cannot survive because the alleged defamatory statement at issue is true. As a true statement, Plaintiffs are precluded from proceeding with their defamation claim. Finally, Plaintiffs cannot maintain their negligence claim. Plaintiffs cannot identify a common law duty that AKA owes to Plaintiffs, nor can Plaintiffs establish a reasonable standard of care to which Plaintiffs must adhere. Plaintiffs must provide expert testimony in order to establish a reasonable standard of care and Plaintiffs cannot do that at this time, if at all. Also, Plaintiffs cannot identify an injury pursuant to which they can recover in negligence.

WHEREFORE, for the foregoing reasons, Defendant Alpha Kappa Alpha Sorority, Inc. respectfully requests that Plaintiffs' motion for summary judgment be denied.

                                       /s/
                                 Thomas S. Schaufelberger, DC Bar No. 371934
                                 Shannon H. Bates, DC Bar No. 480186
                                 Saul Ewing LLP
                                 2600 Virginia Avenue, NW
                                 Suite 1000 – The Watergate
                                 Washington, DC  20037
                                 Telephone:  202-295-6600
                                 Facsimile:  202-295-6700
                                 *Counsel for Defendant Alpha Kappa Alpha Sorority, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that, on this 29th day of January, 2007, a true and correct copy of the foregoing Defendant Alpha Kappa Alpha Sorority, Inc.'s Opposition to Plaintiffs' Motion for Summary Judgment and proposed Order were served, via electronic filing, upon:

Jimmy A. Bell, Esq.
Law Office of Jimmy A. Bell, P.C.
9610 Marlboro Pike
Upper Marlboro, MD  20772
*Counsel for Plaintiffs Joie Jolevare and Salome Tinker*

                                                /s/
                                    Thomas S. Schaufelberger