# EXHIBIT 1

## AKA'S RESPONSE TO PLAINTIFFS' STATEMENT OF MATERIAL FACTS

Defendant responds to Plaintiffs' purported statement of material facts as to which there is no dispute as follows:

1. AKA does not dispute that Alpha Chapter received applications for membership in its private organization in 2005.

2. AKA does not dispute that approximately 137 undergraduate women were admitted into the Alpha Chapter in 2005.

3. AKA does not dispute that the new undergraduate sorors of the Alpha Chapter were to hold a campus introduction show. AKA disputes that the undergraduate sorors voted to conduct such a show without any graduate influence.

4. Undisputed.

5. AKA only does not dispute that a request was made to the Regional Director, Joy Elaine Daley, to have the campus introduction show at a later time. AKA disputes the remainder of the allegations in Paragraph 5.

6. AKA does not dispute that the graduate sorors were to supervise and assist in teaching the newly initiated undergraduate sorors the AKA song and step that AKA sorors perform.

7. Undisputed.

8. Undisputed.

9. Undisputed.

10. Disputed. AKA made a determination, pursuant to the policies and procedures of this private, voluntary organization, that Plaintiffs had committed hazing in the late evening of March 21, 2005 into the early morning of March 22, 2005. Plaintiffs,

as well as the other graduate sorors who participated in the rehearsal at issue, were suspended after that determination.

    11.    AKA does not dispute that Evelyn Sample-Oates ("Ms. Sample-Oates") was deposed as AKA's corporate designee on December 6, 2006, and that the documents described in Paragraph 11 were marked as Plaintiffs purport during Ms. Sample-Oates' deposition.

    12.    Disputed.  AKA only does not dispute that the language to which Plaintiffs cite constitutes <u>a portion</u> of AKA's definition of hazing.  As AKA's Constitution & Bylaws and Ms. Sample-Oates' reading of same reflect, the complete definition of hazing is:

> [A]n act or series of acts which includes, *but is not limited to*, physical acts such as hitting, striking, laying hands upon or threatening to do bodily harm to any individual(s), while acting in one's capacity as a member of Alpha Kappa Alpha, behavior which is directed against any individual(s) for the purpose of causing shame, abuse, insult, humiliation, intimidation or disgrace, and a variety of prohibited practices, *including but not limited to*, "underground hazing", "financial hazing", "pre-pledging", "post-pledging", or "post-initiation pledging".

(See Deposition of Evelyn Sample-Oates ("Sample-Oates Dep."), dated December 6, 2006, at pp. 33:18 – 34:6 (emphasis added); AKA's Constitution and Bylaws (2004) ("Constitution and Bylaws") at pp. 45 – 46 (emphasis added).  Copies of the relevant portions of these documents are attached hereto as Exhibit 2 and Exhibit 3 respectively.)

    13.    AKA only does not dispute that there was no evidence uncovered or any allegation levied against Plaintiffs that they came into physical contact with the undergraduate sorors as described in Plaintiffs' Paragraph 12 of their motion for summary judgment.  AKA further states, however, that Plaintiffs were not suspended pursuant to allegations of such conduct.  Plaintiffs were suspended for their role in an

2

event that took place where approximately 115 undergraduate sorors were directed to practice in a parking lot in Maryland for the "campus introduction show", in the late evening of March 21, 2005 into the early morning of March 22, 2005, where the temperature was near freezing. These facts are undisputed. (See Deposition of Salome Tinker, dated September 22, 2006 ("Tinker Dep."), at pp. 25:22 – 30:18, 41:8 – 42:1, 82:4 – 83:4; Certification of Joy Elaine Daley ("Daley Cert.") at ¶¶ 4 – 11; Complaint at ¶¶ 25 – 26, 28; and AKA Manual of Standard Procedure (the "Manual"), at p. 6). The relevant portions of the Tinker Dep., Daley Cert. and the Manual are attached hereto as Exhibit 4, Exhibit 5, and Exhibit 6 respectively.).

14. AKA only does not dispute that Ms. Sample-Oates was deposed as AKA's corporate designee on December 6, 2006, and that the language cited from the transcript that was created pursuant thereto is accurate. AKA further states that the deposition transcript speaks for itself.

15. AKA only does not dispute that Ms. Sample-Oates was deposed as AKA's corporate designee on December 6, 2006, and that the language cited from the transcript that was created pursuant thereto is accurate. AKA further states that any testimony Ms. Sample-Oates provided during her deposition does not constitute a statement against interest.

16. AKA only does not dispute that Ms. Sample-Oates was deposed as AKA's corporate designee on December 6, 2006, and that the language cited from the transcript that was created pursuant thereto is accurate. AKA disputes Plaintiffs' characterization of such deposition, in that Plaintiffs do not appear to understand AKA's definition of hazing. AKA's definition of hazing and the Anti-Hazing Handbook, along with AKA's

policies and procedures that are related to hazing, are not meant to provide, and do not provide, an exhaustive list of all activities, circumstances and/or conditions that are considered to constitute hazing. (<u>See</u>, Certification of Evelyn Sample-Oates ("Sample-Oates Cert.") at ¶ 9, a copy of which is attached hereto as Exhibit 7). AKA further states that any testimony Ms. Sample-Oates provided during her deposition does not constitute a statement against interest.

17.   Disputed.

18.   Undisputed.

19.   AKA disputes the first sentence of Paragraph 19 of Plaintiffs' memorandum in support of its motion for summary judgment. AKA further states that the "Recommendation Letter" to which Plaintiffs refer speaks for itself, a copy of which is attached hereto as Exhibit 8 (the "Letter"). It is undisputed that Ms. Sample-Oates accurately read the quoted portion of the Letter during her deposition.

20.   AKA does not dispute that Ms. Sample-Oates was deposed as AKA's corporate designee on December 6, 2006, and that the language cited from the transcript that was created pursuant thereto is accurate. AKA disputes Plaintiffs' characterization of Ms. Sample-Oates' deposition testimony, in that it is not necessary for an activity to be explicitly listed as a prohibited activity in AKA's Constitution and Bylaws, Manual of Standard Procedure, Anti-Hazing Handbook – Say "No" to Hazing, and/or any other AKA document in order to constitute hazing. AKA further states that any testimony that Ms. Sample-Oates provided during her deposition does not constitute a statement against interest.

21. AKA states that the Letter to which Plaintiffs refer speaks for itself. AKA disputes that Plaintiffs' characterization of Ms. Sample-Oates' testimony at the cited pages of the deposition transcript is correct, in that AKA cannot determine to what pages of the deposition transcript Plaintiffs are citing. AKA, therefore, cannot review Ms. Sample-Oates' purported testimony. AKA does not dispute that Ms. Sample-Oates was deposed as AKA's corporate designee on December 6, 2006. AKA further states that the transcript that was created pursuant to Ms. Sample-Oates' deposition speaks for itself, and that any testimony Ms. Sample-Oates provided during her deposition does not constitute a statement against interest.

22. Disputed. AKA further states that the Letter states that "125 Undergraduates were in the parking lot in addition to: Sorors Joie Jolivere [*sic*], Kamilah Mohhammed, Ashawntee Dingle, Salome tinker, Karleen Roy, Miesha Darrough and Tamika McCormack (Members of Xi Omega Chapter." (See Exh. 8, the Letter, at p. 1).

23. Disputed. AKA further states that the Letter states that "Members of the Undergraduate Activities Committee dominated Alpha Chapter Meetings by determining what activities occur and the Graduate Advisor allowed it to happen by being present and not stopping them from doing so." (See Exh. 8, the Letter, at p. 1).

24. Undisputed.

25. Undisputed.

26. Disputed. AKA states that the Letter states that Plaintiff Joie Jolevare and others were some of the sorors present at all Alpha Chapter meetings. (See Exh. 8, the Letter, at p. 2). AKA further states, however, that Plaintiffs were not suspended pursuant to allegations of such conduct. Plaintiffs were suspended for their role in an event that

5

took place where approximately 115 undergraduate sorors were directed to practice in a parking lot in Maryland for the "campus introduction show", in the late evening of March 21, 2005 into the early morning of March 22, 2005, where the temperature was near freezing. These facts are undisputed, and are reflected in the Letter. (See Exh. 4, Tinker Dep., at pp. 25:22 – 30:18, 41:8 – 42:1, 82:4 – 83:4; Exh. 5, Daley Cert., at ¶¶ 4 – 11; Complaint at ¶¶ 25 – 26, 28; Exh. 6, the Manual, at p. 6; and Exh. 8, the Letter, at pp. 1-2).

27.    Undisputed.

28.    It is undisputed that Ms. Sample-Oates was deposed as AKA's corporate designee on December 6, 2006, and that the language cited from the transcript that was created pursuant thereto is accurate. AKA disputes Plaintiffs' characterization of such deposition, however, in that Ms. Sample-Oates only testified that she did not see any documents that reflected that any of the newly initiated undergraduate sorors were suspended pursuant to the rehearsal at issue. (See Exh. 2, Sample-Oates Dep., at pp. 61:14 – 62:3).

29.    Disputed. Plaintiffs have not produced any admissible evidence that supports their assertion that an Alpha Chapter meeting occurred on October 2, 2005, and/or that Joy Elaine Daley attended such a meeting.

30.    Disputed. Plaintiffs have not produced any admissible evidence that supports their assertion that Joy Elaine Daley made such a statement. AKA further states that even if Joy Elaine Daley made such a statement, Plaintiffs have also produced documents to Defendant in which they contend that Joy Elaine Daley stated the following:

"I [Ms. Daley] did not want to punish the undergraduate members of Alpha Chapter for participating in the March 22nd rehearsal because you all [the undergraduate members of Alpha Chapter, Alpha Kappa Alpha Sorority, Incorporated] were too new to the sorority to know that the rehearsal was not in accordance with the *Constitution and Bylaws* and *Manual of Standard Procedure* for Alpha Kappa Alpha Sorority, Incorporated. The members of Xi Omega that were suspended as a result of the March 22nd rehearsal have been members of the sorority for a substantial number of years and were well aware that they were violating the *Constitution and Bylaws* and *Manual of Standard Procedure*."

(Affidavit of Kimberly Mitchell ("Mitchell Aff.") at ¶ 11, (brackets and emphasis in original), a copy of which Plaintiffs produced to AKA during discovery and is attached hereto as Exhibit 9).

31. Undisputed. Defendant further states that AKA's national website does not only contain the names of those members who have been suspended for hazing. AKA's national website contains various information about AKA, of which the list of those suspended is only a part. (See Exh. 2, Sample-Oates Dep., at pp. 92:19 – 93:13).

32. AKA disputes that the quoted language is found at the pages of Ms. Sample-Oates' deposition transcript to which Plaintiffs cite. It is undisputed that the language cited from Ms. Sample-Oates' deposition transcript is accurate and is found at pages 68:22 – 69:8, and 74:5-8. AKA further states that *all* sorors who have been suspended, and not just those sorors who are suspended for hazing, are prohibited from participating in and doing those things Ms. Sample-Oates discusses. (See Exh. 2, Sample-Oates Dep., at pp. 68:22 – 69:8; 74:2 – 8).

33. Undisputed.