# EXHIBIT 7

Case 1:05-cv-01982-RBW    Document 35-8    Filed 01/29/2007    Page 1 of 4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JOIE JOLEVARE, *et al.*, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 1:05-cv-01982 |
| v. | ) | |
| | ) | Judge: Reggie B. Walton |
| ALPHA KAPPA ALPHA SORORITY, INC., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## CERTIFICATION OF EVELYN SAMPLE-OATES

Evelyn Sample-Oates certifies and states as follows:

1. I am a competent adult citizen and resident of the United States and the Commonwealth of Pennsylvania. I am submitting this Affidavit in support of Defendant Alpha Kappa Alpha Sorority, Inc.'s ("Defendant" or "AKA") Motion for Summary Judgment and memorandum in support thereof.

2. I am the North Atlantic Regional Director of Defendant, a private, voluntary, social organization comprised of African American women that was established in 1908.

3. To the best of my knowledge and belief, on September 9, 2002, two pledges of a California chapter of AKA drowned in the waters of Dockweiler Beach in California during initiation activities. The families of the two AKA initiates who drowned brought wrongful death lawsuits against AKA.

4. In response to the two drownings in September 2002, among other things, AKA's Supreme Basileus appointed a "Risk Management Task Force to propose by laws and procedures to reduce the sorority's vulnerability to lawsuit."

5. Among the critical objectives of the Risk Management Task Force were "[t]o increase the required qualifications for graduate advisors, members of graduate advisory councils and mentors," "[t]o develop strategies to change sorors' attitudes and behaviors that reinforce hazing," and "[t]o develop stricter sanctions for violation of the sorority's Anti-Hazing Policy."

6. In 2005, AKA published its revised anti-hazing handbook, "Say 'No' to Hazing" (the "Anti-Hazing Handbook") to further implement its "zero-tolerance policy" that hazing is strictly prohibited within the organization and will not be tolerated in any form.

7. The Anti-Hazing Handbook referred to in Paragraph 7 above is the anti-hazing handbook that was in effect at the time Plaintiffs Joie Jolevare and Salome Tinker ("Plaintiffs") were found assisting the rehearsal in the parking lot on March 22, 2005. AKA's actions and objectives quoted in Paragraphs 5 and 6 above are from the Anti-Hazing Handbook. A copy of this document is labeled DEF 00201 – DEF 00222.

8. Further, the Constitution & Bylaws and the Manual of Standard Procedure, copies of which are labeled as documents DEF 00117 – DEF 00154 and DEF 00155 – DEF 00200, are the documents that were in effect at the time Plaintiffs were found assisting the rehearsal in the parking lot on March 22, 2005.

9. AKA's definition of hazing and the Anti-Hazing Handbook, along with AKA's policies and procedures that are related to hazing, are not meant to provide, and do not provide, an exhaustive list of activities, circumstances and/or conditions that are considered to constitute hazing.

10. The documents that prospective and current members of AKA must sign regarding hazing are pledges prospective members make that enable them to continue to be

considered for membership in AKA. Similarly, they are pledges that enable current members to participate in particular AKA activities.

11. If a prospective member refuses to sign the pledge she will no longer be considered for AKA membership. Also, if a current member refuses to sign the pledge, she will not be permitted to participate in the related activity for which she was requested to sign the pledge.

12. To the best of my knowledge and belief, in September, 2002, AKA suspended Plaintiffs because of their presence at and participation in the parking lot rehearsal that occurred on March 21 – 22, 2005. AKA also suspended the other graduate sorors who were present at the parking lot rehearsal: Miesha Darrough, Ashawntee Dingle, Alexandra Jones, Tamika McCormack, Kamillah Muhammad and Karleen Roy.

13. To the best of my knowledge and belief, AKA did not suspend Joie Jolevare and Salome Tinker because of their age. Those sorors who were suspended pursuant to the parking lot rehearsal were all graduate sorors of the Xi Omega chapter. The decision to suspend the Xi Omega Chapter sorors who were present at the rehearsal, including Joie Jolevare and Salome Tinker, was based on the distinction between who was running the rehearsal and who was doing the rehearsing. Those sorors who were running the rehearsal were the graduate sorors present, all of whom were suspended regardless of their age.

I certify under penalty of perjury that the forgoing is true and correct. Executed on January ____, 2007.

Evelyn Sample-Oates
North Atlantic Regional Director of
Alpha Kappa Alpha Sorority, Inc.