# EXHIBIT 13

## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

| | |
|---|---|
| JOIE JOLEVARE *et al.* : | |
| Plaintiffs : | CASE NUMBER 1:05CV-01982 |
| v. : | |
| ALPHA KAPPA ALPHA : | |
| SORORITY, INC. : | |
| Defendant : | |

From:   Joie Jolevare
   c/o Jimmy A. Bell, Esq.
   Law Office of Jimmy A. Bell, P.C.
   9610 Marlboro Pike
   Upper Marlboro, MD 20772

To:  Defendant Alpha Kappa Alpha Sorority, Inc.
   c/o Thomas S. Schaufelberger
   WRIGHT, ROBINSON, MCCAMMON, OSTHIMER & TATUM
   5335 Wisconsin Avenue, NW
   Washington, DC 20015-2030

### PLAINTIFF JOIE JOLEVARE'S SECOND SUPPLEMENTAL RESPONSES TO DEFENDANT, ALPHA KAPPA ALPHA SORORITY, INC'S FIRST SET OF INTERROGATORIES

  Pursuant to Fed. R. Civ. P. 33, Plaintiff Joie Jolevare, by and through counsel Jimmy A. Bell, Esq. and the Law Office of Jimmy A. Bell, P.C., hereby further Supplements Plaintiff Jolevare's response to Defendant Alpha Kappa Alpha's First Set of Interrogatories furnishes knowledge, facts, and information presently available and, as requested, if subsequent or different information is obtained before trial, this Response to Defendant's First Set of

Interrogatories will be appropriately further supplemented, either formally or informally, by communicating the information to all parties.

## GENERAL OBJECTIONS

A. The Plaintiff objects to the Defendant's First Set of Interrogatories to the extent that it is not designed to lead to relevant discovery in this case.

B. Plaintiff's investigation is continuing and to the extent further information, responsive to these Interrogatories becomes known to this Plaintiff, these answers will be supplemented.

C. In addition to these General Objections, which apply to each Response below, the Plaintiff has noted certain additional specific objections in response to the various requests for production.

D. Plaintiff re-raises any and all objections raised in Plaintiff Jolevare's Responses to Defendant's First Set of Interrogatories

## SUPPLEMENTED RESPONSES

**INTERROGATORY NO. 17:** With respect to damages, itemize all amounts you are seeking to recover from AKA in this action, indicate the basis upon which you claim they are owed, how each item was calculated, persons with knowledge about these amounts and identify all documents that refer or reflect such amounts.

**SUPPLEMENTAL RESPONSE NO. 17:**

### I. Emotional Losses

Plaintiff Jolevare ("Plaintiff") suffered severe emotional shock, humiliation, embarrassment, disgrace, and anguish in front of her peers, friends, and sorority sisters on or about September 3, 2005 when Defendant Alpha Kappa Alpha, Inc. ("Defendant") by and

2

through its agent, representative, and/or employee, Joy Elaine Daley ("Daley") announced that Plaintiff was suspended from the sorority. Plaintiff was completely aghast, as Plaintiff was not given prior warning that such a suspension would be in effect, nor did she know the basis for the same. Plaintiff immediately broke down into tears. Plaintiff felt a strong bond to Alpha Kappa Alpha Sorority and her sorority sisters and intended to keep that bond strong and intact throughout the remainder of her life. Plaintiff felt like a part of her life had been ripped from her without reason.

Thereafter, Plaintiff suffered further shock, humiliation, embarrassment, disgrace, and anguish in front of her peers, friends, and sorority sisters when she was ordered out of the meeting by Daley[1]. Plaintiff also suffered the same embarrassment and anguish in front of her mother, who was setting next to her during these events.

Plaintiff also suffered confusion because she and Plaintiff Tinker were singled out and both felt isolated.

Plaintiff continued to cry heavily after being ordered out of the meeting. Due to the severe emotional trauma and humiliation, Plaintiff cried for the majority of the remainder of the day on September 3, 2006 and at least once a day for the following month.

Plaintiff's suspension from Alpha Kappa Alpha was particularly traumatizing because a large percentage of Plaintiff's friends, business colleagues, and social and professional peers are members of Alpha Kappa Alpha. Plaintiff's suspension thus alienated her from and disgraced her in front of her peers, friends, and colleagues. Moreover, Plaintiff used Alpha Kappa Alpha as a tool to bond with her mother. As a result of that suspension, Plaintiff is no longer able to use Alpha Kappa Alpha as a vehicle to develop her relationship with her mother.

---

[1] For procedural reasons, Phylis Young, President of Xi Omega told Plaintiff that she must leave the room, but only at the direction of Daley.

3

Plaintiff suffered further losses because she had quit her part-time job prior to her suspension in order to dedicate more time to Alpha Kappa Alpha activities. Plaintiff worked twenty (20) hours and earned approximately $200.00 per week. Plaintiff quit her job in reliance on her membership of Alpha Kappa Alpha. After her suspension, Plaintiff had neither a part-time job nor the social activities she expected to participate in. As a result, Plaintiff suffered lost wages and/or lost social interaction with her peers, friends and colleagues. In addition, Plaintiff lost several family members and friends as a result of Hurricane Katrina. In her greatest time of need, Plaintiff could neither turn to her sorority sisters – people who she had helped in the past and friends she trusted – for emotional support, nor use Alpha Kappa Alpha's social activities and events as a distraction and relief from her sorrow and grief. As a result, Plaintiff had a more difficult time coping with her losses.

In addition, Plaintiff lost many opportunities to participate in community service. The individual chapters of Alpha Kappa Alpha Sorority organize many group community service events and are noticed of other events on a regular basis. One of the primary reasons that Plaintiff joined Alpha Kappa Alpha was to participate in these community service activities. However, after her suspension, Plaintiff was denied access to these events. For example, Plaintiff, who was originally from New Orleans, could not volunteer as a member of Alpha Kappa Alpha at the local Armory to help victims of Hurricane Katrina.

On or about October 21-22, 2005, Plaintiff was unable to participate in the Alpha Kappa Alpha Homecoming events, which she had been looking forward to for the entire year. In addition, Plaintiff was forbidden from participating on "plot."[2] Moreover, this Homecoming was

---

[2] During homecoming, a section of the main yard at Howard University is designated for each Greek organization for all of the sorority sisters to meet and socialize following the homecoming Football game. At this "plot" sorority sisters congregate, sing their sorority songs and socialize amongst themselves and with other Greek organizations. For the Greek system at Howard University, this is the considered the most important event of the year.

4

particularly important to Plaintiff, because it was the first Homecoming for Wajoili Patrick Ward ("Wajoili"), Plaintiff's close friend and family-member. Also, Teaira Adams, Plaintiff's sorority sister from California, stayed at Plaintiff's house during the Homecoming weekend, and they would have attended the Alpha Kappa Alpha Homecoming events and the "plot" but for Plaintiff's suspension. However, since Plaintiff was suspended by Defendant, Plaintiff could not attend these events with her sorority sisters. Instead, Plaintiff had to drop Ms. Adams off at the reception. Plaintiff and Ms. Adams had planned to attend Homecoming together but were not able to do so.

In addition to the sorority events, Howard University hosts a Homecoming reception. Although Plaintiff initially believed the event was for Alpha Kappa Alpha members only, she did not plan on attending the reception. Plaintiff was informed that the event was opened to the public approximately halfway though the reception. Plaintiff decided to attend the event. However, due to the number of sorority members at the event, Plaintiff was extremely uncomfortable. Plaintiff felt as if her sorority sisters were shunning her and that she was unwelcome. During the event, Plaintiff broke down and cried several times.

Plaintiff was devastated that she could not take part in the sorority traditions and that she had missed Wajoili's dance performance, which took place earlier in the evening.

On or about October 22, 2006, Plaintiff went to the "plot." Because of Defendant's actions, Plaintiff stood to the side and could not participate in the events. Plaintiff could not join her friends and family members and participate in the singing and celebration. Plaintiff felt ostracized amongst her classmates and peers.

On or about October 23, 2006, one of the Alpha Kappa Alpha sisters had a baby shower and invited many of her Alpha Kappa Alpha sisters. Despite the fact that many of Plaintiff's

close friends and sisters were invited, Plaintiff was extremely uncomfortable and felt embarrassed throughout the evening. At or about 9pm that night, Plaintiff broke down and cried uncontrollably.

Plaintiff's exclusion from the sorority events and the social awkwardness caused by Defendant's suspension of Plaintiff left Plaintiff an emotional wreck. Plaintiff was physically and emotionally ill for at least three weeks thereafter (Plaintiff's medical expenses there-from are listed *infra*). Plaintiff also missed several days of work as a result of this mental and physical stress.

On or about January 2006, Marjorie Parker passed away. Ms. Parker played a large role in the history of Alpha Kappa Alpha and was a significant member of the organization. As part of tradition, Alpha Kappa Alpha sisters hold a special service for those members who pass away as a memorial to honor the deceased and their achievements ("The Ivy Beyond the Wall Service"). Plaintiff could not participate in The Ivy Beyond the Wall Service for Marjorie Parker. Plaintiff cried profusely as a result of her inability to participate and honor Ms. Parker.

On February 8, 2006, Jill Robbins-Rossen a co-worker and member of Alpha Kappa Alpha greeted Plaintiff, "Good Morning, Soror." Plaintiff could not respond to Ms. Robbins-Rossen because Defendant's suspension rules require that Plaintiff not identify herself as a member of Alpha Kappa Alpha. As a result, Plaintiff became very self-conscious at her place of employment, which she had never felt prior to this incident. This feeling of self-consciousness had a detrimental effect on Plaintiff's employment and professional life.

In or about 2006, Plaintiff could not participate in Greek Fashion Show 2006.

In or about the Summer of 2006, an Alpha Kappa Alpha member who was friends with Plaintiff was married. Many of the people in attendance were sisters of Alpha Kappa Alpha. At

6

the wedding reception, Alpha Kappa Alpha members participated in sorority wedding traditions. As a result of Defendant's actions and/or inactions, Plaintiff could not participate in these traditions. This caused Plaintiff to feel ostracized, self-conscious, and excluded. This severe emotional distress, resulted in Plaintiff breaking down and crying at the reception. Plaintiff had to be calmed down by her mother (via cellular telephone) before she was able to return to the wedding. For Plaintiff, the entire celebration was ruined.

In or about 2006, Plaintiff was not permitted to participate in the sorority Boule[3] because Defendant had suspended her from the sorority. Plaintiff's inability to attend was particularly devastating because Wajoili was in attendance. Plaintiff's mother, who had planned on attending Boule, also did not participate because Plaintiff was not permitted to attend.

Similarly, in or about 2006, Plaintiff was not permitted to participate in the sorority Regional Conference[4] because Defendant had suspended her from the sorority.
In addition, Plaintiff suffered damages when Defendant published her name on Alpha Kappa Alpha's national and public website which identified her as being suspended and listed her as being guilty of having conducted hazing activities.

## II. Financial Losses

Plaintiff's estimated expenses are approximately eight thousand six hundred thirty six dollars ($8636.00) to date.

(A) Psychology Treatment

(1) Dr. Johnson
5276 Dawes Ave
Alexandria, Virginia 22311
(703) 379-7350

---

[3] Alpha Kappa Alpha holds a week-long bi-annual conference called a Boule in which the sorority members from across are updated on the status of the sorority.

7

Thirteen (13) visits to date: Approximately $1,325.00[5]

(2) Dr. Fields
6412 Beulah Street
Alexandria, Virginia 22310
(703) 922-6161

Approximately seven (7) to date: $700.00[6]

(B) Psychology Treatment

(1) Zoloft: $1753.76[7]

(2) Effexor: $242.28[8]

(C) Lost Wages: Federal Reserve Board

1) Sick leave taken as a result of emotional distress caused by Defendant's actions and/or inactions.

September 6, 2005: 3 hours

September 7, 2005: 7 hours

September 8, 2005: 9 hours

September 12, 2005: 9 hours

As a salary employee, Plaintiff earns an average of $31.04 per hour.

Total loss: $931.31

(D) Part Time Job

Macy's Security
6100 Springfield Mall
Springfield, Virginia
703-719-6100

---

[5] Estimate is actual cost, including insurance coverage.
[6] Estimate is actual cost, including insurance coverage.
[7] Estimate is actual cost, including insurance coverage.
[8] Estimate is actual cost, including insurance coverage.

8

Macy's Security
11901 Lee Jackson Memorial Highway
Fairfax, Virginia 22033
571-432-2243

1) Had Plaintiff not quit her job in reliance on her participation in Alpha Kappa Alpha, Plaintiff would have earned approximately $9.90 per hour for twenty (20) for eight (8) weeks. Total lost wages: $1584.00.

2) Had Plaintiff not quit her job in reliance on her participation in Alpha Kappa Alpha, Plaintiff would have accrued, over the course of five (5) years, a three (3) week paid vacation. Because Plaintiff quit her job in reliance on her participation in Alpha Kappa Alpha events, all of her accrued vacation time was lost.

(E) Legal Fees

Plaintiff's total legal fees accrued to date are $2,100.00.[9]

III. Person(s) and/or Witness(es)

Plaintiff identifies the following individuals who know or have reason to know of any or all of the above-referenced damages[10]:

- Joy Jolevare;
- Salome Tinker;
- Wajoili Ward;
- Teaira Adams;
- Trudy Moore;
- Kelli Farmer;
- Lenye Adams;

---

[9] This figure only reflects Plaintiff's retainer and consultation fees. This figure may not be used to calculate any legal expenses incurred by or hourly fee earned by Plaintiff's counsel.
[10] Contact information for some of these individuals in Plaintiff's possession is annexed hereto.

9

- Angelle Trimble;

- 137 initiates Alpha Chapter, AKA March 2005

- Lisa Braz, former chapter president Alpha Chapter

- Members of the Alpha Chapter Undergraduate Activities Committee, including, but not limited to the following persons:
    - Pamela Chew
    - Julita Blair
    - Jorielle Brown
    - Miesha Darrough
    - Awshantee Dingle
    - Ronisha Franklin
    - Tamika J. McCormack
    - Khamilah Muhammed
    - Alexandria C. Jones
    - Leslie Jones
    - Karleen D. Roy
    - Rhashida Rogers
    - Candace Reynolds
    - Kendall Richardson
    - Kia Toilett
    - Alyssa King Turner

## IV. Note on Damages

Defendant's counsel requests that Plaintiff quantify, monetarily, damages incurred by Defendant's actions and/or omissions. However, while Plaintiff is pleased to enumerate the actual financial damages incurred as a result of Defendant's actions and/or omissions (discussed in section II, *supra*), Plaintiff simply cannot quantify the emotional, psychological, social, and physical damage caused by each and every event where Defendant's acts and/or omissions affected her adversely, nor should she be required to do so. In *Peyton v. DiMario*, the D.C. Circuit held that psychological and emotional damages need not be quantified, nor is it appropriate to do so. Rather, such damages should be assessed by a jury. 287 F.3d 1121, 1126 (D.C. Cir. 2002) As a result, Plaintiff will not speculate on the value of her own emotional

life, the humiliation of being ostracized from her circle of friends, the disgrace of not being able to honor deceased sisters, or the trauma caused by missing once-in-a-lifetime events whose memories she will not have to cherish for the rest of her life.

Subscribed and sworn under oath this  14  day of September 2006, by

*[signature]*
Joie Jolevare, Plaintiff

Respectfully submitted,

*[signature]*
Jimmy A. Bell, Esq.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this ___ day of September 2006, a copy of the foregoing Second Supplemental Responses to Defendant's First Set of Interrogatories was mailed, first-class postage pre-paid to:

Thomas Schaufelberger
Wright Robinson Osthimer and Tatum
5335 Wisconsin Avenue, NW
Suite 920
Washington, DC 20015-2054

_____
Jimmy A. Bell, Esq.