IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOIE JOLEVARE, *et al.*,                    )
                                            )
             Plaintiffs,           )
                                            )          Case No. 1:05-cv-01982
      v.                            )
                                            )          Judge: Reggie B. Walton
ALPHA KAPPA ALPHA SORORITY,                 )
INC.,                                       )
                                            )
             Defendant.            )

**DEFENDANT ALPHA KAPPA ALPHA SORORITY INC.'S
MOTION TO STRIKE PLAINTIFFS' OPPOSITION TO DEFENDANT'S
CROSS MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY,
REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT'S
CROSS MOTION FOR SUMMARY JUDGMENT**

**I.**      **Defendant Alpha Kappa Alpha's Motion to Strike Plaintiffs'
Opposition to Defendant's Motion for Summary Judgment**

Defendant Alpha Kappa Alpha Sorority, Inc. ("AKA" or "Defendant"), by and

through undersigned counsel, moves the Court to strike Plaintiffs' Opposition to

Defendant's Cross Motion for Summary Judgment, and in support thereof states as

follows.

AKA filed its cross-motion for summary judgment on January 18, 2007. Pursuant

to Local Rule of Civil Procedure 7(b), Plaintiffs were required to file any opposition to

AKA's cross motion for summary judgment on or before January 29, 2007. However,

Plaintiffs did not file any opposition (the "Opposition") to AKA's cross motion for

summary judgment until February 20, 2007 - - nearly a month late. Plaintiffs simply

chose to disregard the time within which to file an opposition. They did not seek AKA's

consent to any extension in which to file an opposition, nor did they seek an order from

the Court allowing them to file an opposition out of time.

WHEREFORE, for the foregoing reasons, Defendant Alpha Kappa Alpha Sorority, Inc. respectfully requests that Plaintiffs' Opposition to Defendant's Cross Motion for Summary Judgment be stricken from the record, and Alpha Kappa Alpha Sorority, Inc.'s motion be treated as unopposed.

## II.    Defendant Alpha Kappa Alpha Sorority, Inc.'s Conditional Reply to Plaintiffs' Opposition to Defendant's Cross Motion for Summary Judgment

Defendant AKA, in the alternative and by and through undersigned counsel, replies to Plaintiffs' Opposition to Defendant's Cross Motion for Summary Judgment ("Plaintiffs' Opposition"). In support of this Reply, AKA adopts and incorporates by reference its Opposition to Plaintiffs' Motion for Summary Judgment. AKA states as follows in further support.

## A.    The District of Columbia Human Rights Act Does Not Govern AKA's alleged conduct.

In support of their claim that the District of Columbia Human Rights Act (the "DC HRA") prohibits AKA's alleged conduct, Plaintiffs assert that a contract exists between Plaintiffs and AKA creating, in essence, an employment or agency relationship. Plaintiffs assert, somewhat vaguely, that "[i]n essence, Plaintiffs acted as representatives of Defendant's organization and their actions were controlled and dictated by Defendant in regards to their role as representatives of Defendant in a manner similar to that of an employment relationship." (Plaintiffs' Opposition at p. 12). Plaintiffs' assertion and the legal argument asserted are simply without support.

AKA is a private, voluntary organization of which Plaintiffs became members. The documents that prospective and current members of AKA must sign regarding hazing are pledges that prospective members must take to enable them to continue to be

considered for membership in AKA. (<u>See</u> Certification of Evelyn Sample-Oates at ¶ 10, a copy of which is attached hereto as Exhibit 1). Similarly, they are pledges that enable current members to participate in particular activities. (<u>Id.</u>). If a prospective member refuses to sign the anti-hazing pledge, she will no longer be considered for membership in AKA. (Exh. 1, Sample-Oates Cert., at ¶ 11). Also, if a current member refuses to sign the anti-hazing pledge, she will not be permitted to participate in the activity for which she was requested to sign the pledge. (<u>Id.</u>). Thus, these anti-hazing pledges serve to ferret out those women who will not commit to aid AKA in its endeavor to stop hazing within the sorority. (<u>Id.</u>). These pledges simply do not constitute any type of "employment agreement."

Not surprisingly, Plaintiffs fail to cite to any authority for the proposition that a prospective member's pledge with a private, voluntary sorority to not act improperly establishes an employer/employee relationship. It simply makes no sense. Plaintiffs further fail to cite to any authority for the proposition that the pledge of a current member to not act improperly establishes an employer/employee relationship. Again, the reason is not surprising; the premise is simply wrong.

Similarly, Plaintiffs' discussion of whether a defendant can be held liable for the actions of an "independent contractor" is equally inapposite here. None of the cases Plaintiffs cite stand for the proposition that the relationship between a private, voluntary sorority and its prospective and/or current members is in any way akin to an independent contractor relationship. Instead, the cases to which Plaintiffs cite merely discuss contractors and their potential liability for the actions of those with whom they independently contract. <u>See</u> <u>Washington Air Compressor Rental Co. v. Nat'l Union Ins.</u>

Co., 165 A.2d 482 (D.C. 1960) (Appellate court affirmed judgment against subcontractor for damage to property pursuant to subcontractor's blasting, and reversed judgment against contractor.  The general rule is that an independent contractor ordinarily is not liable for the negligent acts of its subcontractor.  There was insufficient evidence to overcome this general rule in order to impose liability on the contractor.); Vale v. Bonnett, 191 F.2d 334 (D.C. Cir. 1951) (Plaintiff alleged that a contractor hired by the lessee of a building negligently placed a ladder, that injured plaintiff, against the lessee's building.  The appellate court reversed the trial court's granting of the lessee's motion for summary judgment and found that, among other things, there remained the issue of the relationship between the lessee and the contractor.  There were questions about the degree of control, if any, the lessee had over the contractor and the placement of the ladder); Siegel v. Klingle Corp., 2002 U.S. Dist. LEXIS 15208 (D.D.C. Aug. 13, 2002) (Husband and wife filed an action against various defendants for injuries the wife sustained after slipping on debris in her parking garage.  The district court denied the contractor's motion for summary judgment, and noted that the general rule is that contractors are not liable for the negligence of their independent contractors.  There are few exceptions to this rule.).  The caselaw to which Plaintiffs cite concerning independent contractors is not related to the instant matter in any way, and does not support or advance Plaintiffs' argument.

Significantly, Plaintiffs do not discuss what constitutes an employment relationship and/or an independent contractor relationship.  In Schecter v. Merchants Home Delivery, Inc., 892 A.2d 415 (D.C. 2006), the Court of Appeals discussed that in determining whether an employment relationship, in contrast to an independent

contractor relationship, exists, certain facts should be considered: "(1) the selection and engagement of the [alleged] servant, (2) the payment of wages, (3) the power to discharge, (4) the power to control the servant's conduct, (5) and whether the work is part of the regular business of the employer." Id. at 422-23 (citation omitted). "While no single factor is controlling, 'the decisive test . . . is whether the employer has *the right to control and direct the servant in the performance of his work and the manner in which the work is to be done*." Id. at 423 (citation omitted) (emphasis in the original). Plaintiffs do not allege, nor have they produced any evidence showing, that they were selected to conduct work for AKA on an employer/employee basis, that they were paid to work for AKA, that they could be "fired" from AKA as persons hired to conduct work, that AKA controlled any of their conduct for which they were being paid, or that they conducted work for AKA as part of any alleged business of AKA. Simply put, Plaintiffs cannot and have not established that they have any relationship with AKA other than as members of that private, voluntary organization.

Finally, Plaintiffs' reliance on James v. Team Washington, Inc., CIV.A. 97-00378 TAF, 1997 WL 633323, (D.D.C. Oct. 7, 1997), is puzzling. James clarifies why AKA is *not* a place of public accommodation. In James, plaintiff was an African-American fashion designer who had a place of business in a predominantly African-American neighborhood in Washington, D.C. 1997 WL 633323, at *1. Defendant was a Domino's Pizza franchisee. Id. On the afternoon in question, plaintiff ordered a pizza from defendant for delivery to plaintiff's place of business. Id. Plaintiff attempted to pay for the pizza with a check when the delivery person arrived, but the delivery person refused to accept the check. Id. Plaintiff subsequently called and spoke with the manager of

defendant. Id. The manager told plaintiff that it was against the company's policy to accept checks from the area in which plaintiff's place of business was located. Id. Plaintiff then brought suit against defendant for discrimination based on plaintiff's race and/or place of business in violation of the DC HRA. 1997 WL 633323, at *1. Defendant moved to dismiss on the grounds that it was not covered under the relevant provisions of the DC HRA. Id. at * 1-2. Defendant specifically claimed, among other things, that it was not a place of public accommodation - as contemplated by the DC HRA's definition of public accommodation - because the alleged discriminatory conduct did not occur where the pizza franchisee was located but instead occurred in a private residence. Id. at *2.

The trial court denied defendant's motion to dismiss, reasoning that the emphasis should not be on *where* the alleged discriminatory conduct occurred, but on the "improper denial of the full and equal enjoyment of the goods or services *of* a place of public accommodation." Id. (emphasis in original). As the court discussed, "[w]hat is important is whether the defendant, as an entity, qualifies under the law's definition of a place of public accommodation . . . ." Id. Defendant "is a commercial enterprise that operates from a single location and sells goods and services to the general public" and, therefore, is a "place of public accommodation" as contemplated by the DC HRA. See id.

In the instant matter, Plaintiffs have not produced and cannot produce any evidence indicating that AKA is a place of public accommodation. (See, e.g., Complaint at ¶¶ 23 -24, stating that in 2005, "Alpha Chapter had a rush with over 400 members seeking membership" and "initiated 137 women into the organization."). AKA is a

private, voluntary, social organization comprised of African-American women who have sought and attained membership therein.  (Id. at ¶¶ 2, 10-11).  It is private in nature and not open to the general public.  (See id.).  Accordingly, AKA is not a place of "public accommodation" as defined in the DC HRA, and Plaintiffs' claim based on the public accommodation provision of the DC HRA fails as a matter of law.  See D.C. Code Ann. § 2-1401.02(24) (stating that a "[p]lace of public accommodation" does "not include any institution, club or place of accommodation which is in its nature distinctly private . . . ."); see also Samuels v. Rayford, No. 91-0365, 1995 U.S. Dist. LEXIS 21798, at * (D.D.C. April 10, 1995) (stating that in order to be a place of public accommodation it must "(1) be a place; and (2) be public, not private, in nature.  In the words of the statute, it must be a place that accommodates the public.").  AKA is plainly private in nature and does not fall within the public accommodations provision(s) of the DC HRA.

## CONCLUSION

Plaintiffs claim that their relationship with AKA – a private, voluntary organization - is similar to an employment or agency relationship.  This is without support in the record, in the law or in common sense.  Moreover, Plaintiffs' assertions that James v. Team Washington, Inc. somehow indicates that AKA is a place of "public accommodation" pursuant to the DC HRA are equally flawed.  James merely highlights why AKA is not, as a matter of law, a place of public accommodation.

WHEREFORE, for the foregoing reasons, Defendant Alpha Kappa Alpha Sorority, Inc. respectfully requests that its cross-motion for summary judgment be granted and Plaintiffs' Complaint be dismissed with prejudice in its entirety.

_____/s/_____
Thomas S. Schaufelberger, DC Bar No. 371934
Shannon H. Bates, DC Bar No. 480186
Saul Ewing LLP
2600 Virginia Avenue, NW
Suite 1000 – The Watergate
Washington, DC  20037
Telephone:  202-295-6600
Facsimile:  202-295-6700
*Counsel for Defendant Alpha Kappa Alpha
Sorority, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that, on this 28th day of February, 2007, a true and correct copy of the

foregoing Defendant Alpha Kappa Alpha Sorority, Inc.'s Motion to Strike Plaintiffs'

Opposition to Defendant's Cross Motion for Summary Judgment, or Alternatively, Reply

to Plaintiffs' Opposition to Defendant's Cross Motion for Summary Judgment, and

proposed Order were served, via electronic filing, upon:

Jimmy A. Bell, Esq.
Law Office of Jimmy A. Bell, P.C.
9610 Marlboro Pike
Upper Marlboro, MD 20772
*Counsel for Plaintiffs Joie Jolevare and Salome Tinker*

/s/
Thomas S. Schaufelberger